**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE,

        Plaintiff,

    v.

ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,

        Defendants.

Case No. 2:25-cv-00166-DLB-CJS

<u>**TIKTOK DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................... 5

    I.       SECTION 230 BARS PLAINTIFF'S CLAIMS ................................................... 5

    II.     THE FIRST AMENDMENT BARS PLAINTIFF'S NEGLIGENCE AND STRICT LIABILITY CLAIMS (CLAIMS 3–8) ................................................................... 9

    III.    EACH OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ........................ 10

        a.   TikTok Did Not Proximately Cause Audree's Injury (Claims 1–8) .............................. 10

        b.   The Negligence Claims Fail For Lack of Duty (Claims 3–6) ...................................... 13

           i. TikTok Owed No General Duty of Care (Claims 3–5) ................................................. 13

           ii. The Negligent Undertaking Claim Independently Fails (Claim 6) ............................ 15

        c.   Plaintiff Cannot Plead Viable Product Liability Claims (Claims 7–8) ......................... 17

        d.   Fraudulent Concealment and Misrepresentation Fails Under Rule 9(b) and Kentucky Law (Claim 1) ............................................................................................................. 18

           i. Plaintiff Fails to Plead Fraud with the Particularity Required by Rule 9(b) .............. 19

           ii. The Affirmative Misrepresentation Theory Fails for Lack of an Actionable Misrepresentation ......................................................................................................... 20

           iii. The Concealment Theory Fails Because Plaintiff Cannot Establish a Duty to Disclose and the Allegedly Concealed Facts Were Publicly Available ......................... 22

        e.   The Negligent Misrepresentation Claim Fails For the Same Reasons as Plaintiff's Fraud Claim (Claim 2) ................................................................................................. 24

        f.   The Wrongful Death Claim Fails Absent an Underlying Wrongful Act (Claim 9) ...... 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 5

*B.L. v. Schuhmann*,
380 F. Supp. 3d 614 (W.D. Ky. 2019) ................................................................. 24

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ............................................................................... 9

*Bogard v. TikTok Inc.*,
2025 WL 3637035 (N.D. Cal. Dec. 15, 2025) ............................................... *passim*

*Bryant v. Troutman*,
287 S.W.2d 918 (Ky. 1956) ................................................................................. 23

*Clark v. Hauck Mfg. Co.*,
910 S.W.2d 247 (Ky. 1995) ................................................................................. 18

*Combs v. Int'l Ins. Co.*,
354 F.3d 568 (6th Cir. 2004) ............................................................................... 13

*Doe v. Discord Inc.*,
2026 WL 1067574 (N.D. Ohio Apr. 20, 2026) .............................................. 1, 8, 21

*Doe v. Grindr, Inc.*,
128 F.4th 1148 (9th Cir. 2025) ......................................................................... 8, 21

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ................................................................................. 8

*Doe ex rel Roe v. Snap, Inc.*,
2023 WL 4174061 (5th Cir. 2023) ........................................................................ 8

*Estate of Thomas v. Jennie Stuart Med. Ctr., Inc.*,
2012 WL 6061781 (Ky. Ct. App. Dec. 7, 2012) .............................................. 15, 16

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ............................................................................... 6

*Flegles, Inc. v. TruServ Corp.*,
    289 S.W.3d 544 (Ky. 2009)....................................................................... 21, 22, 24

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*,
    348 S.W.3d 729 (Ky. 2011)................................................................................ *passim*

*Greer v. Strange Honey Farm, LLC*,
    114 F.4th 605 (6th Cir. 2024) ......................................................................... 5

*House v. Bristol-Myers Squibb Co.*,
    2017 WL 55876 (W.D. Ky. Jan. 4, 2017)............................................................ 20

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
    MDL No. 3047, Doc. 784 (J.P.M.L. June 3, 2026) ........................................... 7

*In re Social Media Cases*,
    JCCP No. 5255, 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ...................... 16

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002)...................................................................... *passim*

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ............................................................................... 8

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ..................................................................... *passim*

*K.B. v. Backpage.com, LLC*,
    768 F. Supp. 3d 1057 (N.D. Cal. 2025) ................................................................ 8

*Michaels Bldg. Co. v. Ameritrust Co.*,
    848 F.2d 674 (6th Cir. 1988)............................................................................. 24

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024).................................................................................3, 9, 10

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*,
    536 F. App'x 558 (6th Cir. 2013) ......................................................... 19, 21, 23, 24

*O'Kroley v. Fastcase, Inc.*,
    831 F.3d 352 (6th Cir. 2016) ........................................................................ 1, 7, 8

*Ostendorf v. Clark Equip. Co.*,
    122 S.W.3d 530 (Ky. 2003).............................................................................. 15

iii

*Patton v. Bickford*,
　529 S.W.3d 717 (Ky. 2016)......................................................................................10, 11, 12

*Reich v. City of Elizabethtown*,
　2018 WL 6028719 (W.D. Ky. Nov. 16, 2018) ........................................................ 25

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
　683 F.3d 239 (6th Cir. 2012) ...................................................................... 18, 19, 24

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
　113 S.W.3d 636 (Ky. Ct. App. 2003) ....................................................................... 18

*Robinson on Behalf of T.R. v. Eli Lilly & Co.*,
　2018 WL 4039703 (E.D. Ky. Aug. 23, 2018) ......................................................... 20

*Roe v. Amazon.com*,
　170 F. Supp. 3d 1028 (S.D. Ohio 2016) ................................................................. 10

*Schneider Elec. USA, Inc. v. Williams*,
　733 S.W.3d 180 (Ky. 2026) ............................................................................. 13, 14

*Simpson v. Champion Petfoods USA, Inc.*,
　397 F. Supp. 3d 952 (E.D. Ky. 2019)..................................................................... 23

*Smith v. California*,
　361 U.S. 147 (1959)................................................................................................ 10

*Smith v. General Motors Corp.*,
　979 S.W.2d 127 (Ky. Ct. App. 1998) ..................................................................... 23

*Snyder v. Phelps*,
　562 U.S. 443 (2011)................................................................................................ 10

*Thacker v. Ethicon, Inc.*,
　47 F.4th 451 (6th Cir. 2022).................................................................................. 10

*Twitter, Inc. v. Taamneh*,
　598 U.S. 471 (2023)................................................................................................ 12

*United Parcel Serv. Co. v. Rickert*,
　996 S.W.2d 464 (Ky. 1999)..................................................................................... 19

*Watters v. TSR, Inc.*,
　904 F.2d 378 (6th Cir. 1990)................................................................................ *passim*

iv

**STATUTES AND OTHER AUTHORITIES**

47 U.S.C. § 230(b) ..................................................................................................2, 17

47 U.S.C. § 230(c) ............................................................................................5, 6, 7, 20

47 U.S.C. § 230(f)...................................................................................................6, 8

Restatement (Second) of Torts § 323 ................................................................... 15, 16

Restatement (Second) of Torts § 324A ....................................................................... 15

v

Defendants TikTok LLC, TikTok Inc., and ByteDance Inc. (collectively, "TikTok Defendants") respectfully move under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing all claims asserted against them in the Amended Complaint with prejudice.

