**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

| | |
|---|---|
| JAIMEE SEITZ, individually, and as personal representative of AUDREE HEINE, a minor,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,<br><br>Defendants. | Civil Case No. 2:25-cv-00166-DLB-CJS |

# **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DISCORD INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

A. Discord Users Agree to Be Bound by Its Terms of Service. .......... 1

B. The Terms of Service Contain a Mandatory Arbitration Agreement That Delegates Questions of Arbitrability to the Arbitrator. .......... 3

C. Discord Users Must Accept Updated Terms to Continue Using Discord. .......... 5

D. Plaintiff's Daughter Agreed to Discord's Terms of Service. .......... 7

E. Plaintiff Filed Suit in Contravention of the Arbitration Agreement. .......... 8

III. LEGAL STANDARDS .......... 9

IV. ARGUMENT .......... 10

A. Plaintiff's Daughter Agreed to Arbitrate When She Assented to Discord's Terms at Least Five Times. .......... 10

B. Plaintiff Must Arbitrate the Claims She Brings on Behalf of Her Daughter's Estate. .......... 13

C. Under the Arbitration Agreement's Delegation Clause, the Arbitrator Must Decide Any Arguments Concerning Arbitrability. .......... 14

D. The Court Should Stay These Proceedings, Including Adjudication of Plaintiff's Individual Claim, Pending Arbitration. .......... 17

V. CONCLUSION .......... 20

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Defendant Discord Inc. ("Discord") files this Memorandum in Support of its Motion to Compel Arbitration and Stay Litigation.

## I. INTRODUCTION

Plaintiff alleges that third parties used Discord's messaging service to communicate with her daughter, with tragic consequences. She brings survival claims as the representative of her daughter's estate and a wrongful death claim on her own behalf. This motion does not address Plaintiff's allegations. It asks only that the Court honor the parties' agreement to resolve their disputes in arbitration.

Plaintiff's daughter accepted Discord's Terms of Service on at least five occasions. Each time, the Terms contained an arbitration agreement and a delegation clause providing that an arbitrator, not a court, decides questions about the agreement's scope and enforceability. Under binding Supreme Court and Sixth Circuit precedent, that delegation clause controls. Questions Plaintiff may raise about the agreement, including disaffirmance, are for the arbitrator to decide. Discord respectfully requests that the Court compel arbitration of the survival claims brought on behalf of the estate and stay this action, including the wrongful death claim, pending the arbitration's conclusion. *See* 9 U.S.C. § 3.

## II. STATEMENT OF FACTS

Discord is an online messaging service that enables people to communicate by making calls, sending messages, and sharing documents, pictures, videos, and other media. DE 19 ("FAC") ¶ 133.

### A. Discord Users Agree to Be Bound by Its Terms of Service.

The Terms of Service are an agreement between Discord and users that governs the use of Discord's services, apps, websites, and other products. *See* Decl. of Ben Robbins ("Robbins

Decl.") Exs. A–D. To use the service, a user must first create a Discord account. Robbins Decl. ¶ 2. Creating a Discord account requires accepting the Terms of Service. *Id.* ¶¶ 8–9. Discord's Terms of Service incorporate Discord's Community Guidelines, which explain the types of activity not allowed on Discord. *Id.* ¶ 11; Robbins Decl. Ex. E. Prohibited activities include communications "glorifying or promoting violence or the perpetrators of violent acts" and content that "glorifies, promotes, or normalizes suicide or other acts of physical self-harm." *Id.* at 2, 4.

Discord has identified two accounts created by Plaintiff's daughter. Robbins Decl. ¶ 4. These accounts were created on the Discord app for iOS in May 2020 and April 2022. *Id.* ¶¶ 4–6. Between May 2020 and April 2022, when these two accounts were created, users creating a Discord account using the Discord app for iOS were presented with a screen identical or nearly identical to the following:




*Id.* ¶ 8. As shown above, Discord displayed a notice stating, "By registering, you agree to Discord's Terms of Service and Privacy Policy." *Id.* ¶ 9. The notice appeared immediately below the prominent blue "Create an account" button that users had to click to register. *Id.* The phrases "Terms of Service" and "Privacy Policy" were set off in a distinct color in blue text, in contrast to the other language in the notice, indicating they were hyperlinks that, when clicked, displayed the

full terms. *Id.* Users could not create an account through this process without clicking the action button. *Id.*

### B. The Terms of Service Contain a Mandatory Arbitration Agreement That Delegates Questions of Arbitrability to the Arbitrator.

