**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| JAIMEE SEITZ, individually, and as personal representative of AUDREE HEINE, a minor, Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC., Defendants. | Civil Case No. 2:25-cv-00166-DLB-CJS |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DISCORD INC.'S**</u>
<u>**MOTION TO DISMISS**</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Discord Inc. respectfully files this Memorandum in Support of its Motion to Dismiss with prejudice all claims against Discord by Plaintiff Jaimee Seitz, individually, and as personal representative of Audree Heine.

## I.       INTRODUCTION

Plaintiff alleges third parties used Discord's messaging service to coerce her daughter, Audree Heine, to take her own life. She brings survival claims as the personal representative of her daughter's estate and a wrongful death claim on her own behalf.  Discord monitors for, blocks, and removes harmful messages and user profiles. But the law does not hold a messaging service liable under any theory for failing to police the speech and criminal acts of users who evade those efforts.  The Court should dismiss the claims against Discord with prejudice.[1]

***First***, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars each claim.  Section 230 provides broad protection from claims that would require online publishers like Discord to perfectly monitor, screen, block, or remove content provided by third parties.  The

---

[1] Discord has moved the Court to compel arbitration, and only if it declines, to dismiss the claims.

Complaint seeks to impose an unprecedented duty on messaging apps to prevent the misconduct of users by asking the Court to hold Discord liable for failing to screen for and block the messages Heine exchanged with those users.  Every appellate court to consider similar theories—including as to the very causes of action pled here, as well as another District Court in the Sixth Circuit considering similar claims against Discord, *Doe v. Discord, Inc.*, 2026 WL 1067574 (N.D. Ohio 2026), has rejected them under Section 230.  This Court should do the same.

*Second*, the First Amendment also bars all but Plaintiff's fraud claim.  Under *Smith v. California*, 361 U.S. 147 (1959), Discord cannot be liable for failing to block the profiles and harmful messages that users posted on its service unless Discord *actually knew* the content was unlawful.  The Complaint does not, and cannot, allege such knowledge.

*Third*, the claims fail on their own.  All of the claims fail because Plaintiff does not and cannot plausibly allege that Discord proximately caused Heine's suicide given the intervening conduct of the third parties who coerced her.  Plaintiff fails to allege—much less with the particularity required under Rule 9(b)—that she or Heine relied on any actionable omissions or misrepresentations.  The product liability claims fail because Discord is not a product subject to product liability law and because the app's alleged dangers are inherent in online communication. And the negligence-based claims fail because Discord owed Plaintiff no duty.

## II.      BACKGROUND

### A.      Discord Is an Online Communications Service.

Discord operates a voice, video, and text messaging service. D.E. 19 ("Compl.") ¶ 133. Unlike social media platforms, Discord does not use algorithms to select content for users.  Instead, Discord allows users to post messages, upload files, and share images in direct messages and in group chats (known as "servers" or "channels") they have joined.  *Id.*  In short, Discord allows users to message one another, much like text messaging, iMessage, or WhatsApp.  *Id.* ¶¶ 133-134.

2

Although no law requires apps like Discord to screen messages or implement safety technologies, Discord maintains content moderation policies and safety features, including content filtering, AI-powered moderation, and parental controls to filter and block content. *Id.* ¶¶ 139-140, 149, 169. Discord also releases regular, public reports on its efforts to protect users from harmful content. *See id.* ¶ 142 & nn.149-150; Ex. B (Transparency Reports). And Discord's Terms of Service make clear, while Discord has—and exercises—the discretion to block or remove posts, it is "not responsible" for users' content and "cannot always prevent you from encountering" "objectionable or offensive" content. *See* Ex. A (Terms of Service) at 6-8.[2]

**B.      Plaintiff Seeks to Hold Discord Liable For Failing to Block Harmful Messages.**

Predators promoting violence and self-harm allegedly communicated with Heine through Roblox, TikTok, and messages on Discord, and manipulated her into committing suicide. *Id.* ¶¶ 215-220. Plaintiff alleges Discord is liable because it does not restrict the messages minors like Heine can exchange, *id.* ¶¶ 139, 169, 174-175, does not identify and remove predatory user profiles, *id.* ¶¶ 138, 168, 170, 176-177, does not respond to abuse reports fast enough, *id.* ¶ 179, does not warn of predators, *id.* ¶ 178, and misrepresents the efficacy of its moderation efforts, *id.* ¶¶ 141-149. Plaintiff asserts claims for fraud and misrepresentations (Counts 1 & 2), negligence (Counts 3-6), product liability (Counts 7-8), and wrongful death (Count 9). *Id.* ¶¶ 224-393.

### III.      LEGAL STANDARD

A complaint must be dismissed if it fails to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The failure to assert a "viable legal theory" requires dismissal. *Goins v. Saint Elizabeth Med. Ctr.*, 640 F. Supp. 3d 745, 751 (E.D. Ky. 2022). Fraud-based claims must also, under Rule 9(b), "state with particularity the circumstances

---

[2] The Court may consider the Terms and Transparency Reports because Plaintiff references them. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014); Compl. ¶¶ 138, 142.

constituting fraud," including "the 'who, what, when, where, and how' of the alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (citation omitted).

## IV.    ARGUMENT

**A.    SECTION 230 BARS ALL OF PLAINTIFF'S CLAIMS**

**1.    Section 230 Bars Claims Requiring Platforms to Perfectly Moderate Content.**

Section 230 exists to promote the free exchange of information and "encourage service providers to self-regulate the dissemination of offensive material over their services" by protecting them from suit—not just liability—when offensive material slips through. *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407-08, 417 (6th Cir. 2014) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)). It does this by superseding the common law, under which a platform could escape liability for hosting harmful content if it made *no effort* to locate and remove it, but could be liable *if it tried and failed* to do so. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc) (cited with approval in *Jones*, 755 F.3d at 412); *Discord*, 2026 WL 1067574, at \*6 (statute eliminates "grim choice" posed by common law). Section 230(c)(1) thus protects online services from claims that seek to hold them liable for failing to perfectly monitor, screen, block, modify, edit, or remove third-party content. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

Disputes as to Section 230's application must be resolved promptly and in favor of protection to shield online platforms "from suit," not merely "liability." *Jones*, 755 F.3d at 408, 417 (cleaned up). That means dismissing on the pleadings claims that would impose liability for publishing or failing to remove third-party content. *O'Kroley*, 831 F.3d at 354 (affirming dismissal on pleadings). Courts consistently apply Section 230 to dismiss *any* claims seeking to hold platforms liable for the abuse of one user by another "when the factual predicate is that the two

4

users engaged in messaging using the platform's service." *Discord*, 2026 WL 1067574, at *7 (citing such cases). Both appellate courts[3] and trial courts[4] have reached this same conclusion.

