**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | |
|---|---|
| JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,<br><br>Defendants. | Civil Case No. 2:25-cv-00166-DLB-CJS<br><br>Chief Judge David L. Bunning |

**DEFENDANT ROBLOX CORPORATION'S**
**MOTION TO COMPEL ARBITRATION**
**(ORAL ARGUMENT REQUESTED)**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. BACKGROUND ON ROBLOX ..... 2

II. PLAINTIFF'S ALLEGATIONS ..... 3

III. AUDREE'S ACCOUNT REPEATEDLY AGREED TO THE ROBLOX ARBITRATION AGREEMENT. ..... 4

A. Audree and Her Parents Agreed to Arbitrate When Her Account Was Created. ..... 4

B. Audree Agreed to Arbitrate Each Time She Agreed to Terms Updates. ..... 6

C. Plaintiff and Audree Agreed to Roblox's Terms by Purchasing Gift Cards and Robux. ..... 8

IV. THE ROBLOX TERMS CLEARLY INDICATE THE USER AGREES TO MANDATORY ARBITRATION. ..... 9

V. THE ROBLOX TERMS DELEGATE QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR. ..... 10

VI. THE ARBITRATION AGREEMENT HAS A BROAD SCOPE. ..... 11

LEGAL STANDARD ..... 12

ARGUMENT ..... 13

I. THE PARTIES AGREED TO ARBITRATE ALL DISPUTES. ..... 13

II. THE PURPORTED DISAFFIRMANCE DOES NOT OBVIATE ARBITRATION. ..... 16

III. THE ACTION SHOULD BE STAYED PENDING ARBITRATION OR, IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED DISCOVERY ..... 19

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. by and through Carbajal v. Nintendo of America Inc.*,
No. C20-1694 TSZ, 2021 WL 1840835 (W.D. Wash., Apr. 29, 2021)....................................19

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....................................13

*Ally Cat, LLC v. Chauvin*,
274 S.W.3d 451 (Ky. 2009)....................................14

*Anderson v. Amazon.com, Inc.*,
490 F. Supp. 3d 1265 (M.D. Tenn. 2020)....................................15

*Angelilli v. Activision Blizzard, Inc.*,
No. 23-CV-16566, 2025 WL 524276 (N.D. Ill. Feb. 18, 2025)....................................19

*Antonetti v. Activision Blizzard, Inc.*
764 F.Supp.3d 1309 (N.D. Ga. 2025)....................................19

*In re: Auto. Parts Antitrust Litig.*,
951 F.3d 377 (6th Cir. 2020)....................................12

*Berg v. Traylor*,
148 Cal. App. 4th 809 (2007)....................................17

*Bixby v. Toyota Motor N. Am., Inc.*,
No. CV 22-59-DLB-CJS, 2023 WL 2110884 (E.D. Ky. Feb. 17, 2023)....................................12

*BLC Lexington SNF, LLC v. Townsend*,
719 S.W.3d 48 (Ky. Ct. App. 2025)....................................17

*Boykin v. Fam. Dollar Stores of Michigan, LLC*,
3 F.4th 832 (6th Cir. 2021)....................................20

*Brookbank v. Heights Fin. Corp.*,
No. CV 25-203-DLB, 2026 WL 1194927 (E.D. Ky. May 1, 2026)....................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................................12

*Carman v. Signature HealthCARE, LLC*,
No. 4:19-CV-00087-JHM, 2020 WL 3086253 (W.D. Ky. June 10, 2020)....................................17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**


*Carter Nursing & Rehab., LLC v. Wright*,
No. CV 21-81-DLB, 2022 WL 3449472 (E.D. Ky. Aug. 17, 2022) ....................................13

*Dahdah v. Rocket Mortg., LLC*,
166 F.4th 556 (6th Cir. 2026) ....................................12, 14

*Davis v. Panda Express, Inc.*,
No. 3:20-CV-728-RGJ, 2021 WL 4692387 (W.D. Ky. Oct. 7, 2021)....................................18

*Drus v. Microsoft Corp.*,
No. CV 25-72-DLB-CJS, 2026 WL 539470 (E.D. Ky. Feb. 26, 2026)....................12, 16, 19

*Dunn v. Activision Blizzard, Inc.*,
749 F. Supp. 3d 976 (E.D. Ark. 2024)....................................19

*E.A.R.R. v. Roku, Inc.*,
No. 25-cv-2474, 2026 WL 369238 (C.D. Cal. Feb. 6, 2026) ....................................16

*French v. Roblox Corp.*,
No. 25-md-5306, 2026 WL 2195890 (E.D. Pa. July 29, 2026)....................................1, 15, 18

*G.G. v. Roblox Corp.*,
No. 25-cv-10137-VC, 2026 WL 1615999 (N.D. Cal. June 5, 2026)....................................1, 15

*Garcia v. Roblox Corp.*,
No. 2:25-CV-03476-WLH-AJR, 2026 WL 413636 (C.D. Cal. Feb. 11, 2026) ....................1, 15

*Gaskins v. Swope Ventures, Inc.*,
645 F. Supp. 3d 682 (W.D. Ky. 2022)....................................14

*Gibson v. Roblox Corp.*,
2026 WL 2076374 (Cal. Super. July 15, 2026) ....................................1

*Henderson v. Clark*,
173 S.W. 367 (1915)....................................18

*Javitch v. First Union Sec., Inc.*,
315 F.3d 619 (6th Cir. 2003) ....................................8, 12, 16

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) ....................................18

*Keebaugh v. Warner Bros. Ent., Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................................14

*Kentucky Shakespeare Festival, Inc. v. Dunaway*,
490 S.W.3d 691 (Ky. 2016)....................................13, 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kozak v. Com.*,
279 S.W.3d 129 (Ky. 2008) ....................14