**<u>INTRODUCTION</u>**

This case arises from the tragic suicide of a minor, Audree Heine. Plaintiff, Audree's mother, brings this action against Roblox, Discord, and TikTok on the theory that these platforms connected Audree with an "online community dedicated to glorifying violence," ultimately contributing to her death. But very little of that is alleged to have happened on TikTok, which Plaintiff largely lumped in with Discord through group pleading. The most the Complaint alleges is that Audree "had been livestreaming her activities on TikTok" in the period before her suicide. But Plaintiff does not allege that the livestreaming played any role in Audree's death. Instead, after stripping away the conclusory grouping with Discord, what remains is a single theory of injury: that Audree passively viewed content on TikTok that was harmful. For multiple reasons, that does not state a viable claim.

At the threshold, Section 230 of the Communications Decency Act bars all of Plaintiff's claims. Section 230 immunizes online platforms like TikTok "against liability arising from content created by third parties." *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014). And that protection applies where, as here, a plaintiff claims injury from how an algorithm is used to automate editorial decisions about publishing third-party content. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016). In fact, the Northern District of Ohio recently dismissed similar claims against Discord on Section 230 grounds, applying this binding precedent. *Doe v. Discord Inc.*, 2026 WL 1067574 (N.D. Ohio Apr. 20, 2026). The same result should follow here.

Plaintiff cannot evade Section 230 by characterizing her claims as targeting TikTok's representations or safety features. As Plaintiff alleges, TikTok has: a "zero-tolerance approach to violent extremism," and will ban users for "attempts to promote or glorify off-platform violence." Am. Compl. ¶ 189. TikTok also has adopted moderation guidelines rendering "plans for suicide or self-harm" ineligible for the For You Page. *Id.* ¶ 188. And TikTok has developed features that "shield teen users from direct and indirect communication with strangers," has developed parental controls, and has created tools to allow users to manage their time on the platform or restrict the content they see on the platform. *Id.* ¶¶ 190–91, 210. Each of these features shows TikTok's proactive commitment to safety and ultimately governs the flow of third-party material on the platform, such as what users may post, see, or receive, and who may communicate with them. Plaintiff appears to believe that these features did not work as intended or misrepresented the safety of the platform. But the Complaint is bereft of supporting allegations, and in any event, these claims boil down to a disagreement over how TikTok decides to publish and transmit third-party content and are therefore barred by Section 230. Indeed, imposing liability on the basis of these features would subvert Congress's express aim in enacting Section 230, which was to encourage platforms to develop and refine these tools. *See* 47 U.S.C. § 230(b)(3)–(4).

Plaintiff's claims fail for a variety of other reasons as well. The Sixth Circuit has twice applied Kentucky law to hold that an injury resulting from a minor's passive viewing of harmful content is not a foreseeable consequence of distributing that content. *See James v. Meow Media, Inc.*, 300 F.3d 683, 693 (6th Cir. 2002) (school shooting not foreseeable result of distributing violent video games, movies, and internet sites); *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990) (suicide not foreseeable result of distributing Dungeons & Dragons game). Foreseeability is a prerequisite to establish both proximate cause (required for all of Plaintiff's claims) and a duty

2

of care (required for the negligence claims). Because Plaintiff cannot meet the foreseeability inquiry, her claims necessarily fail.

The negligence and product liability claims independently fail on First Amendment grounds because they seek to impose liability for editorial choices that are constitutionally protected under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). The product liability claims also fail because TikTok's platform is not a "product." And the fraud and misrepresentation claims fail under Rule 9(b) and on the merits because the cited misrepresentations are non-actionable expressions of corporate aspiration and Plaintiff cannot establish a duty to disclose for her concealment theory. The last claim, for wrongful death, fails without a viable underlying claim of wrongful conduct.

TikTok extends its deep sympathies to Plaintiff and her family for their tragic loss. But their claims against TikTok are misplaced, and the Complaint should be dismissed.

**STATEMENT OF FACTS**

Plaintiff Jaimee Seitz is a Kentucky resident who brings this action individually and as personal representative of her daughter Audree Heine's estate. Am. Compl. ¶ 1. Audree died by suicide in December 2024. *Id.* ¶ 215.

**A. Audree's Use of Defendants' Platforms**

According to the "Plaintiff-Specific Allegations" in the Complaint, Audree began using Roblox at age 8. Am. Compl. ¶ 216. The Complaint alleges she first encountered the "True Crime Community," a group of users who glorify mass shooters including the Columbine perpetrators, through Roblox. *Id.* ¶ 218. Audree was initially "exposed to emotional manipulation and social pressure by other users, including [True Crime Community] members" on Roblox as well. *Id.*

Plaintiff alleges that shortly after joining Roblox, Audree "also joined the apps Discord and TikTok, where the social pressure was heightened" and where "[t]he grooming for violence

3

continued." Am. Compl. ¶ 219. Plaintiff alleges that Audree was exposed to "homophobic and violent content" that "exacerbated her feelings of isolation and despair." *Id.* at ¶ 220. Plaintiff alleges that she set parental controls on Audree's accounts. *Id.* at ¶ 216.

The only allegation that refers to TikTok apart from Discord is that "[l]eading up to [Audree's] suicide, she had been livestreaming her activities on TikTok." Am. Compl. ¶ 222. Plaintiff does not allege that the livestreaming played any role in Audree's death or otherwise harmed her. Plaintiff also does not identify livestreaming as a defective feature, including in the paragraphs describing TikTok's design, *id.* ¶¶ 209–14, or in the lists of alternative designs appended to her negligence and product liability claims, *id.* ¶¶ 272, 314, 357.