Discord's Terms of Service contain a conspicuous, easy-to-understand agreement to arbitrate. Robbins Decl. Ex. D ("2024 TOS") at 9–12.[1] The introduction to the Terms calls attention to the arbitration agreement in bold:

> **IMPORTANT NOTE: The section titled "Settling Disputes Between You and Discord" contains an arbitration clause and class-action waiver that applies to all U.S.-based Discord users. Please read this section carefully as it may significantly affect your legal rights, including your right to file a lawsuit in court.**

2024 TOS at 1. The introduction also provides a hyperlink, set out in purple font, to the relevant section, "Settling [d]isputes [b]etween [y]ou and Discord," that takes users directly to the arbitration agreement with one click. *Id.* (table of contents with hyperlink to each section).

The section header appears in large bold font: "**SETTLING DISPUTES BETWEEN YOU AND DISCORD**." 2024 TOS at 9. The agreement requires the user to first attempt to resolve all disputes with Discord informally. *Id.* If the parties cannot resolve a dispute informally,

[1] Discord cites primarily its 2024 Terms of Service because Plaintiff's daughter agreed to the 2024 Terms when they were updated on November 14, 2024. *See* infra § II.D. The arbitration agreements in Discord's 2020, 2022, and 2023 Terms of Service, each in effect when Plaintiff's daughter made her Discord accounts or accepted Terms of Service updates, are materially the same because they each contained a mandatory arbitration agreement covering this dispute and an agreement to delegate arbitrability issues to the arbitrator, either through an express delegation clause or through incorporation of the JAMS rules by reference. *Compare* 2024 TOS at 10–11, *with* Robbins Decl. Ex. A ("2020 TOS") at 10 (incorporating JAMS rules by reference); Robbins Decl. Ex. B ("2022 TOS") at 7 (containing express delegation clause), *and* Robbins Decl. Ex. C ("2023 TOS") at 10–11 (containing express delegation clause). *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) (incorporation of arbitral rules by reference "provides clear and unmistakable evidence" that the parties agreed to delegate arbitrability issues to the arbitrator); *Wood v. Ascend Loans, LLC*, 821 F. Supp. 3d 821, 827 (W.D. Ky. 2026) (same for incorporation of JAMS Rules by reference).

they must resolve it in arbitration: "you and Discord agree to resolve any dispute, disagreement, or claim relating to these terms or our services through final and binding arbitration in the U.S. county where you reside." *Id.* at 10.

Under the subsection titled "**Agreement to arbitrate**," in bold font, the Terms state that the arbitration agreement applies to "claims that arose, were asserted, or involve facts occurring before the existence of this arbitration agreement or any prior agreement as well as claims that may arise after the termination of this arbitration agreement." 2024 TOS at 10. The agreement also provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs its interpretation and enforcement. *Id.* at 9.

The Terms contain an express delegation clause providing that the arbitrator has exclusive authority to resolve all related disputes:

> [T]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these terms of service, including, but not limited to any claim that all or any part of these terms of service are void or voidable, [and] whether a claim is subject to arbitration[.]

*Id.* at 11. This section also provides that the arbitration will proceed under the American Arbitration Association (AAA) Rules, which likewise give the arbitrator authority to decide disputes related to the existence, scope, or validity of an arbitration agreement. *Id.* at 10; *see* R-7, AAA Consumer Arbitration Rules and Mediation Procedures, https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (last visited July 31, 2026); *see Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability.").

In a subsection titled "**Opt-Out**," the agreement permits users to decline the arbitration agreement by providing notice to a specified email address within thirty days of either account creation or the Terms of Service's effective date. 2024 TOS at 12.

The Terms further state that, "[b]y accessing" the Discord app, "you confirm that you're at least 13 years old and meet the minimum age required by the laws in your country." *Id.* at 2. Finally, the Terms provide that California law will govern any dispute arising from them. *Id.* at 9.

**C. Discord Users Must Accept Updated Terms to Continue Using Discord.**

When Discord updates its Terms, it requires users to affirmatively manifest assent to the changes before they can continue using Discord's services. Robbins Decl. ¶¶ 12–13. Discord's Terms explain that Discord makes periodic updates to the Terms and provides notice to users when those changes are made. 2020 TOS at 1; 2022 TOS at 9; 2023 TOS at 13; 2024 TOS at 13. The Terms further advise: "If you continue to use our services after the changes have taken effect, it means that you agree to the changes. If you don't agree, you must stop using our services." 2022 TOS at 9; 2023 TOS at 13; 2024 TOS at 13.[2]

When Discord updated its Terms in 2022, it presented users with a screen identical or nearly identical to the following to provide notice of the updated Terms:

[2] The 2020 Terms contained a similar provision. 2020 TOS at 1 ("Unless we state otherwise, your continued use of the Service after we post modifications will constitute your acceptance of and agreement to those changes. If you object to the changes, your recourse shall be to cease using the Service.").