### 2.  Section 230 Bars Plaintiff's Claims.

"Section 230 prohibits holding companies responsible for moderating or failing to moderate content." *Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1182 (9th Cir. 2024). It applies where (1) the defendant is an interactive computer service, and (2) a claim treats the defendant as the publisher (3) of content provided by a third party. *Jones*, 755 F.3d at 409.  Discord is an interactive computer service.  *Discord*, 2026 WL 1067574, at *8.  The other elements are also met.

### a.  The Complaint treats Discord as a publisher of third-party content.

A claim treats a defendant as a publisher if it seeks to hold the defendant liable for reviewing, editing, or "deciding whether to publish, withdraw, postpone or alter" third-party content. *O'Kroley*, 831 F.3d at 355 (cleaned up). This is a broad standard.  "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71. The determinative

---

[3] *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153-54 (9th Cir. 2025) (minor abused by adult he met on app); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (similar); *Doe ex rel. Roe v. Snap, Inc.*, 2023 WL 4174061, at *1 (5th Cir. 2023) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar); *Herrick v. Grindr LLC*, 765 F. App'x 586, 588, 591 (2d Cir. 2019) (offline harassment); *Beckman v. Match.com, LLC*, 668 F. App'x 759, 759 (9th Cir. 2016) (similar); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 572-75 (2009) (abuse of minor).

[4] *See, e.g.*, *Doe v. Grindr, LLC*, 2025 WL 977367, at *3 (N.Y. Sup. Ct. 2025); *K.B. v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025); *Bogard v. TikTok Inc.*, 2025 WL 604972, at *18 (N.D. Cal. 2025); *Doe v. Snap, Inc.*, 2025 WL 2926161, at *4 (Del. Super. Ct. 2025); *Doll v. Grindr Inc.*, 2024 WL 4788525, at *4-8 (Ky. Cir. Ct. 2024); *V.V. v. Meta Platforms, Inc.*, 2024 WL 678248, at *9-11 (Conn. Super. Ct. 2024); *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1101 (S.D. Cal. 2023) *Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. 2023); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020); *Rodriguez v. OfferUp, Inc.*, 2019 WL 13247290, at *2-4 (M.D. Fla. 2019); *Lee v. OfferUp, Inc.*, 2018 WL 4283371, at *4 (E.D. La. 2018); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 322-25 (D.N.J. 2015); *M.A. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1047-53 (E.D. Mo. 2011).

question is the nature of "the duty that the plaintiff alleges the defendant violated." *Barnes*, 570 F.3d at 1102. If it involves exercising "editorial functions"—such as deciding whether to publish, remove, edit, monitor, or screen third-party content—Section 230 bars the claim. *Jones*, 755 F.3d at 416 (cleaned up); *accord Barnes*, 570 F.3d at 1102, 1105.

The Ninth Circuit's decision in *Grindr*, 128 F.4th at 1151, is on point. That case affirmed dismissal of a minor plaintiff's negligence, product liability, failure to warn, and misrepresentation claims against the dating app Grindr for injuries he allegedly suffered after exchanging messages with an adult who then assaulted him offline. *Id*. As here, the plaintiff alleged that Grindr's failure to prevent him from communicating with adult perpetrators breached a "duty not to design or manufacture defective products." *Id*. at 1153. And as here, the plaintiff argued that Section 230 did not bar his claims because they arose from Grindr's own "features and functions"—like its age-verification and messaging features. *Id*. The Ninth Circuit disagreed, holding the claims substantively required Grindr to block profiles and prevent "messages between users that could lead to illegal activity." *Id*. "These claims necessarily implicate Grindr's role as a publisher of third-party content," the court explained, so Section 230 barred them. *Id*.

An Ohio District Court recently applied these principles to dismiss materially identical negligence, product liability, design-defect, failure-to-warn, misrepresentation, and fraudulent concealment claims. *Discord*, 2026 WL 1067574. The plaintiff claimed she was exploited through messages she exchanged with an adult on Discord. Just like Plaintiff here, she faulted Discord for designing an app that allowed "unsupervised" messaging between minors and adults; failed to verify users' ages and identities; did not "implement" effective "parent controls" or "parental notifications" to monitor and supervise messages; neglected to impose default safety settings that would block messages between unconnected users; and failed to adequately "monitor for, report

6

and prevent" predators' use of its service. *Id.* at \*9-10.  The plaintiff claimed Discord "concealed or misrepresented that its content moderation efforts were imperfect and did not match its general safety descriptions," and that Discord's statements describing its safety practices falsely "implied that its platform was safe for minors." *Id*. at \*11, \*12.  Concluding that *Grindr*, 128 F.4th at 1148, was on point, the court dismissed the claims. *Discord*, 2026 WL 1067574, at \*12.

The Fifth Circuit reached the same conclusion in *MySpace*. There, a minor claimed that a website failed to implement adequate safety features, including age-verification, to prevent the minor from using MySpace to communicate with an adult who later assaulted her. 528 F.3d at 416, 419-22. Holding that Section 230 barred her negligent design claims, the district court observed, and the Fifth Circuit agreed, that "the underlying basis of Plaintiffs' claims is that, through postings on *MySpace*," the assailant and victim "met and exchanged personal information which eventually led to an in-person meeting and the sexual assault." *Id*. at 419-20. Since the claims were "merely another way of claiming that MySpace was liable for publishing the communications," and since the only way MySpace could have avoided liability was by screening for and blocking the minor and her assailant's profiles and messages, Section 230 applied. *Id*. at 420.

Plaintiff's claims assert duties materially identical to those rejected in *Grindr*, *Discord*, and *MySpace*. They must be dismissed with prejudice.