*LP Louisville Lynn Way, LLC v. Woford*,
701 S.W.3d 836 (Ky. Ct. App. 2024) ....................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................14

*Mitchell By & Through Fee v. Mitchell*,
963 S.W.2d 222 (Ky. Ct. App. 1998) ....................17, 18

*Morrison v. Yippee Ent., Inc.*,
No. 24-7235, 2025 WL 2389424 (9th Cir. Aug. 18, 2025) ....................14

*N. Fork Collieries, LLC v. Hall*,
322 S.W.3d 98 (Ky. 2010) ....................15

*N.A. v. Nintendo of Am. Inc.*,
No. 23-CV-02424-DMR, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ....................18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................14

*Olshan Found. Repair & Waterproofing v. Otto*,
276 S.W.3d 827 (Ky. Ct. App. 2009) ....................17

*Page v. GameStop Corp.*,
No. 24-3428, 2025 WL 637441 (6th Cir. Feb. 27, 2025) ....................14

*Phelps KY Opco, LLC v. Working*,
No. 6:26-cv-23-KKC, 2026 WL 63511 (E.D. Ky. Jan. 8, 2026) ....................20

*Phoenix American Adm'rs, L.L.C. v. Lee*,
670 S.W.3d 832 (Ky. 2023) ....................15

*Ping v. Beverly Enters., Inc.*,
376 S.W.3d 581 (Ky. 2012) ....................20

*Preferred Care, Inc. v. Aaron*,
No. CV 16-285-DLB, 2017 WL 3319378 (E.D. Ky. Aug. 3, 2017) ....................14

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....................17

*Richmond Health Facilities v. Nichols*,
811 F.3d 192 (6th Cir. 2016) ....................4

**Page(s)**

*S.T.G. by and through Garcia v. Epic Games, Inc.*,
752 F.Supp.3d 1200 (S.D. Cal. 2024) ... 19

*Schnuerle v. Insight Commc'ns Co., L.P.*,
376 S.W.3d 561 (Ky. 2012) ... 13

*Scott v. RVshare LLC*,
No. 3:21-CV-00401, 2022 WL 866259 (M.D. Tenn. Mar. 22, 2022) ... 14

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ... 19

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ... 15, 19

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ... 13

*Swiger v. Rosette*,
989 F.3d 501 (6th Cir. 2021) ... 17

*Tomlin v. Roblox Corp.*,
No. CV 25-4301, 2026 WL 1412606 (E.D. Pa. May 20, 2026) ... 1, 15, 16, 18

*Treved Exteriors, Inc. v. Lakeview Const., Inc.*,
No. CIV.A. 13-83-DLB-JGW, 2014 WL 1047117 (E.D. Ky. Mar. 18, 2014) ... 12

*Whaley v. T-Mobile, USA, Inc.*,
No. CIV.A. 13-31-DLB-JGW, 2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) ... 12

*Williams v. Moon Active Ltd.*,
811 F. Supp. 3d 1079 (N.D. Cal. 2025) ... 18

*Wurtland Nursing & Rehab., LLC v. Harvey*,
621 F. Supp. 3d 805 (E.D. Ky. 2022) ... 13

**Statutes**

Federal Arbitration Act ... 12, 13, 19

Ky. Rev. Stat. § 411.130 ... 4

## INTRODUCTION

Before her tragic death, Audree Heine was, according to the Amended Complaint, an "avid Roblox user" who, with "parental controls" set by one of her parents, "relied heavily" on the gaming platform. AC ¶¶ 5, 216.[1] It is no surprise then that Audree affirmatively agreed to arbitrate all claims against Roblox, with her account doing so no fewer than *28 times*. She did so many ways over the course of several years: by creating her Roblox account, by accepting updates to Roblox's Terms (six times), by using and redeeming Roblox gift cards (twice), and by purchasing Roblox's virtual currency on Roblox (19 times). Those agreements are plainly valid. Roblox made the Terms plain and Audree repeatedly manifested her assent, as courts have routinely held in examining similar agreements and as the one at issue here.[2]

Audree's parents also agreed to arbitrate the claims. Audree was just eight years old when her Roblox account was created; Roblox's Terms require parental consent when setting up an account and agreeing to updates; Audree's account repeatedly purchased Robux with payment-card information linked to a parent; Audree obtained and used multiple Roblox gift cards informing the user that, in purchasing or redeeming the card, they were agreeing to Roblox's Terms; her father's email address was verified through Audree's account; her mother "set parental controls" on Audree's "accounts;" and her account had a linked parental PIN. AC ¶ 216; *infra* at

---

[1] The Amended Complaint (ECF No. 19) is cited as "AC" followed by paragraph number. The declaration of Ronita Jit, submitted with this Motion, is cited as "Jit Decl." followed by the paragraph number or the exhibit letter.

[2] *See, e.g.*, *French v. Roblox Corp.*, No. 25-md-5306, 2026 WL 2195890, at *6–7 (E.D. Pa. July 29, 2026); *Garcia v. Roblox Corp.*, No. 2:25-CV-03476-WLH-AJR, 2026 WL 413636, at *2–7 (C.D. Cal. Feb. 11, 2026); *G.G. v. Roblox Corp.*, No. 25-cv-10137-VC, 2026 WL 1615999, at *1–2 (N.D. Cal. June 5, 2026); *Tomlin v. Roblox Corp.*, No. CV 25-4301, 2026 WL 1412606, at *6–8 (E.D. Pa. May 20, 2026); *Gibson v. Roblox Corp.*, 2026 WL 2076374, at *10 (Cal. Super. July 15, 2026).