## B.  The Complaint's General Allegations Concerning TikTok

The balance of the Complaint's TikTok allegations address the platform generally and do not mention Audree. Am. Compl. ¶¶ 180–214. They focus on the "For You Page" algorithm, which Plaintiff alleges "amplif[ies] content that plays heavily on users' emotions, regardless of whether they are positive or self-destructive," *id.* ¶ 206; age verification that relies on "self-identification," *id.* ¶ 211; and safety representations that TikTok's "highest priority" is "creating a welcoming environment where everyone feels safe," *id.* ¶ 187. Apart from the "For You Page" algorithm, the Complaint does not connect any of these features to Audree's death.

The Complaint's general allegations also describe TikTok's safety measures. They include community guidelines rendering suicide- and self-harm-related content ineligible for the For You Page, Am. Compl. ¶ 188; a "zero-tolerance approach to violent extremism," including bans for "attempts to promote or glorify off-platform violence," *id.* ¶ 189; parental controls "permitting parents to decide who can message their child, view whom their child follows or is followed by, and view which accounts their child has blocked," *id.* ¶ 190; features that "shield teen users from

4

direct and indirect communication with strangers," including default-private accounts for users aged 13 to 15 and opt-in direct messaging for 16- and 17-year-olds, *id.* ¶ 191; and age restrictions on certain features and content, bans on the appearance of certain content on For You Pages, and time limits for young users, *id.* ¶ 210.

### C. The Claims Asserted

The Complaint asserts nine causes of action against all defendants: (1) fraudulent concealment (¶¶ 224–39); (2) negligent misrepresentation (¶¶ 240–54); (3) negligence – general (¶¶ 255–80); (4) negligence – failure to warn (¶¶ 281–99); (5) negligence – unreasonable design (¶¶ 300–22); (6) negligent undertaking (¶¶ 323–42); (7) strict liability – design defect (¶¶ 343–68); (8) strict liability – failure to warn (¶¶ 369–87); and (9) wrongful death under KRS § 411.130 (¶¶ 388–93).

### <u>LEGAL STANDARD</u>

A complaint must be dismissed if it fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Fraud claims must, under Rule 9(b), "state with particularity the circumstances constituting fraud," including "the 'who, what, when, where, and how' of the alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024).

### <u>ARGUMENT</u>

### I.   SECTION 230 BARS PLAINTIFF'S CLAIMS

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). At its core, it "immunizes providers of interactive computer services against liability arising from content created by third parties." *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014). It does so by barring claims that seek to hold a platform liable for exercising "traditional

editorial functions," such as "deciding whether to publish, withdraw, postpone, or alter content." *Id.* at 407 (quotation omitted). For Section 230 to serve its purpose, "close cases . . . must be resolved in favor of immunity," and at the earliest possible stage of litigation. *Id.* at 408, 417 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc)).

Section 230 bars a claim where (1) the defendant is a provider of an interactive computer service; (2) the information at issue was provided by another information content provider; and (3) the claim seeks to treat the defendant as a publisher or speaker of that information. *Jones*, 755 F.3d 398 at 409. All three elements are satisfied here. The first two are straightforward and not subject to genuine dispute. TikTok is a provider of an interactive computer service within the meaning of the statute. *See* 47 U.S.C. § 230(f)(2); *see, e.g.*, *Bogard v. TikTok Inc.*, 2025 WL 604972, at *17 (N.D. Cal. Feb. 24, 2025) (TikTok qualifies). And the content at issue—videos associated with the "True Crime Community" and posts glorifying violence—was created entirely by third-party users, not TikTok.[1] *See* Am. Compl. ¶¶ 6, 199–202, 219.

The dispositive question is the third element: whether Plaintiff's claims seek to treat TikTok as a "publisher or speaker" of that third-party content. They do. The basis of every cause of action is that TikTok's algorithmic "For You Page" selected, organized, and displayed the violent content to Audree—in other words, that TikTok performed traditional editorial functions with respect to content created by others. Am. Compl. ¶¶ 180, 183, 193–96, 199–202, 210, 219. Whether framed as negligence, design defect, failure to warn, or misrepresentation, each claim reduces to the same theory: that TikTok should have decided not to publish to Audree, or to

---

[1] Section 230's exception for platforms that "materially contributed" to the illegality of the content, *Jones*, 755 F.3d at 410–12, is not alleged in the Amended Complaint and does not apply here.

withdraw from its platform, the third-party content at issue. That is confirmed by substituting different videos. Had Audree's For You Page shown cooking tutorials rather than allegedly violence-glorifying content, there would be no lawsuit, and yet nothing about the For You Page would have changed. What Plaintiff is challenging is therefore not how the For You Page works, but what it showed.

The Sixth Circuit's decisions in *Jones* and *O'Kroley* are on point and dispositive. In *Jones*—which arose from this District—the court held that a website operator was immune under Section 230 even though it actively selected third-party posts for publication, added editorial commentary, and refused to remove content after notice, because those acts are protected "traditional editorial functions." 755 F.3d at 402–07, 416. In *O'Kroley*, the court extended that principle to automated algorithmic acts, holding that Google's algorithm did not become an "information content provider" merely by editorially presenting third-party content in a manner the plaintiff found harmful. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016). TikTok's For You Page is functionally the same: its algorithm editorially presents third-party content by selecting which videos to surface and in what arrangement, which is exactly the conduct *O'Kroley* held immune. And these specific algorithmic functions are ones that Congress expressly enumerated as protected. *See* 47 U.S.C. § 230(f)(4) (protected activities include "pick[ing]" and "choos[ing]" third-party videos, "organiz[ing]" and "display[ing]" the result).

Plaintiff's allegations are inherently content-based, as the Judicial Panel on Multidistrict Litigation recognized in declining to transfer this case. There, the Panel found that Plaintiff's claims have only a "tenuous connection" to any platform-design theory and are instead "overwhelmingly focused on the promotion of violent content." *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, MDL No. 3047, Doc. 784, at 3–4 (J.P.M.L. June 3,

2026). Plaintiff's "overwhelming" focus on third-party content necessarily means that her claims target quintessential publishing activity. For example, her allegations that TikTok curated personalized feeds and amplified certain content challenge TikTok's selection and organization of third-party material. *E.g.*, Am. Compl. ¶¶ 180, 210. And her allegations that TikTok failed to remove violent content, despite knowledge of the risks, challenge TikTok's decision not to withdraw material from publication. *E.g.*, *id.* ¶¶ 199–202, 219. Each is a "traditional editorial function" expressly protected by Section 230. *Jones*, 755 F.3d at 407, 416; *O'Kroley*, 831 F.3d at 355.[2] The complaint's other general theories—failing to implement adequate safety features or age verification mechanisms—are inadequately pleaded. But this aside, they would require TikTok to alter or amend how it publishes content and would be barred by Section 230. The same is true for Plaintiff's misrepresentation claims; courts have dismissed similar claims as barred by Section 230 because "[e]very version" of the claim "would require [the platform] to change its content moderation practices." *Doe v. Discord Inc.*, 2026 WL 1067574, at \*14; *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025).