Robbins Decl. ¶ 12. This screen provided a hyperlink, in blue font, to the "Terms of Service" that, when clicked, displayed the full terms. *Id.* It also included a "Got it" button that required users to acknowledge the Terms update before they could continue using Discord's services. *Id.*

For the 2023 and 2024 Terms of Service, Discord presented users with a screen that provided notice of the updated Terms and required users to click an "Agree" button, substantially the same as shown below:



*Id.* ¶ 13. Immediately above the "Agree" button, the notice stated: "By clicking Agree, you acknowledge that you agree to Discord's Terms of Service and have read our Privacy Policy." *Id.* Like the 2022 screen, the 2023 and 2024 screens provided a hyperlink, in blue font, to the "Terms of Service" that, when clicked, displayed the full terms. *Id.* Users could not continue using Discord without first clicking "Agree" on this page. *Id.*

### D. Plaintiff's Daughter Agreed to Discord's Terms of Service.

Plaintiff's counsel provided Discord with the email addresses and phone number associated with the Discord accounts Plaintiff claims her daughter used. Decl. of Xiang Li ("Li Decl.") ¶¶ 2–3. Discord located two accounts based on this information. Those two accounts were created through Discord's app for iOS in May 2020 and April 2022. Robbins Decl. ¶¶ 5–6.

Plaintiff's daughter agreed to the 2020 Terms when she created her first account in May 2020. *Id.* ¶¶ 5, 8–9. At that time, she was approximately eight years old. FAC ¶ 216. Plaintiff's daughter agreed to the 2022 Terms when she created her second account in April 2022. Robbins Decl. ¶¶ 5, 8–9. At that time, she was approximately ten years old. *See* FAC ¶¶ 215–216.

Discord's business records show that, in creating both accounts, Plaintiff's daughter used a date of birth indicating she was an adult. Robbins Decl. ¶¶ 3, 7. That date of birth allowed the accounts to be created notwithstanding Discord's requirement that all users be at least thirteen years old. *Id.*

Each time Plaintiff's daughter created an account, she clicked the "Create an account" action button immediately above a notice indicating that taking such action meant agreeing to the hyperlinked terms. *See supra* § II.A; Robbins Decl. ¶¶ 8–9. In each case, the notice's reference to the "Terms of Service" contained a hyperlink that provided a reasonable opportunity to review the Terms before deciding whether to create the account. *See supra* § II.A; Robbins Decl. ¶¶ 8–9.

Plaintiff's daughter could not have created her accounts without first clicking an action button to accept the Terms. *See supra* § II.A; Robbins Decl. ¶¶ 8–9. The First Amended Complaint does not allege—and Discord has not located records suggesting—that Plaintiff's daughter followed the arbitration agreement's opt-out procedure. *Id.* ¶ 15.

In addition to accepting the Terms when she created her two accounts, Plaintiff's daughter agreed to the Terms at least three more times. First, she agreed to the 2022 Terms when she used one of her Discord accounts to agree to Discord's 2022 Terms of Service update on July 24, 2022. *Id.* ¶ 14. Second, she agreed to additional Terms of Service updates on April 13, 2023. *Id*. Third, she agreed to additional updates on November 14, 2024. *Id*. Plaintiff's daughter could not have continued to use Discord without agreeing to each of those updates. *Id*. The Amended Complaint alleges that she continued to use Discord in December 2024, *see* FAC ¶¶ 215–223, which is confirmed in Discord's business records, Robbins Decl. ¶ 5.

**E. Plaintiff Filed Suit in Contravention of the Arbitration Agreement.**

Plaintiff filed this action on October 20, 2025, *see* DE 1 (Complaint), and filed an amended complaint on December 2, 2025, DE 19. The First Amended Complaint alleges that third parties communicated with Plaintiff's daughter through Discord, exposed her to messages glorifying violence, and manipulated her to take her own life. FAC ¶¶ 1–8, 218–222. Against Discord, Plaintiff asserts as the personal representative of her daughter's estate claims for fraudulent concealment and misrepresentations (*id.* ¶¶ 224–239); negligent misrepresentations (*id.* ¶¶ 240–254); general negligence (*id.* ¶¶ 255–280); negligence by failure to warn (*id.* ¶¶ 281–299); negligence by unreasonable design (*id.* ¶¶ 300–322); negligent undertaking (*id.* ¶¶ 323–342); strict liability by design defect (*id.* ¶¶ 343–368); and strict liability by failure to warn (*id.* ¶¶ 369–387).