***Negligence (Claims 3, 5, 6, and 9)***. The negligence-based claims fault Discord for (i) not verifying users' names or ages, (ii) not applying the most restrictive communication settings by default, (iii) permitting minors to change settings that parents set for them, (iv) not publishing the content of minors' messages to their parents' accounts, (v) allowing users to exchange messages with members of the same server and send friend requests to strangers, (vi) not using a higher age rating in the app stores, and (vii) responding to reports too slowly.  Compl. ¶¶ 138-139, 168-170,

174-179. All these alleged duties would require Discord to alter how it monitors, screens, flags, blocks, or removes users' messages and profiles, *Jones*, 755 F.3d at 416, including the "*neutral tools*" it offers that allow users to communicate in different chats and formats. *Id*. at 411. The Sixth Circuit dismissed similar claims seeking to hold a website liable for the "design" of "content submission" tools because Section 230 bars claims for "providing *neutral* tools to carry out what may be unlawful." *Id*. at 411, 416 (citation omitted); *see also, e.g.*, *Grindr*, 128 F.4th at 1153 (Section 230 barred negligence claims faulting Grindr for offering "features and functions" "meant to facilitate the communication and content of others") (quotation omitted); *Discord*, 2026 WL 1067574, at *10 (Section 230 barred claim against Discord asserting materially identical duties).

***Strict Liability: Defective Design (Claim 7)***. Plaintiff's defective design claim would impose identical editorial duties. The Complaint faults Discord for providing a service that allows "children *to come into contact with* [child] predators," Compl. ¶ 349 (emphasis added), and demands that Discord provide "[e]ffective parental controls" to stop harmful message exchanges; reconfigure features to "block[] direct messaging between child and adult users"; block content from "known abusers"; offer a more restrictive "[c]ontrolled chat" option; and screen users' profiles and age information. *Id*. ¶ 357. Like the negligence claims, this claim would require Discord to perfectly monitor for and block harmful messages, and alter the operation of the neutral tools it provides users to send messages.

Courts have repeatedly held Section 230 bars analogous claims. *Grindr*, 128 F.4th at 1153-54 (affirming dismissal of claim "that Grindr breached its duty not to design or manufacture defective products by failing to prevent a minor from being matched with predators"); *Yolo*, 112 F.4th at 1180 (affirming dismissal of design-defect claims that anonymous messaging features exposed users to harmful user posts); *In re Facebook*, 625 S.W.3d at 93-94 (Section 230 bars

"claims alleging that defectively designed internet products allowed for transmission of harmful third-party communications"); *Discord*, 2026 WL 1067574, at \*10 (same). This Court should do the same. *See also Jones*, 755 F.3d at 416 (Section 230 barred claim targeting platform's "design" of "content submission" features).

***Torts of Omission: Concealment and Failure to Warn (Claims 1, 4, 8)***. Plaintiff cannot overcome Section 230 by reframing the duties she seeks to impose as requiring Discord to make additional disclosures, or better warn users, about the risks of exploitation on the platform. *Cf.* Compl. ¶¶ 224-239, 281-299 369-387. This theory still seeks to hold Discord liable "for not mitigating … the harmful effects" of users' messages, which in substance, faults Discord "for not moderating content in some way, whether through deletion, change, or suppression." *Yolo*, 112 F.4th at 1180 (failure to warn minors about risks of bullying or harassment by other users' messages barred by Section 230). Relying on *Yolo*, the *Grindr* court held that Section 230 prohibited any requirement that Grindr warn users about the risks minors may be exploited on its app. *Grindr*, 128 F.4th at 1154; *see also, e.g.*, *K.B.*, 768 F. Supp. 3d at 1066-67 (applying *Yolo* to bar duty to warn Instagram users that "trafficking is rampant"). The Ohio federal court considering a nearly identical theory of liability against Discord did the same. *See Discord*, 2026 WL 1067574, at \*11-12 (citing both *Grindr* and *Yolo*).

That is the precise warning Plaintiff claims Discord was obligated to give. Plaintiff's failure-to-warn claims (Claims 4 and 8) fault Discord for not warning that predators may misuse its service to groom minors for violence. Compl. ¶¶ 289, 292, 374, 379. But requiring online services to post such warnings "about third-party content is a form of editing" that Section 230 prohibits. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 & n.8 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (Section 230 barred failure-to-warn claim); *see also In re Facebook*, 625

9

S.W.3d at 93 (rejecting nearly identical duty to warn minors of exploitation risk because warning addressed "decisions relating to the monitoring, screening, and deletion of third-party content").

Plaintiff's concealment claim (Claim 1) further alleges Discord hid that its content moderation was imperfect and did not match its general safety descriptions. Compl. ¶¶ 141-149, 150-162, 224-239. Plaintiff says this is fraud and Discord was required to disclose that its moderation is imperfect. Setting aside that Discord did just that, *see* Ex. B, these allegations recycle the State's design-defect and failure-to-warn theories, *Grindr*, 128 F.4th at 1154. The only way Discord could avoid liability is "to take certain moderation actions"—including by disclosing additional warnings—that eliminate the alleged discrepancy between the description of its moderation efforts and the reality of its moderation. *Id.* (quoting *Yolo*, 112 F. 4th at 1178-79); *see Discord*, 2026 WL 1067574, at *11 (same).

Both of these "tort of omission" theories fail under Section 230 because "any liability would be premised on second-guessing" Discord's "decisions relating to the monitoring, screening, and deletion of third-party content." *In re Facebook*, 625 S.W.3d at 93 (cleaned up). Any other rule "would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn" or some other omission. *Discord*, 2026 WL 1067574, at *12 (quoting *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914-15 (2024)).

***Misrepresentation (Claims 1, 2)***. Plaintiff's vague misrepresentation claims fare no better. Plaintiff claims Discord's statements about its content moderation practices and features imply that its service is safe for minors. Compl. ¶¶ 141-149, 228, 243, 245. By faulting Discord for these alleged "misrepresentations"—in reality, non-actionable aspirational statements, *infra* § IV.C.2—the Complaint seeks to hold Discord liable for failing to "conform its content moderation" practices to what Plaintiff *thinks* Discord's statements about those practices require.