4–9. Taken together, there can be no dispute that Audree's parents entered into an arbitration agreement with Roblox.

Audree's mother, Jaimee Seitz ("Plaintiff"), nevertheless filed suit in this Court seeking to hold Roblox liable for publishing "violent" third-party content that Audree allegedly encountered on Roblox, Discord, and TikTok. AC ¶¶ 218–223. In doing so, Plaintiff purports to "disaffirm" the arbitration agreement contained in Roblox's Terms. *Id.* ¶ 12. She cannot do so. Evidence shows Plaintiff agreed to arbitrate and, in any event, disaffirmance is a question of enforceability, not formation, under the agreement's delegation clause. Disaffirmance is therefore for the arbitrator, not the Court, to decide. The Court should order the parties to arbitrate this dispute and stay this action.

## BACKGROUND

### I. BACKGROUND ON ROBLOX

Roblox offers an online gaming service on which users play user-generated games, called "experiences." AC ¶ 19. This includes educational experiences that immerse learners and motivate exploration, play, and deep thinking in topics ranging from "chemistry to physics to robotics and more." *Id.* ¶ 22. Roblox is enormously popular, with over 40 million experiences on the platform. *Id.* ¶ 19. Roblox's gaming ecosystem is inherently interactive and permits users to both create and play games. *Id.* ¶¶ 19, 21. The Roblox app is free to download and can be used on a variety of devices, including computers and phones. *Id.* ¶ 20. Users must agree to the Terms to create a Roblox account and must agree to material updates to the Terms to continue using Roblox. Jit Decl. ¶¶ 11, 17; *see also* ¶ 15 (depicting sign-up screen with conspicuous white hyperlink directing users to the Terms of Use). Minor users must have parental permission to sign up for a Roblox account. AC ¶ 27; *see also* Jit Decl. ¶ 19.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a Kentucky resident, AC ¶ 9, whose daughter Audree allegedly began using Roblox when she was about eight years old, and Discord and TikTok shortly thereafter. *Id.* ¶ 216.[3] Audree allegedly "was bullied and felt socially isolated," *id.* ¶ 218, and relied heavily on Roblox for social interaction. *Id.* ¶ 5. Audree's parents helped her set up her Roblox account. Plaintiff "set parental controls" on Audree's "accounts," *id.* ¶ 216, and her Roblox account had two linked email addresses, in addition to the one that was in Audree's name. One of these email addresses, which was verified, contains Audree's father's full name: [redacted]@gmail.com. *See infra* at 8.

Plaintiff alleges that "[t]hrough Roblox, Audree encountered other users . . . who glorified violence and espoused self-harm as a response to real-life hardship." AC ¶ 218; *see also id.* ¶ 6. As Plaintiff has stated publicly elsewhere, she "noticed a change" in Audree "during the COVID lockdown … when Audree was constantly at home."[4] Audree's alleged exposure to "these groups" led "to a particular fixation on the Columbine shooters." *Id.* ¶ 218. On Discord and TikTok, alleged "predators continued to exploit Audree's emotional vulnerabilities with violent rhetoric, manipulation, and social pressure," affecting her "behavior and mental health." *Id.* ¶ 219. Plaintiff claims that Audree's "exposure to homophobic and violent content exacerbated her feelings of isolation and despair," and her "mental health deteriorated." *Id.* ¶ 220. In December 2024, when Audree was thirteen years old, she committed suicide. *Id.* ¶ 215. "Leading up to her suicide, she had been livestreaming her activities on TikTok." *Id.* ¶ 222.

---

[3] Based on the Complaint's allegations, Audree would have been eight years old between December 2019 and December 2020. AC ¶ 215.

[4] John Bar, "Mother of teen who died by suicide warning parents about dangerous online community," ABC7 News, available at https://wjla.com/features/i-team/mother-of-kentucky-teen-who-died-by-suicide-signals-warning-about-online-community (last accessed Aug. 7, 2026).

Plaintiff, in her representative capacity, brings claims on behalf of Audree for negligence, product liability, and fraud against Roblox and co-defendants Discord Inc. and ByteDance, Inc. AC ¶¶ 9, 224–387 (Counts One through Eight); ECF No. 19-1.[5] Plaintiff brings a wrongful death claim in her individual capacity. AC ¶ 388–93 (Count Nine); *see also* Ky. Rev. Stat. § 411.130.

## III. AUDREE'S ACCOUNT REPEATEDLY AGREED TO THE ROBLOX ARBITRATION AGREEMENT.

During this litigation, Plaintiff provided information about one of Audree's Roblox accounts, registered with the username "XxAudi_2011xX." Jit Decl. ¶ 4.[6] After receiving Audree's Roblox username, Roblox located the relevant account records—which showed that the account repeatedly agreed to Roblox's Terms and its arbitration provision (the "Arbitration Agreement"). The account also shows evidence of parental involvement, including: (1) a parental PIN; (2) multiple purchases of Robux, Roblox's digital currency; and (3) two verified email addresses, one containing her father's full name.

### A. Audree and Her Parents Agreed to Arbitrate When Her Account Was Created.

The XxAudi_2011xX account was created on April 18, 2020, according to Roblox records. Jit Decl. Ex. A at A-2. As part of the registration process in effect in 2020, including on the date

[5] While Plaintiff initially claims she is acting her in her "individual[ ]" capacity, AC at 1, the only claim that is not purely derivative of Audree's injuries is the wrongful death claim. *See, e.g.*, *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195–96 (6th Cir. 2016) ("a wrongful-death claim is a distinct interest in a property right that belongs *only* to the statutorily-designated beneficiaries") (emphasis in original) (citation omitted).