The Northern District of Ohio recently applied *Jones* and *O'Kroley* to dismiss similar claims against Discord. *Doe v. Discord Inc.*, 2026 WL 1067574 (N.D. Ohio Apr. 20, 2026). There, the plaintiff alleged that Discord's messaging platform facilitated her sexual exploitation as a minor by failing to implement adequate safety features, age-verification mechanisms, and content

---

[2] Plaintiff's theory against TikTok centers on TikTok's alleged role in amplifying and delivering harmful material to Audree's feed. To the extent the Amended Complaint can be read to allege user-to-user harm facilitated by TikTok, that theory is equally barred by Section 230, which immunizes platforms from liability for harms arising from third-party interactions on the service. *See, e.g.*, *Doe v. Grindr, Inc.*, 128 F.4th 1148, 1153–54 (9th Cir. 2025) (minor abused by adult he met on app); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same); *Doe ex rel Roe v. Snap, Inc.*, 2023 WL 4174061, at \*1 (5th Cir. 2023) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar).

moderation. *Id.* at *2–4. The court held that each claim was barred by Section 230 because the alleged duties would "require Discord to alter or amend how it publishes, monitors, screens, flags, blocks, or removes users' messages." *Id.* at *9. The court also rejected the plaintiff's attempt to recharacterize her claims as targeting platform "design" rather than publishing decisions, finding that claims faulting the platform for providing a service that allowed users to encounter harmful content were "at root, fundamentally" claims "related to Discord's role as a 'publisher.'" *Id.* at *10. And the court reiterated that "[a] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory"—whether framed as negligent design, failure to warn, or misrepresentation. *Id.* at *11 (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102–03 (9th Cir. 2009)). The same result should follow here.

## II.   THE FIRST AMENDMENT BARS PLAINTIFF'S NEGLIGENCE AND STRICT LIABILITY CLAIMS (CLAIMS 3–8)

The First Amendment provides an independent basis for dismissing Plaintiff's negligence and product liability claims. Those claims seek to hold TikTok liable for the way it selected, organized, and presented third-party content on its For You Page, which is constitutionally protected expression under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). There, the Supreme Court held that "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting the included items—is expressive activity" that "results in a distinctive expressive product." *Id.* at 731; *see also id.* at 717 ("To the extent that social-media platforms create expressive products, they receive the First Amendment's protection"). TikTok's For You Page does exactly this. It selects which third-party videos to surface to each user and in what order, exercising the same editorial discretion *Moody* held to be constitutionally protected. *See also* Am. Compl. ¶¶ 180, 193 (alleging that TikTok "curates a feed

of videos" and "amplif[ies] content" on users' For You Pages). Because Plaintiff's claims seek to impose liability for those protected editorial choices, they are barred under *Moody*.

The First Amendment also generally prohibits holding a distributor of third-party speech liable in tort because of the concern that such liability would chill free expression by forcing distributors to pre-screen everything they carry. *Smith v. California*, 361 U.S. 147, 150, 153 (1959); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (this principle "can serve as a defense in state tort suits"). The only recognized exception has been for actual knowledge of specific harm. *Smith*, 361 U.S. at 153; *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1040 (S.D. Ohio 2016). That circumstance is not present here. Plaintiff does not allege that TikTok had knowledge of the specific True Crime Community videos or related violence-glorifying content that Audree viewed.

Plaintiff's negligence and product liability claims should therefore be dismissed on First Amendment grounds. The claims seek to impose liability for editorial choices that are constitutionally protected under *Moody*, and the separate prohibition on distributor liability further underscores why the claims do not survive First Amendment scrutiny.

## III.   EACH OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

### a.   TikTok Did Not Proximately Cause Audree's Injury (Claims 1–8)

Each of Plaintiff's substantive claims fails for lack of proximate cause. Under Kentucky law, proximate cause is a question of law "bottomed on public policy as a limitation on how far society is willing to extend liability for a defendant's actions." *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016) (quotation omitted). The doctrine recognizes that a defendant's conduct, even if it is a but-for cause of the harm, may be too remote in time, place, or foreseeability to justify imposing liability. *Id.* A plaintiff must therefore show that the defendant's conduct was a "substantial factor" in bringing about the harm. *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 460 (6th Cir. 2022).

The Complaint's causation theory fails for two reasons. First, the Complaint does not plead any non-conclusory TikTok-specific conduct that could have been a substantial factor in Audree's death. And second, the most that can be gleaned from its allegations is injury from passively viewing third-party content—a theory the Sixth Circuit has twice held unforeseeable as a matter of Kentucky law. Other courts agree.

Starting with the pleading defect, the Complaint's causation theory is notable for how little of it involves TikTok. According to the Complaint, Audree's path to self-harm was driven by years of direct grooming beginning on another platform, compounded by bullying and social isolation. Am. Compl. ¶ 218. TikTok played no alleged role in that. Instead, the Complaint largely groups TikTok with Discord in alleging that "predators continued to exploit Audree's emotional vulnerabilities" on both platforms. *Id.* ¶ 219. But even as to this assertion, which is unsupported by any TikTok-specific factual allegations, the causation theory rests on the conduct of third-party bad actors. The Complaint alleges that Defendants facilitated "predatory interactions," but as to TikTok, does not identify any individual who communicated with Audree or describe any specific interaction on the platform. *See generally id.* ¶¶ 215–23. All that remains are allegations that Audree viewed "predatory and harmful content" on her For You Page, *id.* ¶ 217, and was livestreaming before her death, *id*. ¶ 222. That is not a sufficient basis for proximate causation.