Plaintiff also asserts a wrongful death claim under Ky. Rev. Stat. § 411.130 in her individual capacity as a statutory wrongful death beneficiary (*id.* ¶¶ 388–393).

## III. LEGAL STANDARDS

Under the FAA, which governs the arbitration agreement, 2024 TOS at 9, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[3] 9 U.S.C. § 2. The statute reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified). Courts, therefore, "must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018).

The FAA "leaves no place for the exercise of discretion" but instead "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under the FAA, the existence of an arbitration agreement between the parties covering the dispute "strips district courts of all discretion" other than to send the parties to arbitration. *Drus v. Microsoft Corp.*, 2026 WL 539470, at *3 (E.D. Ky. Feb. 26, 2026) (Bunning, J.). "[F]ederal courts 'are to examine the language of the contract in light of the strong federal policy in favor of arbitration,' and are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration." *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015)

[3] The FAA also governs the earlier Terms that Plaintiff's daughter accepted. 2020 TOS at 9; 2022 TOS at 7; 2023 TOS at 9.

(quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").

These same rules apply to agreements requiring an arbitrator to "decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein*, 586 U.S. at 67–68 (citation modified). Courts must enforce delegation clauses just as they must enforce the arbitration agreement itself. *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–69 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). This enforcement obligation has no exceptions. When an arbitration agreement "delegates the arbitrability question to an arbitrator, a court may not override the contract[,] … even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68. The only question, then, is whether the agreement delegates arbitrability questions to the arbitrator. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). If so, "a court may not decide the arbitrability issue" and must send the parties to arbitration. *Henry Schein*, 586 U.S. at 69.

## IV. ARGUMENT

### A. Plaintiff's Daughter Agreed to Arbitrate When She Assented to Discord's Terms at Least Five Times.

In deciding whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) (quoting *First Options of Chi.*, 514 U.S. at 944). To determine which state's law applies, courts use the choice-of-law rules of the forum state. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 573 (6th Cir. 2019). Here, the forum state is Kentucky,

while Discord's Terms of Service include a California choice-of-law provision. 2024 TOS at 9. But the Court need not engage in any choice-of-law analysis because the outcome under Kentucky and California law is the same. Both states' laws provide that online agreements, including "clickwrap" and "sign-in wrap" agreements, are enforceable where, as here, the website provides reasonably conspicuous notice of the agreement's terms, and the consumer takes some action that objectively manifests assent to those terms, such as clicking a button. *Compare Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514–15 (9th Cir. 2023) (applying California law), *with Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc.*, 2007 WL 3118482, at *1 (W.D. Ky. Oct. 22, 2007) (concluding Kentucky courts would uphold validity of clickwrap agreements), *and Univ. of Ky. v. Regard*, 670 S.W.3d 903, 910 (Ky. 2023) (affirming finding that University of Kentucky waived sovereign immunity defense based, in part, on clickwrap agreement entered into with students).

Discord's Terms of Service constitute a classic, enforceable "clickwrap" or "sign-in wrap" agreement because Discord presents users with conspicuous notice of and an opportunity to review the Terms, and users must click a button to accept the Terms before accessing Discord. *See supra* § II.A. Courts applying California[4] and Kentucky[5] law routinely enforce this type of "clickwrap"

---

[4] *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (agreement enforceable where notice of terms of use was "clear and legible" and placed directly below button to complete purchase); *Oberstein*, 60 F.4th at 515–17 (agreement enforceable where users were shown notice stating that "[b]y continuing past this page, you agree to the Terms of Use[,]" notice included hyperlink to Terms in contrasting blue text, and notice was placed "directly on top of or below each action button"); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 951 (2022) (pop-up next to "continue" button explaining that "[b]y clicking 'Continue', I acknowledge that I have read and understand the" relevant terms provided notice); *Mahram v. Kroger Co.*, 104 Cal. App. 5th 303, 306, 308–09 (2024) (button next to language stating "[b]y signing up, you agree" to terms); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1075–76 (C.D. Cal. 2023) (button "directly above reasonably conspicuous and explicit language" stating clicking "would manifest assent" to hyperlinked terms); *Adibzadeh v. Best Buy, Co.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) ("mutual assent manifests" when users "accept 'clickwrap' agreements").