*Discord*, 2026 WL 1067574, at \*12.  Fulfilling that duty "would necessarily require" Discord to change how it "moderate[s] content posted by third parties." *Bogard v. TikTok Inc.*, 2025 WL 604972, at \*18 (N.D. Cal. 2025) (dismissing claims that platforms misrepresented "how they handle prohibited content").[5]

The Ohio court in *Discord* dismissed misrepresentation claims based on the same statements.  *See* Compl., *Jane Doe v. Discord Inc.*, No. 1:25-cv-1789, ECF No. 1 ¶¶ 25-28, 89-104, 234-248 (N.D. Ohio filed Aug. 27, 2025).  Citing *Grindr*, 128 F.4th at 1154, the court held that Discord's statements did not express "a specific promise" but "general aspirational goals" about content moderation "protected from liability under § 230." *Discord*, 2026 WL 1067574, at \*12-13 (emphasis omitted).  The decision applied the rule that Section 230 bars misrepresentation claims about content moderation unless they seek to enforce duties arising from an enforceable promise. *Barnes*, 570 F.3d at 1107-08.  The absence of such a promise—and a service "need only disclaim any intention to be bound" to defeat one, *id.* at 1108—is dispositive.  *See Grindr*, 128 F.4th at 1154 (Section 230 barred misrepresentation claim predicated on Grindr's general safety assurances); *see also, e.g.*, *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1199-1201 (N.D. Cal. 2009) (Section 230 barred deceptive practices claims alleging Google failed to remove content, as its statements suggested it would, since those statements were not promises).

Discord's express disclaimers—in its Terms of Service that all users must accept—confirm that its statements cannot possibly be construed to create an enforceable promise.  The Terms state

---

[5] *See also, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206–07 (2017) (dismissing claim based on Facebook's "*representations*" about content removal because it targeted Facebook's publishing activity); *Beckman v. Match.com LLC*, 668 F. App'x 759, 759-60 (9th Cir. 2016) (dismissing misrepresentation claims based on defendant's "role as a publisher of third-party information"); *Zhang v. Twitter Inc.*, 2023 WL 5493823, at \*4 (N.D. Cal. 2023) (Section 230 barred misrepresentation claims targeting failure to remove content "whether they are styled as breach of contract, tort, or fraud claims"), *aff'd*, 2025 WL 66050 (9th Cir. 2025).

Discord "cannot always prevent you from encountering content that you may find objectionable," and "will not be liable for any harm caused by that content." Ex. A at 8. Under *Barnes*, that forecloses any possible enforceable promise. 570 F.3d at 1108; *see, e.g.*, *Murphy v. Linkedin Corp.*, 2026 WL 881710, at *2-3 (N.D. Cal. 2026) (Section 230 barred "representation-based claims" based on general safety statements where platform disclaimed any promise in user agreement); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *2, *5 (C.D. Cal. 2021) (same because Twitter disclaimed responsibility for enforcing its aspirational statements about content).

### b. The content Discord allegedly failed to moderate was posted by users.

The third prong of Section 230 is satisfied because the Complaint admits Discord did not create the messages Heine exchanged with the third parties who coerced her. Compl. ¶¶ 219-220. Providing the tools Heine and third parties used to communicate does not transform Discord into a content provider. *Jones*, 755 F.3d at 409; *see also Grindr*, 128 F.4th at 1152-53 (offering "features and functions" that enable communication is not creating content). Plaintiff's claims seek to hold Discord liable for *facilitating*—and failing to moderate—the messages Heine received. *E.g.*, Compl. ¶¶ 217, 219-221. Section 230 bars such claims.

### B. THE FIRST AMENDMENT BARS PLAINTIFF'S NON-FRAUD CLAIMS

The First Amendment prohibits holding a forum for third-party speech liable for the content it distributes without proof that the forum at least had "knowledge … of the contents" of the speech in question. *Smith*, 361 U.S. at 149, 153-54 (bookseller could not be liable for distributing obscene books without knowledge the books were obscene). Because Plaintiff bases her non-fraud claims on what Discord *should* have known about the speech conveyed through its platform, regardless of what it actually knew, the First Amendment bars the claims.

Under *Smith*, a distributor may "not be punished if he did not have some 'knowledge of the contents' of the allegedly" unlawful material. *United States v. U.S. Dist. Ct. for Cent. Dist. of*

12

*Cal.*, 858 F.2d 534, 539 (9th Cir. 1988) (citation omitted); *see also Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (any claim that "chills the exercise of First Amendment rights must contain a knowledge element") (quoting *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992)).  Thus, in *Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), the plaintiff failed to state a claim because "[n]o specific facts" were "alleged to show that the distributor defendants … had knowledge of the [unlawful] nature" of the speech published. *Id*. at 464-65. "[T]here can be no liability" against a distributor of third-party speech consistent with "[t]he high standards required by the First Amendment" absent scienter and "specific factual allegations concerning actual knowledge." *Id.* at 463, 465; *see also, e.g.*, *Jackson v. Whitepages, Inc.*, 798 F. Supp. 3d 583, 611  (N.D. W. Va. 2025) (First Amendment barred privacy tort against platform for disseminating third-party content because claim "lacks any mechanism, such as a notice requirement or a knowledge element" to establish scienter).

The First Amendment bars Plaintiff's non-fraud claims here. The Complaint does not allege Discord knew about any specific scheme targeting Heine or the contents of her communications with her abusers.  Nor does it allege Discord knew of the existence of any particular content in the servers Heine had joined.  Rather, it asserts Discord *generally* knew *some* bad actors had previously used the service for similar harmful activities.  Compl. ¶¶ 152, 162.  But that is not enough to hold an online service liable for disseminating unlawful content when, as here, that service "was in the dark about the contents" of the communications Heine received. *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168, 169 (6th Cir. 2005) (First Amendment barred liability where music distributor lacked knowledge that third-party records were unlawful). Holding a service liable in these circumstances would "have a chilling effect upon protected speech" because services, exercising caution, would self-censor and host less third-party speech

13

to avoid liability.  *Id.* at 169.  Traditional First Amendment principles—not just Section 230's enhanced protections—thus bar Plaintiff's claims.