[6] Roblox identified a second account that appears to have been used by Audree, registered under the username "twistedpandora12658." This secondary account pre-dates Audree's "XxAudi_2011xX" account by nearly nine months. Jit Decl. ¶ 9. On July 6, 2026, counsel for Plaintiff informed Roblox's counsel that "Ms. Seitz cannot confirm with certainty that twistedpandora12658 was one of [Audree's] accounts, but she believes that it could have been." The Court may grant Roblox's motion to compel arbitration based solely on the "XxAudi_2011xX" account. However, if the Court is inclined to deny the motion, Roblox requests the opportunity to take limited discovery about the secondary account.

Audree's account was created, users were required to agree to the Roblox Terms, including the Arbitration Agreement. Jit Decl. ¶¶ 11-16. The following screen depicts the sign-up flow in effect when Audree's account was created:




*Figure 2*.

Creating the account required affirmatively clicking the button shown above, labeled "Sign Up." Jit Decl. ¶ 13. Immediately below the "Sign Up" button was language stating "by clicking Sign Up you are agreeing to the Terms of Use and acknowledging the Privacy Policy." The text contained a hyperlink to the Terms, which appeared at the bottom of the screen. *Id.* at ¶¶ 14–16.

On April 18, 2020, Roblox's Terms of Use contained a valid and binding Arbitration Agreement. *See* Jit Decl. ¶ 16.

The "Terms" hyperlink, if clicked, led to Terms then in effect. *Id.* Ex. B (March 3, 2020 Terms). The Arbitration Agreement required arbitration of all "Disputes," defined as "any dispute, action, controversy or claim arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal or equitable basis, and regardless of whether a claim arises during or after the termination of these Terms." Jit Decl. Ex. B at B-3. At all relevant times, the Roblox Terms contained the following disclaimer: "If you do not agree to all these policies, rules and the Terms, you may not use … [Roblox]. In order to agree to these Terms, you need to (1) be 18 or older, or have your parent or guardian's consent to agree to the Terms, and (2) have the power to enter a binding contract with us and not be barred from doing so under any applicable laws." *Id.* at B-2.

**B. Audree Agreed to Arbitrate Each Time She Agreed to Terms Updates.**

Audree agreed to the Arbitration Agreement in other ways. Roblox periodically updates its Terms, but, before any material update goes into effect, Roblox notifies users through a two-step process. First, users receive an "on-platform message." Jit Decl. ¶¶ 17-20. These communications are sent one month before the updates are to take effect. *Id.* ¶ 18. Users are then reminded of the notice through a "jewel notification" on their Messages page. *Id.*

Second, users receive separate pop-up notifications when they log into the Roblox platform. *Id.* ¶¶ 21–25. This "on-platform blocker card" requires the user to affirmatively agree to the updated Terms before the user can proceed. *Id.* ¶ 22.




*Figure 3.*

As shown, the text of the pop-up makes clear that by clicking “I Agree,” the user agrees to the updated Terms—and the phrase “Terms of Use” hyperlinks to the updated Terms. *Id.* ¶ 23–24. The pop-up requires a minor user to show the updated Terms to an adult. *Id*. Audree’s account records show she affirmatively agreed to six separate updates to the Roblox Terms in this manner, including on March 15, 2022, July 6, 2022, August 7, 2023, February 18, 2024, June 17, 2024, and November 30, 2024[7]. Each time, Audree clicked the prominently displayed “I Agree” button to accept the updated Terms. *Id.* ¶ 24.

---

[7] Audree’s account records show extensive gameplay on nearly all of the dates where her account shows agreement to the updated Terms. *See* Ex. A at A-17 (two games played on July 6, 2023, for total of 6 minutes); *id.* at A-18 (eight games played on August 7, 2023, for total of 91.5 minutes); *id.* at A-24 (two games played on February 18, 2024 for total of 4.3 minutes); *id.* at A-27 (two games played on June 17, 2024, for total of 34.3 minutes); *id.* at A-30 (four games played on November 30, 2024, for total of 40.35 minutes).

### C. Plaintiff and Audree Agreed to Roblox's Terms by Purchasing Gift Cards and Robux.

As explained above, Roblox's Terms require that an adult review and agree to them for any minor user. *See supra* at 4–7. And this language makes clear that where an adult agrees to the Terms to allow a minor to play on Roblox, they do so on behalf of the minor, binding both adult and minor. *Id*. Audree repeatedly indicated, by clicking "I Agree" on the pop-ups, that she had shown the Terms to an adult. *Id.* at 7. In addition to these repeated confirmations that an adult had reviewed the Terms updates, Audree's account data reflects significant parental involvement.

***First***, Plaintiff alleges that Audree began playing Roblox when she was eight, and that Plaintiff "set parental controls on Audree's accounts[.]" AC ¶ 216. Roblox's records indicate that a parental PIN was set on Audree's XxAudi_2011xX account on February 15, 2021. Jit Decl. ¶ 28. A Roblox parental PIN allowed parents to set and lock certain account settings such that the minor user could not change those settings without the PIN.

***Second***, beginning as early as 2020, Audree's account was also linked to two email addresses, including [redacted]@yahoo.com (on November 24, 2020) and [redacted]@gmail.com (on February 13, 2021). *Id.* ¶¶ 7–9. The [redacted]@gmail.com email address, apparently her father's, was verified.[8] *Id.* ¶ 28. This, too, means that a parent would have received an email regarding Audree's account, and they had to click a "verify email" button to complete the verification process. *Id.* ¶ 7. Notably, the [redacted]@gmail.com email address was added to Audree's account just two days before the parental PIN was set. *Id.* ¶¶ 7, 28.