To the extent Plaintiff could plead any causation-related allegations as to TikTok, the theory would be barred by law, as the Sixth Circuit explained in *James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) (applying Kentucky law). There, the parents of students killed in a school shooting alleged that the shooter's exposure to violent video games, a movie, and internet sites "desensitized" him to violence and "caused" him to kill. *Id.* at 687. The court dismissed the claims, holding that "[i]t appears simply impossible to predict that these games, movie, and internet sites

11

(alone, or in what combination) would incite a young person to violence," and that the shooter's "reaction to the games and movies at issue here . . . was simply too idiosyncratic to expect the defendants to have anticipated it." *Id.* at 693. Similarly, in *Watters v. TSR, Inc.*, 904 F.2d 378 (6th Cir. 1990), the Sixth Circuit held that a game manufacturer could not be held liable for the death of a teenager whose suicide was allegedly caused by playing "Dungeons & Dragons." The court observed that to hold otherwise would "stretch the concepts of foreseeability and ordinary care to lengths that would deprive them of all normal meaning." *Id.* at 381.[3]

The same reasoning applies here: the theory that Audree's viewing of allegedly harmful TikTok content foreseeably caused her suicide is too attenuated to sustain proximate causation. Indeed, the complaint's allegations are even more attenuated than the theories the *James* and *Watters* courts considered, given that Plaintiff's causation theory is layered on top of myriad links having nothing to do with TikTok. That includes offline bullying and social isolation, and direct person-to-person interactions with "toxic communities and predators" on other online platforms. Am. Compl. ¶¶ 5–6, 218–20.

Even aside from these binding cases, there are good policy reasons to decline to extend proximate causation this far. If passive viewing of allegedly harmful content on one platform foreseeably causes a user's suicide whenever the user is simultaneously being harmed through other (online and offline) channels, then proximate cause ceases to function as a limiting principle. Every platform hosting content relating to violence or self-harm would face liability for any user's subsequent self-injury, regardless of what other forces were independently driving that harm. That

---

[3] *James* and *Watters* analyzed foreseeability in the context of duty rather than proximate cause, but the foreseeability analysis applies with equal force in the proximate cause context. *See James*, 300 F.3d at 699; *Watters*, 904 F.2d at 381; *see also Patton*, 529 S.W.3d at 730 (proximate causation turns on whether the causal chain is "too attenuated from the damages in time, place, or foreseeability").

12

is not the law, and this Court should not make it so. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 502–03 (2023) (rejecting theory that would "effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them," as that "would run roughshod over the typical limits on tort liability"). And since "federal courts must proceed with caution when making pronouncements about state law," courts given "a choice between an interpretation . . . which reasonably restricts liability, and one which greatly expands" it, should adopt "the narrower" option. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quotation modified).

### b. The Negligence Claims Fail For Lack of Duty (Claims 3–6)[4]

Plaintiff's negligence claims fail because Plaintiff cannot establish that TikTok owed Audree a cognizable duty of care. Claims 3 through 5—general negligence, failure to warn, and unreasonable design—each require that TikTok owed Audree a duty of care. Plaintiff did not (and cannot) plead that TikTok owed her a duty of care under Kentucky law. *James*, 300 F.3d at 693 (no duty of care under Kentucky law after distributing violent video games, movies, and internet sites); *Watters*, 904 F.2d at 381 (no duty of care under Kentucky law following suicide allegedly connected to Dungeons & Dragons game). Claim 6, for negligent undertaking, likewise fails because Plaintiff cannot plead that an online platform voluntarily assumed a duty of care by providing parental controls and account safety service.

#### i. TikTok Owed No General Duty of Care (Claims 3–5)

Under Kentucky law, duty is a question of law. *Schneider Elec. USA, Inc. v. Williams*, 733

---

[4] Claim 2 (negligent misrepresentation) is addressed in Section III.e. *infra*. The claim is based on alleged misrepresentations, requires proof of a false statement of material fact and justifiable reliance, and is subject to Rule 9(b), making it more closely related to the fraudulent concealment claim (Claim 1) than to the duty-based negligence claims.

13

S.W.3d 180, 192 (Ky. 2026). And courts have consistently rejected, as a matter of Kentucky law, duties in analogous circumstances.

As set forth above, Plaintiff's "duty" theory fails for the same lack of foreseeability that defeats proximate causation. *James* and *Watters* were decided on duty grounds, holding that the defendants owed no duty of care to the victims as a matter of law. *James*, 300 F.3d at 692–95; *Watters*, 904 F.2d at 381.

Two additional considerations, specific to the duty inquiry, confirm that result here.

*First*, Kentucky law does not impose a duty to protect against a third party's self-inflicted harm absent a special relationship. Courts have found such a relationship only in narrow custodial contexts: where "a person known to be suicidal is placed in the direct care" of the defendant, *Watters*, 904 F.2d at 383, or where the defendant takes "affirmative steps that disable[] the plaintiff from protecting himself," *James*, 300 F.3d at 694. No such relationship exists here. A social media platform's relationship with its millions of users is not the kind of special relationship that gives rise to a duty to anticipate and prevent self-harm. *See id.* (finding "nothing close to a 'special relationship'" between media defendants and victims); *cf. Schneider Elec. USA, Inc. v. Williams*, 733 S.W.3d 180, 194–95 (Ky. 2026) (confining duty to circumstances involving "regular and repeated" close contact rendering harm foreseeable based on the defendant's own conduct).

*Second*, "courts must consider policy implications before expanding duty." *Schneider*, 733 S.W.3d at 195. Recognizing a duty here would mean that any platform hosting user-generated content owes a duty to every user who might view harmful material and subsequently self-harm. The *Watters* court recognized the untenability of that position, observing that the "only practicable way" of discharging such a duty "would be to refrain from [distributing the product] at all." 904 F.2d at 381. And the *James* court further noted that imposing tort liability on the dissemination of

14

ideas and images through media raises "significant constitutional problems under the First Amendment that ought to be avoided." 300 F.3d at 695. Those same concerns apply here.

ii.   <u>The Negligent Undertaking Claim Independently Fails (Claim 6)</u>

Claim 6 rests on the theory that TikTok voluntarily assumed a duty of care by providing parental controls and account safety services. Am. Compl. ¶¶ 325–26. But this theory fails under Kentucky law and, in any event, is preempted by Section 230(c)(2)(B).