[5] *See, e.g.*, *Univ. of Ky.*, 670 S.W.3d at 910 (clickwrap agreement where "the user is required to 'explicitly assent by clicking 'I agree' (or something similar) before using the website or

and "sign-in wrap" agreement. The Sixth Circuit has also held that clickwraps or similar agreements are enforceable where, as here, the plaintiff received notice and had an adequate opportunity to review the terms of the agreement. *Page v. GameStop Corp.*, 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025); *cf. Stout*, 228 F.3d at 715 ("This Court applies 'the cardinal rule that, in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.") (citation omitted).[6]

The process by which Plaintiff's daughter repeatedly accepted the Terms of Service fits squarely within these authorities. To create her two Discord accounts, she clicked a button next to a notice indicating that doing so means accepting "Discord's Terms of Service and Privacy Policy." Robbins Decl. ¶¶ 8–9. She could easily review the Terms before accepting by clicking the phrase "Terms of Service," which appeared in blue font and contained a one-click hyperlink to the Terms. *Id.* Each time Plaintiff's daughter created an account, the notice language and conspicuous hyperlink provided reasonable notice of and an opportunity to review the Terms before clicking to proceed. *Id.*

---

purchasing a product"' was enforceable) (citation omitted); *Creason v. Experian Info. Sols., Inc.*, 722 F. Supp. 3d 760, 764 (W.D. Ky. 2024) ("[C]ourts in Kentucky … recognize the validity of 'clickwrap' contracts whereby parties signal their assent to the terms of an agreement by clicking 'I agree.'"); *Seim v. HomeAway, Inc.*, 2017 WL 3478488, at *2 (W.D. Tex. Jan. 18, 2017), *aff'd sub nom.*, *Arnold v. Homeaway, Inc.*, 890 F.3d 546 (5th Cir. 2018) (applying Kentucky law and enforcing agreement where users were shown a screen where they "had to check 'I accept the Terms and Conditions and Privacy Policy' before proceeding"); *Tres Jeanee*, 2007 WL 3118482, at *1 (enforcing "clickwrap" agreement, "which appears onscreen and to which the user must consent by clicking on a box on the screen before he is allowed to continue" because "clickwrap agreements requiring the user to assent to their terms are generally upheld in the face of allegations of insufficient notice of terms").

[6] While *Page* was decided under Texas and Ohio law, its holding applies here because Kentucky law does not meaningfully differ. "Both Ohio and Texas courts require the familiar elements for forming a valid contract, including offer, acceptance, consideration, and manifestation of mutual assent." *Page*, 2025 WL 637441, at *3. The same is true in Kentucky. *See Hansen v. Roberts*, 2024 WL 1685147, at *3 (Ky. Ct. App. Apr. 19, 2024).

Further, the process by which Plaintiff's daughter agreed to three Terms of Service updates also underscores her assent. The 2022 update screen provided notice of and contained a conspicuous link to the Terms updates, and it required her to acknowledge and accept the Terms updates by clicking the "Got it" action button before she could continue using Discord. *Id.* ¶ 12. The screen informing her about the 2023 and 2024 updates also clearly stated: "By clicking Agree, you acknowledge that you agree to Discord's Terms of Service and have read our Privacy Policy." *Id.* ¶ 13.

The decision of Plaintiff's daughter to click to create an account (on two occasions) constitutes an objective manifestation of assent to the Terms, as does her decision (on three occasions) to click to agree to the Terms of Service updates. *See Oberstein*, 60 F.4th at 515–16; *Creason*, 722 F. Supp. 3d at 764; *Univ. of Ky.*, 670 S.W.3d at 910; *Seim*, 2017 WL 3478488, at *2; *Tres Jeanee*, 2007 WL 3118482, at *1; *see also, e.g.*, *Lee v. Ticketmaster LLC*, 817 F. App'x 393, 395 (9th Cir. 2020) (fact that plaintiff clicked to assent to website's terms multiple times "reinforces" that he had many opportunities to review terms before agreeing).

### B. Plaintiff Must Arbitrate the Claims She Brings on Behalf of Her Daughter's Estate.

Plaintiff must arbitrate the survival claims she brings on behalf of her daughter's estate because the arbitration agreement her daughter entered with Discord binds the estate and heirs. *Hearden v. Windsor Redding Care Ctr., LLC*, 103 Cal. App. 5th 1010, 1017 (2024), *aff'd sub nom.*, *Hearden v. Rechnitz*, 2024 WL 3842098 (9th Cir. Aug. 16, 2024), *cert. denied*, 145 S. Ct. 1437 (2025); *San Diego Gas & Elec. Co. v. Super. Ct.*, 146 Cal. App. 4th 1545, 1553 (2007). As her daughter's successor-in-interest, Plaintiff is "bound by the arbitration provisions of the agreements [her daughter] signed" because she "step[ped] into [her] position as to a particular action." *Thomas v. Westlake*, 204 Cal. App. 4th 605, 613 & n.5 (2012).