**C.      PLAINTIFF CANNOT STATE ANY CLAIM AS A MATTER OF LAW**

Plaintiff also fails to adequately allege essential elements of each claim.

**1.      Discord Is Not a Proximate Cause of Plaintiff's Injuries (Claims 1-9)**

Each claim requires plausible proximate cause allegations.  *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549, 553 (Ky. 2009) (fraud); *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436-37 (Ky. Ct. App. 2001) (negligence); *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995) (product liability); *Patton v. Bickford*, 529 S.W.3d 717, 729, 731 (Ky. 2016) (wrongful death).

Only conduct that in a continuous and natural sequence, unbroken by any intervening cause, directly and foreseeably produces an alleged injury may constitute such a cause.  *Id.* at 731. This is an issue of law to be decided by the Court.  *Id.*  The requirement reflects "a limitation on how far society is willing to extend liability for a defendant's actions."  *Id.*  And since "federal courts must proceed with caution when making pronouncements about state law," courts given a choice between "an interpretation [that] reasonably restricts liability, and one that greatly expands" it, should adopt "the narrower" option.  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (cleaned up).

Where, as here, a defendant merely created a situation that was "harmless until acted upon by forces out of [its] control," its conduct is too "remote" to support liability, and the intervening force breaks the causal chain.  *See Lhotsky v. Sutcliffe*, 723 S.W.3d 842, 854 (Ky. Ct. App. 2025) (placement of stone mailbox by road was not proximate cause of injuries suffered when speeding driver lost control of vehicle and hit it—mailbox merely "furnished the occasion of the injuries"). The Sixth Circuit has concluded that Kentucky law likely requires dismissal of claims like Plaintiff's for lack of proximate cause.  In *James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir.

14

2002), parents of students killed in a school shooting sued companies who published content that allegedly promoted violence and facilitated the shooter's actions. *Id.* at 687. Although the court dismissed on other bases, *infra* § IV.C.4, it also explained that "the idiosyncratic nature" of the shooter's conduct likely "constitutes a superseding cause," foreclosing proximate cause as a matter of law. *Id.* at 699-700. So too here. The Complaint avers that Discord caused Heine's (and thus Plaintiff's) injuries by failing to restrict who could message Heine. Compl. ¶¶ 217, 220. But Discord "only created a condition" that Heine's abusers exploited. *Howard v. Spradlin*, 562 S.W.3d 281, 289 (Ky. Ct. App. 2018). The alleged exploitation by third parties—"grooming," "manipulation," "violent rhetoric," "instill[ing] fear and shame," and convincing her to take her own life, Compl. ¶¶ 219-221—constitutes the type of independent intervening act that breaks the causal chain as a matter of law. *See Meow Media*, 300 F.3d at 689-700.

No Kentucky court has held a messaging service to be the proximate cause of injuries inflicted by third-party messages because the service did not monitor or restrict those messages. And for good reason. Plaintiff's theory would make such services "liable for seemingly endless" instances of "independent criminal acts" that happen to be carried out through communications on their services. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 & n.4 (6th Cir. 2019) (hosting allegedly criminal content did not make communication service proximate cause of crimes). *Crosby* involved federal and Michigan common law tort claims, but its holding "refusing to extend" online platforms' tort liability to "everything that an individual may do" through their services, *id*. at 623, 625, resonates with Kentucky law that intervening misconduct of a third-party supersedes alleged liability that might otherwise run to a defendant. *See Patton*, 529 S.W.3d at 731. Accepting Plaintiff's theory would subject Discord—and every messaging service—to "seemingly boundless litigation risks" for any abusive conduct allegedly facilitated through their service. *Fields v.*

*Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (providing users with "accounts and direct messaging services" did not proximately cause crimes committed using them).

Courts consistently dismiss claims that online services are the proximate cause of third-party misconduct merely because they provide the tools used to commit them. *See, e.g.*, *Meador v. Apple, Inc.*, 911 F.3d 260, 267 (5th Cir. 2018) (iMessages); *Roland v. Letgo, Inc.*, 2024 WL 372218, at *5 (10th Cir. 2024) (marketplace app); *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *5 (S.D. Tex. 2021) (backend software that enabled messaging). The Court should here, too.

### 2.     The Misrepresentation and Concealment Claims Fail (Claims 1-2)

Plaintiff's fraud and negligent misrepresentation claims fail for lack of causation and also because each claim fails to plead essential elements with the particularity required by Rule 9(b). *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 254 (6th Cir. 2012).

The "fraudulent concealment and misrepresentations" claim (Claim 1), although pleaded as a single count, encompasses two distinct legal theories with "substantially different elements." *Id.* Fraudulent misrepresentation requires an affirmative false statement of material fact. *Id.* at 248. Fraudulent concealment, in contrast, hinges on a duty to disclose a material fact and requires that the defendant both failed to disclose that fact and induced the plaintiff to act. *Id.* at 255. Negligent misrepresentation (Claim 2) applies only to affirmative false statements—not omissions.[6] *Id.* at 260. Each theory also requires that the plaintiff reasonably relied on the alleged misrepresentation or omission. *Kannapel v. Int'l Bus. Machs. Corp.*, 2021 WL 4164689, at *4 (W.D. Ky. 2021). The Complaint does not adequately allege any of these elements.

***No misrepresentation***.  Both misrepresentation claims require identifying a false statement of fact and explaining what made it false. *See Republic Bank*, 683 F.3d at 248, 260 (citing Rule

---

[6] The negligent misrepresentation claim thus fails to the extent Plaintiff bases it on allegations that Discord "conceal[ed]" and "fail[ed] to disclose" information.  Compl. ¶ 245.

9(b) requirements).  Plaintiff alleges Discord made "numerous false representations about the safety" of Discord's app.  Compl. ¶¶ 228, 243.  But the Complaint does not identify what specific representations are at issue or why they are false, leaving Discord to guess which (if any) of the statements in the factual background[7] might be the basis of these claims and speculate as to Plaintiff's theory of falsity.  *See id.* ¶¶ 141-149, 228, 243.  This alone requires dismissal under Rule 9(b).  *See Slone v. CL Med., Inc.*, 2013 WL 6551093, at *2 (E.D. Ky. 2013) (dismissing "boilerplate allegations of purported misrepresentations" as plaintiffs "fail[ed] to identify any *specific* misrepresentation" that defendant "transmitted or authored").