***Third***, Roblox's records show that multiple Roblox Gift Cards were redeemed from Audree's account, including at least two cards that clearly alerted her or a responsible adult that

---

[8] According to publicly available sources, Bradley Heine is the name of Audree's father. *See, e.g.*, https://nkytribune.com/obituaries-2/audree-megan-heine/ (last accessed August 7, 2026).

the purchase bound Audree and the purchaser to Roblox's Terms. Jit. Decl. Exs. J–K ("By purchasing, accepting or redeeming this card, you (or your parent or guardian if you are under 18 years old) agree to these terms and conditions and the Roblox Terms of Use (available at www.roblox.com/termsofuse), which are both subject to change."). This notification, printed on the gift card itself, is plainly visible before and after purchase, and, at all relevant times, the hyperlink provided has linked to the then-effective Roblox Terms. *Id.*

***Fourth***, Roblox's records also show at least 19 purchases of "Robux," Roblox's virtual currency, by Audree's accounts between April 2020 and July 2024. Jit Decl. Ex. A at A-3–A-10. Two of the purchases—made on January 1, 2024 and February 14, 2021—were made with credit cards ending in -0321 and -7702. *Id.* at A-11. The February 14, 2021 purchase was made using the email address belonging to Audree's father. *Id.* At the time of these purchases, Audree was between eight and 12 years old, and a parent likely helped her. They would have had to agree to the Terms *each time*, as part of the process of buying Robux. Jit Decl. ¶¶ 36–43.

For these reasons, there is substantial evidence that a parent was involved in creating Audree's accounts and purchasing Robux for her, meaning that a parent agreed to the Terms, many times, on Audree's behalf.

## IV. THE ROBLOX TERMS CLEARLY INDICATE THE USER AGREES TO MANDATORY ARBITRATION.

The introduction to the most recent version of the Terms that Audree agreed to (the November 6, 2024 Terms) states: "PLEASE READ THE ROBLOX TERMS CAREFULLY BEFORE BEGINNING TO USE THE SERVICES, AS THEY SET FORTH A LEGALLY BINDING AGREEMENT BETWEEN YOU AND ROBLOX." *See, e.g.*, Jit Decl. Ex. I (emphasis in original). Another all-caps section in the introduction (which is also bolded in part) informs users of the arbitration provision:

> **For U.S. Users**, Roblox's Arbitration Agreement (Section 11), [ ] outlines how disputes between you and Roblox will be resolved. Specifically, these Roblox Terms contain **A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER. THIS MEANS THAT YOU GIVE UP THE RIGHT TO BRING AN ACTION IN COURT, INDIVIDUALLY OR AS PART OF A CLASS ACTION.**

*Id.* (emphasis in original). At that time and for several years prior, the Arbitration Agreement itself (Section 11 of the Terms) provided that the user agrees to arbitrate their claims and explains the rights surrendered as a result:

> **YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR ANY DISPUTES SUBJECT TO THE ARBITRATION PROVISION BELOW.**

*Id.* § 11 (emphasis in original). The Arbitration Agreement has also explained that users have the right to opt out of the Arbitration Agreement the first time they agree to Terms and each time the Arbitration Agreement is materially updated:

> Opting Out. You may opt-out of the Arbitration Agreement entirely and litigate any Dispute with us by sending written notice to Roblox within 30 days of signing up for the Services for the first time. Thereafter, you may only opt-out of material changes to the Arbitration Agreement by sending written notice within 30 days after Roblox provides notice of those changes (unless a longer period is required by applicable law). In either case, to opt-out, a User must send a written notice … and include (a) the User's full name, Roblox username, and email address, (b) a clear statement that the User wants to opt-out of the Arbitration Agreement, or wants to opt-out of a material change to the Arbitration Agreement, as applicable, and (c) the User's signature (or the signature of the User's guardian, if the User is a Minor).

*Id.* § 11(b)(ix). Despite having the unfettered right to do so, Plaintiff does not allege—and Roblox has no record that—Audree ever opted out of the Arbitration Agreement. Jit Decl. ¶¶ 26–27.

## V. THE ROBLOX TERMS DELEGATE QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR.

At all relevant times, the Arbitration Agreement to which Audree and her parents repeatedly agreed has also included a delegation clause that requires that any question of arbitrability be resolved by the arbitrator. When Audree's account was created, the Terms made

clear that "You and we empower the arbitrator with the exclusive authority to resolve any Dispute, including without limitation whether or not any part of these Terms is void or voidable." Jit Decl. Ex. C. Later versions of the Terms to which Audree and her parents also agreed state:

> Delegation; Interpretation. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable[.]

*Id.* § 11(b)(vii) (the "Delegation Provision").

The Arbitration Agreement also incorporates the FedArb arbitration rules ("FedArb Rules"), which vest arbitrators with the power to decide the issue of arbitrability. *Id.* § 11(b)(iv); *see also* FedArb Rules, Rule 5.02 ("The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause …").

## VI. THE ARBITRATION AGREEMENT HAS A BROAD SCOPE.

The Arbitration Agreement applies to "any dispute, claim, or controversy [the user] may have with Roblox arising under or relating in any way to the Roblox Terms or the Services ('Dispute')." Jit Decl. Ex. I, § 11; *id.* at Exs. B–H (prior Terms). Roblox "Services" are broadly defined to include "the Roblox website … and its related platform … and various other features and services, including websites, applications, forums, content, functionality, products, and services[.]" Jit Decl. Ex. I at 1. The Arbitration Agreement also makes clear that it encompasses "***all Disputes***—regardless of (a) the legal theories involved in the Dispute, (b) when the Dispute arose, and (c) whether the Dispute is with Roblox [or affiliated parties]." *Id.* § 11(b)(i) (emphasis added). The claims at issue here (*see supra* at 3) concern the operation of the Roblox platform and are encompassed by the Arbitration Agreement.