Under Kentucky law, a voluntarily assumed duty can give rise to tort liability, but only where the plaintiff satisfies the threshold conditions set forth in the Restatement (Second) of Torts §§ 323 and 324A. *See Ostendorf v. Clark Equip. Co*., 122 S.W.3d 530, 538 (Ky. 2003); *Estate of Thomas v. Jennie Stuart Med. Ctr., Inc*., 2012 WL 6061781, at \*4 (Ky. Ct. App. Dec. 7, 2012). The defendant is subject to liability only if: (a) its failure to exercise reasonable care "increases the risk of such harm," or (b) "the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323. Plaintiff's allegations do not satisfy either condition.

As to increased risk, the Restatement requires that the defendant's undertaking left the plaintiff in a worse position than if no assistance had been provided at all. *See* Restatement (Second) of Torts § 323, cmt. c; *Estate of Thomas*, 2012 WL 6061781, at \*4. The Complaint does not allege that TikTok's parental controls or safety features affirmatively increased the danger to Audree. Rather, Plaintiff's theory is that those protections were inadequate and that TikTok could have done more. Am. Compl. ¶¶ 211, 213. But a failure to provide perfect safety is not the same as making the user worse off than she would have been without any protections. The *Estate of Thomas* court rejected liability on this basis, finding no evidence that the defendant's partial assistance "increased the risk of harm" beyond the baseline risk that existed before the undertaking. 2012 WL 6061781, at \*5.

15

As to reliance, the Complaint alleges that Plaintiff "trusted the platform's assertions" and "set parental controls on Audree's accounts, believing that these would ensure safety." Am. Compl. ¶ 216. But the Restatement requires more than generalized trust; the plaintiff must have been "induced to forego other opportunities of obtaining assistance" because of the undertaking. Restatement (Second) of Torts § 323, cmt. c. Plaintiff does not allege that she would have taken any specific alternative protective measures but for TikTok's safety representations. The *Estate of Thomas* court likewise found no reliance where there was no evidence that the plaintiff refrained from other sources of protection because of the defendant's undertaking. 2012 WL 6061781, at *5.

The JCCP court in the California social media litigation rejected a similar legal theory under the same Restatement provisions (there, involving age verification services rather than parental controls). The court held that "the risk of harm to Plaintiffs would have been the same if Defendants had instead failed to provide any age verification services," and that the plaintiffs "fail[ed] to cite to any allegations . . . from which the court could properly infer that any Plaintiff . . . actually suffered any harm that was caused by his/her parent relying on the provision of age verification services." *In re Social Media Cases*, JCCP No. 5255, 2023 WL 6847378, at *39–41 (Cal. Super. Ct. Oct. 13, 2023). There is no reason to chart a different course here.

Finally, even if a voluntarily assumed duty could otherwise arise from offering parental controls and safety tools, that duty would be preempted by Section 230(c)(2)(B). That provision immunizes a platform from liability for providing the "technical means to restrict access to material" that is "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230 (c)(2)(A)–(B). Parental controls and other account safety settings are exactly this: the "technical means" used to "restrict access to [objectionable] material." It thus follows that Plaintiff's negligent undertaking claim, which seeks to impose liability on TikTok for

16

providing those safety tools (and allegedly providing them imperfectly), is preempted by Section 230(c)(2)(B) as targeting conduct that Congress expressly chose to protect. To hold otherwise would disincentivize online platforms from providing parental control or safety tools in the first place, which is the opposite of what Congress intended. *See* 47 U.S.C. § 230(b)(3)–(4) (stating policy goal to "encourage the development of technologies which maximize user control over what information is received by individuals" and "remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material").

### c.   Plaintiff Cannot Plead Viable Product Liability Claims (Claims 7–8)

Plaintiff's strict liability claims for design defect (Claim 7) and failure to warn (Claim 8) should be dismissed because TikTok's app is not a "product" subject to product liability law.

The Restatement (Third) of Torts: Products Liability § 19(a) (1998) limits product liability to "tangible personal property distributed commercially for use or consumption" and provides that "[s]ervices, even when provided commercially, are not products." *Id.* § 19(b). Kentucky has endorsed this framework. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 738–39 (Ky. 2011) (citing Restatement (Third) §§ 1, 19(a), 21 with approval). Although Plaintiff frames her claims as targeting features of TikTok's platform (e.g., its algorithm, age verification, parental controls, and time limits, Am. Compl. ¶¶ 210–13), each alleged "defect" reduces to the same theory that TikTok failed to prevent harmful third-party content from reaching Audree. *See id.* ¶¶ 193–202, 210–13. These are claims about the ideas and expression communicated through TikTok's platform, not about a malfunctioning tangible product.

The Sixth Circuit, applying Kentucky law, has held that such claims fall outside product liability. In *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990), the court observed that "the doctrine of strict liability has never been extended to words or pictures" and affirmed the dismissal

17

of claims against the manufacturer of Dungeons & Dragons arising from a player's suicide. In *James v. Meow Media, Inc.*, 300 F.3d 683, 700–01 (6th Cir. 2002), the court reaffirmed *Watters*, holding that video games, movies, and internet transmissions were not "products" where the alleged harm targeted the "ideas conveyed" by those media. The court acknowledged the physical tangibility of the cartridges and cassettes but held they were "not sufficiently 'tangible' to constitute products in the sense of their communicative content." *Id.*[5]

Plaintiff's claims are materially indistinguishable from those rejected in *James*. There, as here, the plaintiff alleged that defendants' media desensitized a young person to violence and caused self-destructive behavior. 300 F.3d at 687; Am. Compl. ¶¶ 193–202, 210, 219. There, as here, the plaintiff pointed to features of the media, including the interactivity of the platform and the manner of its distribution, to argue they were "products." *James*, 300 F.3d at 700; Am. Compl. ¶¶ 345–48, 371–73. And there, the court looked past the framing to the substance of the claim: the alleged harm flowed from the content the media conveyed, not from any defect independent of that content. *James*, 300 F.3d at 700–01. The same analysis compels the same result here.

### d. Fraudulent Concealment and Misrepresentation Fails Under Rule 9(b) and Kentucky Law (Claim 1)

Plaintiff's fraud claim, styled as "Fraudulent Concealment and Misrepresentations," conflates two distinct theories under Kentucky law, yet fails to state a viable claim under either.

Under Kentucky law, "[f]raud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." *Rivermont Inn, Inc. v. Bass Hotels &*

---

[5] Although *Watters* and *James* applied Section 402A of the Restatement (Second), which was then operative in Kentucky, *see Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 1995), their core holding remains sound under the Restatement (Third): nothing in Section 19's definition of "product" disturbs the distinction between a tangible item and the communicative content it conveys.

*Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003); *see also Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 254–55 (6th Cir. 2012). Fraud by misrepresentation requires proof of six elements: "(1) material representation (2) which is false (3) known to be false or made recklessly (4) made with inducement to be acted upon (5) acted in reliance thereon and (6) causing injury." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999); *Giddings & Lewis*, 348 S.W.3d at 746. By contrast, fraud by omission "is grounded in a duty to disclose" and requires: "(1) a duty to disclose the material fact at issue; (2) failure to disclose; (3) reliance; and (4) damages." *Giddings & Lewis*, 348 S.W.3d at 747.

Plaintiff's single count lumps together these distinct theories without alleging the elements of either. And she cannot: the complaint is devoid of any allegations about when Plaintiff encountered misrepresentations, which representations she relied on, which misrepresentations were misleading, or which induced her to act. Instead, she focuses on general policies or statements about corporate purpose that courts routinely explain are insufficient to state a misrepresentation claim. *See, e.g.*, *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 563 (6th Cir. 2013) ("generic promise to provide 'high quality' services" not actionable misrepresentation (quotation omitted)); *Bogard*, 2025 WL 3637035, at *8 ("statements that merely describe content that is allowed or not allowed on the platform, or that describe Defendants' general policies" not actionable misrepresentations).

         i.   <u>Plaintiff Fails to Plead Fraud with the Particularity Required by Rule 9(b)</u>

Fraud claims must "state with particularity the circumstances constituting fraud," including the "who, what, when, where, and how" of the alleged fraud. Fed. R. Civ. P. 9(b); *Republic Bank*, 683 F.3d at 247. For fraud-by-omission claims, the plaintiff must plead "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and

19

the manner in which the omission was misleading; and (4) what [defendants] obtained as a consequence of the alleged fraud." *Id.* at 255–56. This heightened standard applies to both fraudulent misrepresentation and fraudulent concealment claims under Kentucky law. *Id.* at 247–48.

Plaintiff's allegations fall short. The Complaint quotes various public-facing communications, such as community guidelines, a blog post about violent extremism, and a "Guardian's Guide." Am. Compl. ¶¶ 187–91. But it does not allege when Plaintiff encountered any of these statements, which specific representations she relied on in permitting Audree to use TikTok, or how any particular statement induced her to act. The Complaint alleges only, in conclusory fashion, that Plaintiff "trusted the platform's assertions" about safety (*id*. ¶ 216) without identifying which assertions, when she reviewed them, or how they specifically influenced her decision. This is the "high level of generality" that "simply do[es] not suffice under Rule 9(b)." *Republic Bank*, 683 F.3d at 256. Other courts have dismissed similar claims that do "not specify the time, nature, and place of the alleged misrepresentation." *House v. Bristol-Myers Squibb Co.*, 2017 WL 55876, at *6–7 (W.D. Ky. Jan. 4, 2017) (dismissing fraud claims); *see also Robinson on Behalf of T.R. v. Eli Lilly & Co.*, 2018 WL 4039703, at *4 (E.D. Ky. Aug. 23, 2018) (dismissing where plaintiff alleged concealment through "false, fraudulent and misleading advertising" without citing "a single document or statement").

> ii. The Affirmative Misrepresentation Theory Fails for Lack of an Actionable Misrepresentation and Justifiable Reliance

Rule 9(b) aside, to the extent Plaintiff relies on affirmative misrepresentations rather than concealment, the claim fails for two independent reasons: the cited statements are not actionable representations of fact, and Plaintiff has not adequately alleged justifiable reliance.

20

*No actionable misrepresentation.* Under Kentucky law, an actionable misrepresentation "must relate to a past or present material fact. A mere statement of opinion or prediction may not be the basis of an action." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (quotation omitted). The Complaint identifies only generalized corporate communications: TikTok's statement that its "highest priority" is "creating a welcoming environment where everyone feels safe" (Am. Compl. ¶ 187); community guidelines describing safety commitments (*id.* ¶¶ 188–89); a blog post about violent extremism (*id.* ¶ 190); and a "Guardian's Guide" for parents (*id.* ¶ 191). Even reading these allegations in the light most favorable to Plaintiff, none constitutes a verifiable assertion of fact. These statements do not convey specific, measurable commitments about the platform's safety; they describe general corporate values and goals. Such generalized expressions of corporate purpose are not representations of "past or present material fact." *Flegles*, 289 S.W.3d at 549; *see also Morris Aviation*, 536 F. App'x at 562–63 (6th Cir. 2013) (claim "cannot be premised on either future predictions or generalized, subjective opinion")

Other courts have recognized these points in rejecting nearly identical claims against online platforms. For example, the Ninth Circuit affirmed the dismissal of misrepresentation claims against Grindr related to statements that its app is "designed to create a safe and secure environment for its users." *Doe v. Grindr Inc.*, 128 F.4th at 1154. As it explained, these statements are mere "description[s]" of a "[content] moderation policy" that make no "specific promise" capable of factual verification and are "too general to be enforced." *Id.*; *see also Doe v. Discord Inc.*, 2026 WL 1067574, at *12–13 (dismissing misrepresentation claims based on platform's statements about its content moderation practices and features implying that its platform was "safe for minors"). Other courts have applied these to TikTok, explaining that "statements that merely describe content that is allowed or not allowed on the platform, or that describe Defendants'

21

general policies, are not 'equivalent to a representation that Defendants' platforms *do not have* content that violates Defendants' policies or guidelines." *Bogard*, 2025 WL 3637035, at *8.