The same principles apply under Kentucky law. *Kindred Healthcare, Inc. v. Horton*, 2016 WL 4937873, at *3 (Ky. Ct. App. Sep. 16, 2016) (decedent's prior assent to arbitration agreement "covers [the] estate's negligence and personal injury claims"); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012), *cert. denied*, 569 U.S. 954 (2013) (personal representative of estate is estopped from bringing any survival claim that decedent herself would have been estopped from bringing during her life).

### C. Under the Arbitration Agreement's Delegation Clause, the Arbitrator Must Decide Any Arguments Concerning Arbitrability.

The Court need not and may not proceed further to compel arbitration. *Rent-A-Ctr. W.*, 561 U.S. at 69 n.2. The arbitration agreement contains an express delegation clause. *See supra* § II(B) (citing 2024 TOS at 11). Delegation clauses of this kind leave no room for discretion: "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'" *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting *Henry Schein*, 586 U.S. at 68) (enforcing similar delegation clause); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (same). And the Terms' incorporation of the AAA rules, 2024 TOS § 16, independently constitutes further "clear and unmistakable evidence [that] the parties intended the arbitrator to decide" issues of arbitrability. *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 892 (2017); *see StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 879 n.2 ("This court, and each of the ten other circuits to address the issue, has held that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'") (quoting *Blanton*, 962 F.3d at 846).

That Plaintiff's daughter was a minor when she agreed to the Terms of Service does not affect the formation of an arbitration agreement with Discord. Under California law, "a minor may make a contract in the same manner as an adult," Cal. Fam. Code § 6700, except in limited

circumstances not applicable here, *id.* § 6701, and subject to the right of disaffirmance, *id.* § 6710; *see also Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740, 745 (2020). The same is true under Kentucky law. *See Mitchell ex rel. Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. Ct. App. 1998) (contract executed by a minor is enforceable unless voided); *Brown v. Elk Horn Coal Corp.*, 225 Ky. 288, 8 S.W.2d 404, 406 (1928) (minors' contracts are "voidable but not void").

Disaffirmance is also an issue for the arbitrator. Plaintiff's purported disaffirmance of her daughter's contract with Discord, FAC ¶ 12, is not a matter of contract *formation*; it is a claim that a contract was formed but later disaffirmed. As such, disaffirmance is a defense to the *enforcement* of the arbitration agreement—a type of arbitrability dispute that the arbitrator has exclusive authority to decide per the delegation clause. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (any argument that, by its nature, "challenges the enforceability of the arbitration provision as a whole" must be delegated to the arbitrator); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) (claim that agreement is voidable because "one party was an infant" is issue for arbitrator in presence of delegation clause) (citation & internal quotation marks omitted); *see Blanton*, 962 F.3d at 842, 845, 848 (challenge concerning whether employer could enforce arbitration agreement was delegated to the arbitrator); *see also Rent-A-Ctr.*, 561 U.S. at 70–72.

California courts recognize that a minor's purported disaffirmance of an arbitration agreement that invokes the FAA and contains a delegation clause is an issue delegated to the arbitrator. *See, e.g.*, *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1084–85 (N.D. Cal. 2025); *S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1209–10 (S.D. Cal. 2024);

*N.A. v. Nintendo of Am., Inc.*, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023).[7] The Sixth Circuit applies the same principle. *See StockX*, 19 F.4th 873 at 883–84 ("[P]laintiff's infancy argument does not concern the formation or existence of a contract" and thus presents "a matter of enforceability covered under the delegation provision" which was delegated to the arbitrator.).[8]

And even if the Court were to reach the merits of the disaffirmance issue, Plaintiff's attempted disaffirmance would still fail for two independent reasons.

***First***, Discord's business records show that Plaintiff's daughter entered a birth date indicating that she was an adult when she registered for both of her Discord accounts. Robbins Decl. ¶¶ 3, 7. Kentucky law prohibits a minor from disaffirming a contract if they misrepresented their age, and the other party to the contract was unaware of the misrepresentation. *See Elkhorn Coal Corp. v. Tackett*, 261 Ky. 795, 88 S.W.2d 943, 947–48 (1935) (collecting cases). That is the case here: the accounts were created with an adult date of birth, and Discord had no indication otherwise at the time of registration. Because the misrepresentation would have estopped Plaintiff's daughter from disaffirming the arbitration agreement in the Terms, Plaintiff is also barred insofar as she brings survival claims as the personal representative of her daughter's estate. *See Ping, Inc.*, 376 S.W.3d at 595 ("The Estate would be estopped, of course, if [the decedent] were estopped."); *Est. of McGuigan*, 83 Cal. App. 4th 639, 653 n.11 (2000) (administrator of estate