Even if the Complaint did specify which representations Plaintiff believes are false, the claim would still fail because none of Discord's statements in the Complaint is actionable.  "To be actionable," an alleged representation "must relate to a past or present material fact." *Republic Bank*, 683 F.3d at 248; *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 748 (Ky. 2011). "[O]pinions," "forward-looking" predictions, and "puffing" do not suffice.  *Flegles*, 289 S.W.3d at 549-50 (citation omitted & cleaned up).

The statements Plaintiff quotes reflect Discord's aspirations, such as "[w]e've always wanted Discord to be a place where one could safely play games with friends," Compl. ¶ 141, "[s]afety is at the core of everything we do and a primary area of investment as a business," *id.* ¶ 144, and "[b]ecause safety is critical to our core mission, Discord takes a 'safety by design'

---

[7] Plaintiff selectively quotes portions of Discord's statements, takes them out of context, and reframes them in ways that change their meaning.  *See* Compl. ¶¶ 141-149.  For example, the Complaint alleges that in Discord's Q1 2022 Transparency Report, Discord "claimed 'to ensure that violent extremism does not have a home on Discord.'"  *Id.* ¶ 142.  The Transparency Report in fact provides a link to a blog post discussing "our methods to address violent extremism," and says: "we've *made progress* in our tooling, policy, and subject matter expertise to ensure that violent extremism does not have a home on Discord," Discord, *Discord Transparency Report: January-March 2022*, https://discord.com/blog/discord-transparency-report-q1-2022 (cited at Compl. ¶ 142 n.149) (emphasis added)—making clear Discord's *goal* is to screen such content.

approach to our work," *id.* ¶ 148. These statements are nonactionable opinion, and they do not become actionable merely because Plaintiff contends "they are misguided, imprudent or overly optimistic." *Flegles*, 289 S.W.3d at 549. Discord's comments about safety also "do not qualify as promises," and thus cannot support a misrepresentation claim. *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 472-73 (6th Cir. 2011) (affirming dismissal of claims based on statement describing certain bonds as "safe and liquid"); *accord Grindr*, 128 F.4th at 1154 ("statement that an interactive computer service provider will create a safe and secure environment is too general to be enforced" as misrepresentation); *Greater Hou. Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 684 (S.D. Tex. 2015) (statements about commitments to user safety not actionable).

To the extent any of Discord's statements contains factual elements, the Complaint does not allege those facts are false. Plaintiff does not dispute, for example, that Discord has "[m]any teams" that "work together … building products and policies," "do[es] not issue warnings" in cases of "Violent Extremism" "but rather immediately disable[s] the account and remove[s] the content," provides "default settings" that "automatically scan[] direct messages for explicit images and videos," or uses an "explicit image filter" to "automatically block direct messages that may contain explicit images." Compl. ¶ 141-149. The absence of allegations explaining why any of Discord's statements is false requires dismissal, too. *See Griffin v. Middlefork Ins. Agency*, 2017 WL 4413403, at *4 (E.D. Ky. 2017) (allegation that plaintiff relied on statement to her detriment did not state a claim because complaint failed to allege statement was false or what made it false).

***No duty to disclose.*** Unlike misrepresentation claims, a fraudulent concealment claim hinges on a duty to disclose. *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998) ("mere silence is not fraudulent"). Kentucky recognizes a duty to disclose in only four circumstances: (1) a confidential or fiduciary relationship, (2) a statutory duty, (3) a partial

18

disclosure of material facts that creates the impression of full disclosure, or (4) "where one party to a contract has superior knowledge and is relied upon to disclose [the] same." *Giddings & Lewis*, 348 S.W.3d at 747-48.

None of these circumstances is present here. Plaintiff asserts Discord had "superior knowledge" of the risks to minors on its service. Compl. ¶ 227. But superior knowledge alone is not enough—the parties must be in a contractual relationship such that the failure to disclose is "so extreme and unfair, as to amount to a form of swindling." *See Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009); *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013) (affirming dismissal for lack of duty to disclose where defendant allegedly had superior knowledge but was not party to contract). Plaintiff does not allege she contracted with Discord or was in privity with Heine when she did. And while Heine necessarily accepted Discord's Terms of Service as a user, those Terms *disclaim* any such duty, Ex. A at 6-8, and the Complaint does not allege that Discord's alleged failure to disclose risks "induced" Heine to do anything. *Buridi v. Branch Banking & Tr. Co.*, 2013 WL 1309763, at *4 (W.D. Ky. 2013). Plaintiff's failure to plead a recognized duty to disclose is fatal. *See id.* (dismissing fraudulent concealment claim for failure to allege duty to disclose); *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 971 (E.D. Ky. 2019) (same because courts may not "transform everyday, arms-length business transactions into fiduciary relationships").

*No concealment*. Even if there were a duty to disclose, the Complaint—far from identifying with particularity facts that were concealed—*admits* that Discord regularly discloses facts about the safety of its platform by publicly sharing its Transparency Reports. *See* Compl. ¶ 142 nn.149-150; Ex. B. In these reports, Discord discloses precisely how many accounts and servers were flagged for "child-safety" issues (including "grooming"), "bullying," content

19

"promoting acts of self-harm," and "glorification of violence." Ex. B at 3-6, 10-11, 14, 23-26, 28-30, 33. Additionally, the Complaint cites public reports documenting instances where harmful content evaded Discord's moderation. Compl. ¶¶ 151-162 & nn.165-187. Because the allegedly concealed information was publicly available on Discord's website, her concealment claim fails. *See Simpson*, 397 F. Supp. 3d at 972 (dismissing because the defendant publicly disclosed the allegedly omitted information on the internet).