Nonetheless, Plaintiff filed this action in October 2025. *See* ECF No. 1. She filed the Amended Complaint in December 2025. *See* ECF No. 19.

**LEGAL STANDARD**

There is a "strong presumption in favor of arbitration." *Whaley v. T-Mobile, USA, Inc.*, No. CIV.A. 13-31-DLB-JGW, 2013 WL 5155342, at *2 (E.D. Ky. Sept. 12, 2013) (Bunning, J.) (citation omitted). This presumption stems from the Federal Arbitration Act, which "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Brookbank v. Heights Fin. Corp.*, No. CV 25-203-DLB, 2026 WL 1194927, at *2 (E.D. Ky. May 1, 2026) (Bunning, C.J.).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties." *Drus v. Microsoft Cor*p., No. CV 25-72-DLB-CJS, 2026 WL 539470, at *3 (E.D. Ky. Feb. 26, 2026) (Bunning, C.J.) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also, e.g.*, *Bixby v. Toyota Motor N. Am., Inc.,* No. CV 22-59-DLB-CJS, 2023 WL 2110884, at *2 (E.D. Ky. Feb. 17, 2023) (Bunning, J.); *Treved Exteriors, Inc. v. Lakeview Const., Inc.*, No. CIV.A. 13-83-DLB-JGW, 2014 WL 1047117, at *5 (E.D. Ky. Mar. 18, 2014) (Bunning, J.). The Act "instructs courts to follow the same contract-law rules when analyzing an arbitration agreement that they would follow when analyzing any other agreement." *Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 566 (6th Cir. 2026). "Once prima facie evidence of the arbitration agreement is presented, the burden shifts from the party seeking to enforce the

agreement to the party seeking to avoid the agreement." *Carter Nursing & Rehab., LLC v. Wright*, No. CV 21-81-DLB, 2022 WL 3449472, at *5 (E.D. Ky. Aug. 17, 2022) (Bunning, J.). "However, the party seeking to avoid the arbitration agreement has a *heavy* burden." *Wurtland Nursing & Rehab., LLC v. Harvey*, 621 F. Supp. 3d 805, 814–15 (E.D. Ky. 2022) (Bunning, J.) (emphasis in original) (citation omitted). "The burden is onerous due to the strong federal policy in favor of arbitration." *Id.* (citation omitted). "Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## ARGUMENT

The FAA controls the disposition of this motion. The Terms make clear that they are "governed by the" FAA, which applies to agreements that evidence a transaction involving interstate commerce, including Internet-based transactions. *See* 9 U.S.C. §§ 1–2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274–77 (1995) (interpreting "involving commerce" provision as broadly as the phrase "affecting commerce"). Under the FAA, the Court must order the parties to arbitrate.

### I. THE PARTIES AGREED TO ARBITRATE ALL DISPUTES.

The evidence makes clear that Audree and her parents repeatedly agreed to arbitrate all claims against Roblox. "Questions concerning the formation of an arbitration agreement are resolved in accordance with the applicable state law governing contract formation." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016)[9] (citation omitted).

---

[9] Kentucky courts apply the "significant relationship" test in determining which state's law applies. *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 567 (Ky. 2012). Under that test, either Kentucky or California law could control this dispute, and Roblox submits that California law should ultimately apply because the Terms require as much. *See, e.g.*, Jit Decl. Ex I § 12. Regardless of which state's law applies, however, the result is the same: Audree and her parents

Kentucky courts thus apply "the same fundamental principles of contract interpretation that would apply for interpreting any other type of contract." *Id.* "For a contract to be valid and enforceable, there must be voluntary and complete assent by parties having the capacity to contract," *LP Louisville Lynn Way, LLC v. Woford*, 701 S.W.3d 836, 840 (Ky. Ct. App. 2024), which in Kentucky, as in every state, includes minors, *see Kozak v. Com.*, 279 S.W.3d 129, 130 (Ky. 2008). "Assent to be bound by the terms of an agreement must be expressed." *Preferred Care, Inc. v. Aaron*, No. CV 16-285-DLB, 2017 WL 3319378, at *7 (E.D. Ky. Aug. 3, 2017) (citing *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 456 (Ky. 2009)). "Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms." *Gaskins v. Swope Ventures, Inc.*, 645 F. Supp. 3d 682, 687 (W.D. Ky. 2022).

In this case, Audree and her parents received notice of the Terms and accepted them more than two dozen times: at account opening, through six pop-up notifications, with the two gift cards, and via 19 Robux purchases. *Supra* at 4–9; *supra* Figures 1 and 2. Such conspicuous offers, manifestly accepted by signing up and clicking (repeatedly) "I AGREE," create enforceable arbitration agreements, as courts routinely hold. *E.g.*, *Dahdah*, 166 F.4th at 577–80 (by clicking "Calculate", with notice that it would accept terms of service, user accepted arbitration agreement); *Page v. GameStop Corp.*, No. 24-3428, 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025) (same by clicking "I Agree"); *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (similar); *Morrison v. Yippee Ent., Inc.*, No. 24-7235, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025) (similar); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (similar); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) (similar); *Scott v. RVshare LLC*, No.

---

agreed to arbitrate claims with Roblox. *See, e.g.*, *Dahdah*, 166 F.4th at 566 ("California law follows typical contract-formation principles").

3:21-CV-00401, 2022 WL 866259, at *4 (M.D. Tenn. Mar. 22, 2022) (similar). *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1276 (M.D. Tenn. 2020) (similar and noting agreements of this "type" have "regularly been upheld by courts").