***No reliance.*** The claim independently fails for lack of justifiable reliance. Under Kentucky law, reliance on a misrepresentation must be "reasonable." *Flegles*, 289 S.W.3d at 549. Plaintiff does not identify any specific statement she actually relied on in permitting Audree to use TikTok, much less explain how such reliance was reasonable. Courts have dismissed materially identical claims on this basis. In *Bogard*, for example, the court reviewed the complaint for allegations that any plaintiff had relied on any of the challenged platform statements "and ha[d] found no such allegations," concluding that "[a]ctual reliance on an alleged misrepresentation is an essential element of Plaintiffs' claims" and dismissing accordingly. 2025 WL 3637035, at *9–10. These same deficiencies equally defeat the reasonableness requirement. To assess whether reliance was reasonable, a court needs to know what specific statement the plaintiff encountered, when she encountered it, and why it was reasonable to credit that statement as a basis for her decision. Plaintiff alleges only that she "trusted the platform's assertions" about safety, without more. Am. Compl. ¶ 216. That is insufficient.

iii.   The Concealment Theory Fails Because Plaintiff Cannot Establish a Duty to Disclose and the Allegedly Concealed Facts Were Publicly Available

Plaintiff's fraudulent concealment claim fails because she cannot establish a duty to disclose, which is the threshold element of any fraud-by-omission claim under Kentucky law. *Giddings & Lewis*, 348 S.W.3d at 747. Kentucky recognizes such a duty to disclose in only four circumstances: "(1) fiduciary relationship; (2) statutory requirement; (3) 'when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure'; and (4) 'where one party to a contract has superior knowledge and is relied upon to disclose same.'" *Id.* at 747–48. None applies here.

22

First, no fiduciary relationship exists between a social media platform and its users. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 971 (E.D. Ky. 2019) ("absurd" to suggest fiduciary duty arises in commercial product relationship). Second, Plaintiffs do not identify any statute that imposes a disclosure duty. Third, TikTok's statements identified in the complaint—for instance, that its "highest priority" is to create a "welcoming environment"—do not create the "impression of full disclosure" triggering a partial-disclosure duty. *See Simpson*, 397 F. Supp. 3d at 971–72 (representations about "high quality" products did not require disclosure of all contaminants); *Morris Aviation*, 536 F. App'x at 569 (partial disclosure "did not create the impression of full disclosure"). Indeed, courts have rejected this theory in the face of significantly more detailed complaints, explaining that a "company is not required to volunteer [information] simply because it makes statements about the high quality of its products and terms of its warranties." *Morris Aviation*, 536 F. App'x at 569. To hold otherwise would mean that a company could be liable for failing to include "virtually any information" in its public statements. *Simpson*, 397 F. Supp. 3d at 972. Fourth, the "superior knowledge" prong also does not help Plaintiff. That duty arises only "where one party to a contract has superior knowledge and is relied upon to disclose same." *Giddings & Lewis*, 348 S.W.3d at 748. An example of this is in the car dealer/consumer relationship, where the seller personally serviced the vehicle and withheld the repair history from the buyer. *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998). Nothing like that exists here.

The concealment theory also fails because the allegedly concealed facts were publicly available. "[M]ere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence." *Bryant v. Troutman*, 287 S.W.2d 918, 920–21 (Ky. 1956); *accord Giddings & Lewis*, 348 S.W.3d at 748–49. The Complaint catalogs

23

how the exact risks it claims were concealed were made public in congressional hearings (Am. Compl. ¶¶ 197–98), academic studies (*id*. ¶¶ 193–96), and media reports (*id*. ¶¶ 199–202), all pre-dating Audree's death. To the extent Plaintiff reframes her theory as targeting TikTok's internal data rather than these public facts (*id*. ¶¶ 227, 229), the Complaint does not identify any specific internal study or metric that TikTok possessed and withheld. Even under the relaxed 9(b) standard for omission claims, *see Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988), a plaintiff must still plead *what* was concealed. *See B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 652 (W.D. Ky. 2019). Plaintiff has not done so, and information "discoverable by the exercise of ordinary diligence" cannot sustain a concealment claim. *See Republic Bank*, 683 F.3d at 257–58.

### e. The Negligent Misrepresentation Claim Fails For the Same Reasons as Plaintiff's Fraud Claim (Claim 2)

Plaintiff's negligent misrepresentation claim fares no better. Under Kentucky law, a negligent misrepresentation claim is subject to Rule 9(b)'s heightened pleading standard, *Republic Bank*, 683 F.3d at 247–48, and requires "an affirmative false statement" of material fact, *Giddings & Lewis*, 348 S.W.3d at 746. Under a negligent misrepresentation theory, as with fraudulent misrepresentation, the claim "must relate to misrepresentations of 'material fact,'" and "mere opinions and predictions" are not actionable. *Morris Aviation*, 536 F. App'x at 563–64 (citing *Flegles*, 289 S.W.3d at 553–54).

Plaintiff's negligence misrepresentation claim relies on the same unactionable statements as the fraudulent misrepresentation claim, and the claim similarly lacks the particularity (including as to reliance) that Rule 9(b) requires. It fails for the reasons set forth above. *See Bogard*, 2025 WL 3637035, at *8 (TikTok statements describing platform policies or what content is allowed were not actionable misrepresentations).

24

### f. The Wrongful Death Claim Fails Absent an Underlying Wrongful Act (Claim 9)

Plaintiff's final claim seeks recovery for wrongful death under KRS § 411.130. Am. Compl. ¶¶ 388–93. That statute creates a cause of action only "[w]henever the death of a person results from an injury inflicted by the negligence or wrongful act of another." KRS § 411.130(1). The claim is "at its core, a tort claim based upon negligence," and the plaintiff bears the burden to prove all the elements of the tort. *Reich v. City of Elizabethtown*, 2018 WL 6028719, at *11 (W.D. Ky. Nov. 16, 2018) (quotation omitted). Because the negligence, product liability, and misrepresentation claims fail against the TikTok Defendants for the reasons set forth above, there is no "negligence or wrongful act" from which her death can be said to result, and the wrongful death claim fails with them. *See* KRS § 411.130(1); *Reich*, 2018 WL 6028719, at *11 (dismissing wrongful death claim when other tort claims failed).

### CONCLUSION

The TikTok Defendants respectfully request that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court dismiss all claims asserted against them in the Amended Complaint with prejudice.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Lori E. Hammond__*
Lori E. Hammond
**FBT GIBBONS LLP**
400 West Market Street, Suite 3200
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile: (502) 581-1087
Email: lhammond@fbtgibbons.com

Geoffrey M. Drake (*pro hac vice*)
Micha Nandaraj Gallo (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
          mnandarajgallo@kslaw.com

David P. Mattern (*pro hac vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Thomas Spiegler (*pro hac vice*)
**KING & SPALDING LLP**
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone: (720) 535 2300
Email: tspiegler@kslaw.com

*Counsel for Defendants TikTok Inc.,
ByteDance Inc., and TikTok LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Lori E. Hammond*
Attorney for Defendants TikTok LLC,
TikTok Inc., and ByteDance Inc.

27