---

[7] The weight of authority in other jurisdictions agree that a delegation clause requires arbitration of minority defenses like disaffirmance. *See, e.g.*, *French v. Roblox Corp.*, 2026 WL 2195890, at *5 (E.D. Pa. July 29, 2026); *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1322–23 (N.D. Ga. 2025); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1284 (M.D. Fla. 2025); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at *3 (E.D. Ark. Mar. 3, 2025); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *6 (N.D. Ill. Feb. 18, 2025); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 982 (E.D. Ark. 2024).

[8] While *StockX* applied Michigan law, both Kentucky and Michigan law hold that contracts with minors are voidable, but not void. *See StockX*, 19 F.4th at 883. Because a minor can form a valid contract, an infancy defense is an enforceability issue delegated to the arbitrator. *Id.* at 884.

"stands in the shoes of, and for the purposes of litigation possesses the same but no greater rights, than the [decedent]") (citation modified), *as modified on denial of reh'g* (Oct. 3, 2000).

***Second***, Plaintiff's daughter never disaffirmed through an affirmative, unequivocal act. California law requires that minors attempting to disaffirm do so through "any act or declaration disclosing an unequivocal intent to repudiate [the] binding force and effect" of the arbitration agreement. *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) (citation omitted). Likewise, under Kentucky law, a minor must disaffirm by an affirmative act. *See Mitchell*, 963 S.W.2d at 223 (traditionally, "[a] repudiation of the agreement requires that the minor return the consideration paid pursuant to that agreement"). No such act occurred here. The Amended Complaint does not allege that Plaintiff's daughter took any affirmative act to disaffirm the Terms during her lifetime. To the contrary, it indicates that she continued to use Discord, which under California and Kentucky law is inconsistent with an intent to disaffirm. *See* FAC ¶¶ 215–223; Robbins Decl. ¶ 5. Indeed, continued use of Discord's services governed by the Terms evinces the ***opposite*** of intent to disaffirm. *See Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 897 (W.D. Mo. 2025) (minor cannot disaffirm terms governing services that minor continues to use and thereby continues "reap[ing] the benefits of the [terms]"); *R.A. v. Epic Games, Inc.*, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019) (same); *G.G. v. Valve Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017) (same), *vacated in part on other grounds*, 799 F. App'x 557 (9th Cir. 2020).

### D. The Court Should Stay These Proceedings, Including Adjudication of Plaintiff's Individual Claim, Pending Arbitration.

The Court should stay this case in its entirety while arbitration proceeds—both as to the survival claims Plaintiff brings on behalf of the estate and the wrongful death claim she brings in her individual capacity. As to the former, a stay is mandatory. 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) ("[T]he FAA's structure and purpose confirm that a stay is required.").

This Court recently applied this rule after granting a motion to compel arbitration and should do so here as to the survival claims. *See Drus*, 2026 WL 539470, at *7 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.") (quoting *Smith*, 601 U.S. at 479).

The Court has discretion and should also stay Plaintiff's wrongful death claim. *Leafguard of Kentuckiana, Inc. v. Leafguard of Ky., LLC*, 138 F. Supp. 3d 846, 859 (E.D. Ky. 2015). In deciding whether a non-arbitrable claim should be stayed, courts consider "whether the arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* (citation modified). Here, the eight survival claims predominate over the single non-arbitrable wrongful death claim. And the wrongful death claim will be informed by the arbitrator's resolution of the survival claims. Resolving the merits of the wrongful death claim will involve many of the same legal and factual issues that an arbitrator will reach when resolving the survival claims, risking conflicting outcomes and wasting judicial resources. *See, e.g.*, FAC ¶ 271 ("Third Cause of Action: Negligence—General" alleging that Discord breached a duty of care owed to Plaintiff's daughter "through its affirmative malfeasance, actions, business decisions, and policies"; *id.* ¶ 390 ("Ninth Cause of Action—Wrongful Death" alleging that Discord is liable due to "wrongful and negligent acts and omissions as described" in the other eight counts). For this reason, courts in the Sixth Circuit routinely stay non-arbitrable claims that are factually and legally intertwined with arbitrable claims. *See, e.g.*, *Leafguard*, 138 F. Supp. 3d at 859; *Koelbl v. Sherwin-Williams Co.*, 2025 WL 3562641, at *8 (N.D. Ohio Dec. 12, 2025) (staying non-arbitrable claims where there was "significant overlap between the facts and issues to be arbitrated").