*No reasonable reliance*. Each misrepresentation and omission claim requires Plaintiff to plead that she or Heine "reasonably relied" on Discord's alleged representations. *Kannapel*, 2021 WL 4164689, at *4. Under Rule 9(b), this requires alleging facts that someone "actually" and "directly" relied on specific statements or omissions. *Crown Battery Mfg. Co. v. Club Car, Inc.*, 2015 WL 5011988, at *3 (N.D. Ohio 2015). Failure to allege with particularity that anyone "ever read, was aware of, took note of, or had in mind" an alleged material representation requires dismissal. *Id*. Here, the Complaint does not allege which—if any—representations were read, when, or how it informed reliance. *See, e.g.*, *Amos v. Lampo Grp., LLC*, 2024 WL 3675601, at *6 (6th Cir. 2024) (dismissing fraud claim where complaint failed to provide "facts, with the requisite particularity, as to why the reliance was reasonable"); *Huffman v. Fifth Third Bank, Inc.*, 2015 WL 12977102, at *3 (E.D. Ky. 2015) (conclusory allegation that "Plaintiff justifiably relied upon the representations" insufficient). This failure is particularly problematic because most of the statements mentioned in the Complaint did *not even exist* when Heine created a Discord account. *See* Compl. ¶¶ 142-149 nn.149-160 (citing pages published between 2021 and 2025); *id.* ¶¶ 215-216 (alleging Heine began using Discord in 2019-2020). The Complaint only asserts Plaintiff "trusted the platform's assertions that their safety and community standards kept the platform safe for children" and "would have not permitted children to use the app[]" had she known it was

20

unsafe. *Id*. ¶¶ 216, 235. That fails a notice-pleading standard, much less *Twombly* and Rule 9(b).

Even if the Complaint identified the statements underlying its misrepresentation claims *and* alleged with particularity that Plaintiff read and relied on them, the claims would still fail because any reliance was not reasonable. Where, as here, statements do not create an enforceable promise, a plaintiff's alleged reliance is not justifiable as a matter of law. *See, e.g.*, *Ashland*, 648 F.3d at 472 (no justifiable reliance on general representations of "safety"); *see also Mitchell v. Gen. Motors LLC*, 2014 WL 1319519, at *14 (W.D. Ky. 2014) (dismissing fraudulent concealment claim alleging that statements describing vehicle as safe and reliable gave rise to duty to disclose defects because descriptions were "puffery on which no buyer would reasonably rely"). And the very same webpages that Plaintiff claims "misrepresented" Discord's safety *acknowledge* that predators misuse Discord's service—directly contradicting Plaintiff's assertion that Discord concealed this risk. *See, e.g.*, Ex. B (Transparency Reports, cited at Compl. ¶¶ 142 & nn.149-150) at 3-6, 10-11, 14, 23-26, 28-30, 33; Compl. ¶¶ 144-145 nn.153-155.[8] This contradiction requires dismissal too. *See, e.g.*, *Ruff v. Perfetti Van Melle USA Inc.*, 2024 WL 329525, at *4 (E.D. Ky. 2024) (no reasonable reliance where complaint cited statement from defendant that directly contradicted alleged misrepresentation; citing similar cases).

### 3.    Plaintiff Cannot Plead Viable Product Liability Claims (Claims 7-8)

Plaintiff's product liability claims fail for lack of proximate causation, *supra* § IV.C.1, and

---

[8] For example, one page states, "The fight against bad actors on communications platforms is unlikely to end soon," and identifies the types of harms Discord sees and responds to. *See* Discord, *Discord's Commitment to a Safe and Trusted Experience* (May 12, 2022), https://discord.com/safety/360043700632-discords-commitment-to-a-safe-and-trusted-experience (cited at Compl. ¶ 144 n.154). Another states, "Parents are rightfully concerned about any media their kids are using, and the best way to make sure they're using it safely is to understand how it works," providing links to "resources to talk to your teens about online safety." *See* Savannah Badalich, *Settling Into School With Discord* (Sep. 28, 2021), https://discord.com/safety/settling-into-school-with-discord (cited at Compl. ¶ 145 n.155).

also should be dismissed because Discord is not a product and the dangers of online communication are open and obvious.

   ***Discord is not a product***.  Like the Restatement (Third) of Torts: Prod. Liab. § 19 (1998), Kentucky product liability law applies only to "tangible personal property."  *See Giddings & Lewis*, 348 S.W.3d at 737 n.5 (citing with approval Restatement's definition of product); *Powell v. Tosh*, 929 F. Supp. 2d 691, 713 (W.D. Ky. 2013) (predicting Kentucky Supreme Court will adopt Restatement "as it has always done"), *opinion vacated in part on other grounds on reconsideration*, 2013 WL 1878934 (W.D. Ky. 2013).  The Sixth Circuit in *Meow Media* accordingly dismissed claims that services that provide "internet transmissions" are "not 'products' for purposes of Kentucky law."  *Meow Media*, 300 F.3d at 688, 695, 701. The weight of authority from other jurisdictions agrees.  *See also, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (online "platform that connects users" not a "product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. 2023) (Snapchat); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (Amazon); *Deditch v. Uber Techs., Inc.*, 2025 WL 1928937, at *2 (N.D. Ohio 2025) ("digital app"); *Macek v. DraftKings, Inc.*, 2026 WL 802286, at *13-15 (E.D. Pa. 2026) (DraftKings app).

   ***Obvious alleged risks***.  The failure-to-warn claim (Claim 8) fails because Kentucky product liability law does not require warnings of alleged risks that are "open or obvious." *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 782 (Ky. 1984).  The risks Plaintiff alleges here—exposure to exploitation by other users, *e.g.*, Compl. ¶¶ 219-220—are "unfortunate realities" of online messaging that "exist[] anywhere on the internet." *Yolo*, 112 F.4th at 1181.  The Complaint acknowledges these risks are widely known. Compl. ¶¶ 151-162 & nn.165-184.  And the Sixth Circuit affirmed dismissal of product liability claims for this very

reason in *Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008), holding that the risk of harmful "representations" online are "well known." These obvious risks are not actionable.[9]

### 4. The Negligence-Based Claims Fail Because Discord Had No Actionable Duty (Claims 3-6, 9)

Plaintiff's negligence-based claims fail for the additional reason that Plaintiff cannot allege that Discord owed her a duty of care. The Sixth Circuit rejected a substantially similar alleged duty in *Meow Media*, 300 F.3d at 691-95, holding that under Kentucky law, distributors of video games, movies, and internet sites owed no duty of care to victims of a school shooting that was allegedly facilitated by the content they carried. That holding applies here.