Take, for example, *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021). In that case, the Sixth Circuit held that there was enforceable arbitration agreement, including with minor-plaintiffs, because the defendant-site emailed conspicuous updates to users concerning its terms of service, noting that "CONTINUED USE OF THE SITE … CONSTITUTES YOUR ACCEPTANCE." 19 F.4th at 882. Because the plaintiffs continued to use the site, there had been a "mutuality of agreement." *Id.* at 881–82. Here, Roblox did even more: it notified users at registration that signing up constituted acceptance and repeatedly sent pop-up messages requiring further, explicit "accept[ance]." *Supra* at 4–9. Courts applying these well-established principles have repeatedly found Roblox's Terms and acceptances like the ones provided here create valid arbitration agreements. *See, e.g.*, *French*, 2026 WL 2195890, at *6–7 (enforcing Roblox's Terms to compel arbitration); *G.G.*, 2026 WL 1615999, at *1–2 (same with respect to a minor's agreement via the pop-up blockers); *Tomlin*, 2026 WL 1412606, at *6–8, *15 (compelling minor to arbitration based on parent's assent to Roblox's Terms); *Garcia*, 2026 WL 413636, at *2–7 (same). There can also be no dispute that this suit is within the agreement's scope, as Audree agreed to waive the "right to file a lawsuit … for any disputes" with Roblox in exchange for using the services. Jit Decl. Ex. H § 11.

Even if there were some question about Audree's acceptance of the Terms (and there is not), her direct claims would nevertheless be subject to arbitration. Under Kentucky law, a third party may be subject to an agreement she did not sign where she is a beneficiary of the agreement. *Phoenix American Adm'rs, L.L.C. v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023); *see also N. Fork*

*Collieries, LLC v. Hall*, 322 S.W.3d 98, 106 (Ky. 2010) (explaining the related doctrine of direct benefits estoppel and holding that a party claiming a benefit of an agreement is estopped from disclaiming its arbitration provision); *Javitch*, 315 F.3d at 629 (similar). Such is the case here. The evidence shows that at least one of Audree's parents also accepted the Arbitration Agreement: Audree was *eight* when her Roblox account was created; Roblox's Terms required parental permission, which Audree's account certified *seven times* (once at sign up and for each update); her account purchased Robux on 19 occasions, with each purchase requiring assent to the Terms and provision of a payment instrument; and her account had a verified parent's email, "parental controls" set by Plaintiff, and a parental PIN. And Audree was the beneficiary of that agreement. Without it, she could not have used and "relied heavily on the app for social interaction." *See* AC ¶¶ 5, 216. As such, Audree's direct claims are, at a minimum, subject to the Arbitration Agreement as a third-party beneficiary, and Plaintiff should be equitably estopped from arguing otherwise. *Drus*, 2026 WL 539470, at *7–8 (applying third-party beneficiary doctrine to arbitration agreement); *Tomlin*, 2026 WL 1412606, at *8 (same concerning Roblox's Terms); *see also E.A.R.R. v. Roku, Inc.*, No. 25-cv-2474, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026) ("Therefore, the Court holds that the arbitration agreement binds Plaintiffs under the doctrine of equitable estoppel because of their preexisting relationship with their Guardian.").

## II. THE PURPORTED DISAFFIRMANCE DOES NOT OBVIATE ARBITRATION.

Despite the clear Arbitration Agreement, Plaintiff purports to disaffirm it. AC ¶ 12. But she cannot do so—and certainly not in this forum.

As an initial matter, the evidence suggests that Plaintiff agreed to arbitrate claims with Roblox just as her daughter did. *Supra* 4–9, 15–16. Indeed, Plaintiff has implied publicly that her daughter, an "avid Roblox user," lived with her, *supra* at 3 & n.3, and Plaintiff alleges setting

"parental controls" on "accounts," AC ¶ 216.[10] *See, e.g.*, *BLC Lexington SNF, LLC v. Townsend*, 719 S.W.3d 48, 51 (Ky. Ct. App. 2025) ("[B]eneficiaries who [ ] sign an arbitration agreement [ ] elect to arbitrate their wrongful death claims—because [ ] representatives are in fact parties to the contract."). What is more, Plaintiff cites no authority permitting her to disaffirm an agreement she and her daughter took advantage of for years. *See, e.g.*, AC ¶ 5, 12, 216. To the contrary, such "repudiation of the agreement" by a minor generally "requires that the minor return the consideration" offered under the agreement. *Mitchell By & Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. Ct. App. 1998); *see also, e.g.*, *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) (requiring "unequivocal" disaffirmance).

But the Court need not decide the question. Plaintiff's purported disaffirmance is a question for the arbitrator. As the Supreme Court has explained, a "delegation provision" is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "[P]arties can agree to arbitrate 'gateway' questions 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69; *see also, e.g.*, *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021); *Carman v. Signature HealthCARE, LLC*, No. 4:19-CV-00087-JHM, 2020 WL 3086253, at *3 (W.D. Ky. June 10, 2020). That is the case here. The Arbitration Agreement contained a broad "Delegation" clause, which vested "the arbitrator, and not any … court" with determining the "interpretation, applicability, [and] *enforceability*" of the agreement, "including" any claim that the agreement is "*voidable.*" Jit. Decl. Ex. I § 11(b)(vii) (emphases added). Confirming as much, the Arbitration Agreement incorporated the FedArb rules, which similarly

[10] Even if Audree's father was the one who consented to the Terms, Plaintiff should similarly be equitably estopped from disaffirming it. *See, e.g.*, *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009).

vest arbitrability to the arbitrator. *Id.* § 11(b)(iv); *supra* at 11. As such, "[t]he delegation clause[ ] of the [Roblox Terms] clearly and unmistakably delegate questions of enforceability to the arbitrator." *Tomlin*, 2026 WL 1412606, at *9.