This principle is particularly important in the context of a non-arbitrable wrongful death claim. In Kentucky, "a claim of wrongful-death requires proof of negligence." *Campagna v. GGNSC Louisville Hillcreek, LLC*, 2018 WL 8489604, at *2 (W.D. Ky. Oct. 3, 2018), *report & recommendation adopted*, 2018 WL 8489599 (W.D. Ky. Oct. 22, 2018). Therefore, "[t]he outcome of the arbitration could impact the viability of the wrongful-death claim because proof of negligence is an essential element of the claim." *Id.* For that reason, staying the wrongful death claim pending arbitration of the antecedent negligence issue "best serve[s] the interests of judicial economy and consistency." *Id.*; *see also Phelps KY Opco, LLC v. Working*, 2026 WL 63511, at *7 (E.D. Ky. Jan. 8, 2026) (staying case as to non-arbitrable wrongful death claim while survival claims for negligence proceeded in arbitration); *GGNSC Louisville St. Matthews, LLC v. Saunders*, 2017 WL 2196752, at *10 (W.D. Ky. May 18, 2017) (same); *Hall v. Evangelical Lutheran Good Sumaritan Soc'y, Inc.*, 2017 WL 3710804, at *4 (W.D. Ky. Aug. 28, 2017) (same).

Because the arbitrable survival claims and non-arbitrable wrongful death claim involve overlapping questions of fact and law, considerations of judicial economy and avoidance of inconsistent results weigh heavily in favor of staying the entire action pending the arbitration. *See, e.g., Imagetec, L.P. v. Lexmark Int'l, Inc.*, 2019 WL 4739686, at *13 (E.D. Ky. Sep. 27, 2019) (staying non-arbitrable claims where "[t]here would likely be a great deal of overlap between the arbitration proceedings ordered here and any litigation, potentially leading to a waste of time and resources for all concerned"). A stay would not prejudice Plaintiff, because the wrongful death claim depends on the same negligence findings that the arbitrator will resolve, and arbitration is designed to proceed efficiently. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–85 (2019) (benefits of arbitration include "greater efficiency and speed").

## V. CONCLUSION

For these reasons, Discord respectfully requests an order granting its motion to compel arbitration and staying all claims against Discord pending the outcome of arbitration.

Respectfully submitted,

/s/ *Palmer G. Vance II*
Palmer G. Vance II
Lilian Williams Ball
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, KY 40507
Telephone: 859.231.3000
Facsimile: 859.253.1093
Email: Gene.Vance@skofirm.com
Email: Lilian.Ball@skofirm.com

AND

Ambika Kumar
Xiang Li
Sara Fairchild
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206.622.3150
Email: ambikakumar@dwt.com
Email: xiangli@dwt.com
Email: sarafairchild@dwt.com

Adam S. Sieff
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Telephone: 213.633.6800
Email: adamsieff@dwt.com

Azeezat Adeleke
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: 202.973.4200
Email: azeezatadeleke@dwt.com

COUNSEL FOR DEFENDANT,
DISCORD INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court's ECF system on the 7th day of August 2026, which serves an electronic copy to the following:

Tad Thomas
J. Nicholas Thompson
THOMAS LAW OFFICES
9418 Norton Commons Blvd., Ste. 200
Louisville, KY 40059

Alexandra M. Walsh
Kristen Feden
D. Patrick Huyett
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103

Davis Cooper
Joseph Masterman
COOPER MASTERMAN
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
ATTORNEYS FOR PLAINTIFF

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC
500 W. Jefferson Street Suite 2400
Louisville, KY 40202

Tiana Demas
Max A. Bernstein
Thomas P. Peabody
Jamie D. Robertson
COOLEY LLP
110 N. Wacker Drive Suite 4200
Chicago, IL 60606
ATTORNEYS FOR DEFENDANT ROBLOX CORPORATION

David Mattern
Geoffrey M. Drake
Jessica P. Corley
Micha Nandaraj Gallo
Thomas Spiegler
KING & SPALDING LLP
1180 Peachtree Street N.E. Suite 1600
Atlanta, GA 30309

Lori E. Hammond
FBT GIBBONS LLP
400 W. Market Street Suite 3200
Louisville, KY 40202
ATTORNEYS FOR DEFENDANTS TIKTOK LLC, TIKTOK INC., and BYTEDANCE INC.

/s/ *Palmer G. Vance II*
COUNSEL FOR DEFENDANT,
DISCORD INC.