In Kentucky—like other states—alleged misfeasance (creating a risk of harm) may give rise to a duty, but alleged nonfeasance (failing to act) does not. *See Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005) (citing cases). The duties alleged here sound in nonfeasance, as they would require messaging apps like Discord to stop users from using their services to harm other users. *See* Compl. ¶¶ 217, 271-272, 292, 314 (alleging Discord owed duty to protect Heine from third-parties).

As a "general rule," an actor "has no duty to control the conduct of a third person to prevent him from causing harm to another." *Grand Aerie*, 169 S.W.3d at 849. It does not matter if "the actor realizes or should realize that action on his part is necessary for another's aid or protection," and the rule applies "irrespective of the gravity of the danger." *James v. Wilson*, 95 S.W.3d 875, 889-90 (Ky. Ct. App. 2002) (citation & internal quotation marks omitted) (classmates had no duty to warn that student who shot plaintiffs' daughters had brought guns to school in past).

---

[9] Both Plaintiff's failure-to-warn claims (Claims 4 & 8) also fail because the Complaint admits Discord discloses the limitations of its content moderation and the resulting risks in its public Transparency Reports. *See* Ex. B at 3-6, 10-11, 14, 23-26, 28-30, 33. That satisfies any purported duty to warn. *See SexSearch.com*, 551 F.3d at 420 (even if platform had duty to warn of online dangers, disclaimer in platform's terms of use likely satisfied it).

Although a "special relationship" can create an exception to this rule, Compl. ¶ 259, no such relationship exists here. *See Meow Media*, 300 F.3d at 694-95 (finding "nothing close to a special relationship" between media providers and users that would obligate providers to protect users from third-parties). The limited set of special relationships Kentucky courts have recognized—parent and minor, master and servant, property owner and licensee, person in charge of someone with dangerous propensities and person under their control, and mental health professional and patient—are fundamentally different in character and kind given their closeness and the defendant's ability to control third-party conduct. *See Grand Aerie*, 169 S.W.3d at 850 (citing Restatement (Second) of Torts §§ 315-319). Other courts have declined to expand these special relationships to the circumstances alleged here. *See, e.g.*, *Godwin v. Facebook, Inc.*, 160 N.E.3d 372, 379-80 (Ohio Ct. App. 2020) (under Ohio law, social media company had no special relationship with users); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099, 1101 (9th Cir. 2019) (California law); *Beckman v. Match.com, LLC*, 743 F. App'x 142, 142-43 (9th Cir. 2018) (Nevada law); *Herrick*, 306 F. Supp. 3d at 598-99 (New York law).

Analogizing to premises liability does not change the analysis or make Discord liable to users as business invitees. Compl. ¶ 259.a. No Kentucky court has extended premises liability to the internet. And other courts have squarely rejected it, holding websites are *not* the "equivalent of a brick and mortar business" and cannot owe "the same duty that all businesses open to the public owe their invitees" without having "a chilling effect" on speech. *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *14 (N.D. Cal. 2017) (cleaned up), *aff'd*, 934 F.3d 1093; *see Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413; *M.L. v. Craigslist Inc.*, 2020 WL 6434845, at *13 (W.D. Wash. 2020).

Plaintiff also cannot avoid dismissal by reframing the duty in terms of misfeasance.

24

Discord's only affirmative conduct is offering a messaging service, something Kentucky courts have never held to generate any kind of actionable duty. Indeed, "[n]o website could function if a duty of care was created when a website facilitates communication … of its users' content." *Dyroff*, 934 F.3d at 1100-01. The "creation and operation of a communication platform" thus "does not by itself" generate a duty of care. *Ziencik*, 2023 WL 2638314, at *5.

Nor did Discord undertake such a duty by including safety features and parental controls in its service, or by describing them. *See* Compl. ¶¶ 325-326. A negligent undertaking duty arises only when a defendant does something specific for a specific person. *See Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998). "Precatory statements and generic expressions of intent"—like Discord's statements here, *supra* § IV.C.2—"do not create legal duties." *Id.* (tobacco companies' stated commitment to cooperate with public health officials and assist in research did not give rise to duty to protect anyone from dangers of smoking). Plaintiff does not allege Discord specifically undertook to ensure safety of its service, and Discord's Terms of Service expressly disclaim any duty to do so. *See supra* pp. 3 & 12; *Grand Aerie*, 169 S.W.3d at 847-48 (no undertaking duty where defendant expressly disclaimed responsibility).

### CONCLUSION

Discord respectfully asks the Court to dismiss Plaintiff's claims with prejudice.

Dated: August 7, 2026

Respectfully submitted,

/s/ *Palmer G. Vance II*
Palmer G. Vance II
STOLL KEENON OGDEN PLLC

*COUNSEL FOR DEFENDANT DISCORD INC.*

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court's ECF system

on the 7th day of August 2026, which serves an electronic copy to the following:

Tad Thomas
J. Nicholas Thompson
THOMAS LAW OFFICES
9418 Norton Commons Blvd., Ste. 200
Louisville, KY 40059

Alexandra M. Walsh
Kristen Feden
D. Patrick Huyett
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103

Davis Cooper
Joseph Masterman
COOPER MASTERMAN
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
ATTORNEYS FOR PLAINTIFF

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC
500 W. Jefferson Street Suite 2400
Louisville, KY 40202

Tiana Demas
Max A. Bernstein
Thomas P. Peabody
Jamie D. Robertson
COOLEY LLP
110 N. Wacker Drive Suite 4200
Chicago, IL 60606
ATTORNEYS FOR DEFENDANT ROBLOX
CORPORATION

David Mattern
Geoffrey M. Drake
Jessica P. Corley
Micha Nandaraj Gallo
Thomas Spiegler
KING & SPALDING LLP
1180 Peachtree Street N.E. Suite 1600
Atlanta, GA 30309

Lori E. Hammond
FBT GIBBONS LLP
400 W. Market Street Suite 3200
Louisville, KY 40202
ATTORNEYS FOR DEFENDANTS TIKTOK
LLC, TIKTOK INC., and BYTEDANCE INC.

/s/ *Palmer G. Vance II*
COUNSEL FOR DEFENDANT,
DISCORD INC.

26