Under Kentucky law, it is well established that disaffirmance pertains to the voidability of contract with a minor and is therefore a matter of contract enforcement, not formation. *See, e.g.*, *Davis v. Panda Express, Inc.*, No. 3:20-CV-728-RGJ, 2021 WL 4692387, at *5 (W.D. Ky. Oct. 7, 2021) ("An infant's contract is not void, but merely voidable at his or her election after reaching the age of eighteen.") (citing *Henderson v. Clark*, 173 S.W. 367, 370 (1915)); *Mitchell By & Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. Ct. App. 1998) ("Although the minor has the legal capacity to contract, he has the privilege of avoiding the contract."). California law, which the Terms adopt, similarly holds that disaffirmance is a matter of contract enforcement, not formation. *See, e.g.*, *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1085–86 (N.D. Cal. 2025) (applying California law and holding that minor plaintiff's disaffirmance challenged the contract's "enforceability or validity" as a whole and did "not single out the arbitration provision or delegation clause," requiring the arbitrator to decide); *N.A. v. Nintendo of Am. Inc.*, No. 23-CV-02424-DMR, 2023 WL 8587628, at *5–6 (N.D. Cal. Dec. 11, 2023) (applying California law; "the question of disaffirmation must be decided in arbitration" because the parties agreed to arbitrate "issues of enforceability, which includes [plaintiff's] disaffirmation defense").

Where, as here, a valid agreement to arbitrate delegates issues of enforceability to the arbitrator, there is nothing for the Court to do. The arbitrator must decide if a plaintiff has disaffirmed the contract, as courts across the country have held. *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837–39 (7th Cir. 2022) (delegating minor's disaffirmance defense to arbitrator); *French*, 2026 WL 2195890, at *6–7 ("To the extent Plaintiff raises arguments regarding disaffirmance or

unconscionability, … [Roblox's Terms] expressly delegate those issues to the arbitrator, and the Court lacks the authority to decide them"); *Angelilli v. Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, at *17–18 (N.D. Ill. Feb. 18, 2025) (compelling infancy and unconscionability arguments to the arbitrator given the "delegation language"); *Antonetti v. Activision Blizzard, Inc.* 764 F.Supp.3d 1309, 1321–23 (N.D. Ga. 2025) (similar); *S.T.G. by and through Garcia v. Epic Games, Inc.*, 752 F.Supp.3d 1200, 1208 (S.D. Cal. 2024) (holding the question of disaffirmance is for the arbitrator to decide); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 980 (E.D. Ark. 2024) (finding that delegation provision required arbitration of minor plaintiff's disaffirmance); *A.C. by and through Carbajal v. Nintendo of America Inc.*, No. C20-1694 TSZ, 2021 WL 1840835, at *2–3 (W.D. Wash., Apr. 29, 2021) (ruling that disaffirmation "does not relate to contract formation" and that "the parties agreed to have an arbitrator" decide such an issue).

*StockX* is again on point. There, the minor-plaintiffs asserted that the related "infancy doctrine invalidates" the terms to which they agreed, rendering "the entire agreement unenforceable." 19 F.4th at 882. Citing *Rent-A-Center*, the Sixth Circuit explained that an "infancy argument does not concern the formation or existence of a contract." *Id.* at 883. As such, the "infancy defense is a matter of *enforceability* covered under the delegation provision." *Id.* at 884 (emphasis added). The same is true here.

## III. THE ACTION SHOULD BE STAYED PENDING ARBITRATION OR, IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED DISCOVERY.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Drus*, 2026 WL 539470, at *7 (same). This

Court should do the same here, as both Audree and her parents consented to the Arbitration Agreement.[11]

If, however, this Court determines that Plaintiff did not agree to arbitrate, has effectively disaffirmed Audree's agreement on her behalf, or otherwise finds a reason not to compel arbitration—which the Court should not—the Court should order limited discovery and an opportunity to renew this motion. "Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 841 (6th Cir. 2021). As explained earlier, there is substantial evidence that Audree and her parents agreed to the Terms, defeating any claim of disaffirmance. Should the Court find a genuine dispute on this front, the Court should permit Roblox to take limited discovery (in the form of depositions, interrogatories, and document requests) on contract formation, including the degree of parental involvement in creating and managing Audree's accounts.

## CONCLUSION

For these reasons, the Court should stay this action and order Plaintiff to arbitrate her claims. Pursuant to Local Rule 7.1(f), Defendant requests that the Court schedule oral argument on this motion at the Court's convenience.

[11] Even if this Court found that only Audree, and not Plaintiff, consented to the Arbitration Agreement, it should still stay this case in its entirety. All of the representative claims (Counts One through Eight) would be bound to arbitration, *see, e.g.*, *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012) ("The Estate would be estopped, of course, if … [the decedent] were estopped"), and the Court should exercise its discretion to stay Plaintiffs' dependent wrongful death claim, *see, e.g.*, *Phelps KY Opco, LLC v. Working*, No. 6:26-cv-23-KKC, 2026 WL 63511, at *7 (E.D. Ky. Jan. 8, 2026) (staying case as to non-arbitrable wrongful death claim while survival claims for negligence proceeded in arbitration).

Dated: August 7, 2026

Respectfully submitted,

By: */s/ Tiana Demas*

Tiana Demas (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
Jamie D. Robertson (*pro hac vice*)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
tdemas@cooley.com

Max. A. Bernstein (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415-693-2000
Facsimile: +1 415-693-2222
mbernstein@cooley.com

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC - LOUISVILLE
500 W. Jefferson Street
Suite 2400
Louisville, KY 40202
502-783-6245
bpaul@mcbrayerfirm.com
mdenham@mcbrayerfirm.com

Attorneys for Defendant
ROBLOX CORPORATION