## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## COVINGTON DIVISION

|  |  |
|---|---|
| JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE, | |
| Plaintiff, | Civil Case No. 2:25-cv-00166-DLB-CJS |
| v. | Chief Judge David L. Bunning |
| ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC., | |
| Defendants. | |

## DEFENDANT ROBLOX CORPORATION'S
## MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    Roblox ................................................................................................................ 2

    B.    The Claims Target Roblox's Alleged Failure to Block Third-Party Content. ............................................................................................................. 4

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.    SECTION 230 BARS EACH OF PLAINTIFF'S CLAIMS .............................................. 5

    A.    Section 230 Bars Claims Concerning Imperfect Content Moderation. ................. 5

    B.    Roblox Is an Interactive Computer Service Provider. ......................................... 7

    C.    The Claims Arise from Third-Party Content. ...................................................... 7

    D.    Plaintiff's Claims Treat Roblox as a Publisher. .................................................. 8

        1.    Section 230 Bars the Negligence Claims (Counts 3, 5, 6). ...................... 10

        2.    Section 230 Bars the Design Defect Claim (Count 7). ........................... 11

        3.    Section 230 Bars the Failure-to-Warn Claims (Counts 4, 8). .................. 12

        4.    Section 230 Bars the Fraud-Based Claims (Counts 1, 2). ........................ 13

        5.    Section 230 Bars the Wrongful Death Claim (Count 9). ......................... 14

II.    THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS ...................................... 14

III.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST ROBLOX ......................... 15

    A.    All Claims Fail for Lack of Proximate Cause (Counts 1–9). ............................... 15

    B.    There Is No Viable Product Liability Claim (Counts 5, 7, 8). ............................. 17

    C.    The Negligence Claims Fail (Counts 3, 6). ......................................................... 19

    D.    The Fraud Claims Fail (Counts 1, 2). ................................................................. 21

    E.    The Wrongful Death Claim Fails (Count 9). ...................................................... 25

CONCLUSION ................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

*A.B. v. Salesforce.com, Inc.*,
   2021 WL 3616097 (S.D. Tex. Mar. 22, 2021)......................................................................20

*Angelilli v. Activision Blizzard, Inc.*,
   781 F. Supp. 3d 691 (N.D. Ill. 2025) ...................................................................................7

*Arnold v. Liberty Mut. Ins. Co.*,
   392 F. Supp. 3d 747 (E.D. Ky. 2019) .................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................5

*B.L. v. Schuhmann*,
   380 F. Supp. 3d 614 (W.D. Ky. 2019).................................................................................22

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .............................................................................6, 8, 11, 14

*Beckman v. Match.com, LLC*,
   668 F. App'x 759 (9th Cir. 2016) ........................................................................................13

*Bogard v. TikTok Inc.*,
   2025 WL 3637035 (N.D. Cal. Dec. 15, 2025).....................................................................24

*Brewster v. Colgate-Palmolive Co.*,
   279 S.W.3d 142 (Ky. 2009)................................................................................................16

*Bright v. Gallia Cnty.*,
   753 F.3d 639 (6th Cir. 2014) ...............................................................................................5

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ............................................................................................15

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
   2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021)......................................................................24

*Computer & Commc'ns. Indus. Ass'n v. Paxton*,
   2026 WL 2130729 (5th Cir. July 24, 2026)..........................................................................15

*Corder v. Ethicon, Inc.*,
   473 F. Supp. 3d 749 (E.D. Ky. 2020) .................................................................................18

*Costa v. FCA US LLC*,
   542 F. Supp. 3d 83 (D. Mass. 2021) ...................................................................................23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) ...................................................................................16

*DeSoto Cab Co. v. Uber Techs., Inc.*,
    2018 WL 10247483 (N.D. Cal. Sep. 24, 2018) .......................................................23

*Doe 1 v. Meta Platforms, Inc.*,
    174 F.4th 1159 (9th Cir. 2026) .............................................................................8, 11

*Doe v. Discord Inc.*,
    2026 WL 1067574 (N.D. Ohio Apr. 20, 2026)................................................11, 12, 13

*Doe v. Grindr, Inc.*,
    128 F.4th 1148 (9th Cir. 2025) ........................................................................ *passim*

*Doe v. MySpace Inc.*,
    528 F.3d 413 (5th Cir. 2008) .............................................................................7, 9, 11

*Doll v. Pelphrey*,
    2024 WL 4788525 (Ky. Cir. Ct. Oct. 18, 2024) .............................................7, 11, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ........................................................................ *passim*

*Est. of Abdullah ex rel. Carswell v. Arena*,
    601 F. App'x 389 (6th Cir. 2015) ............................................................................22

*Est. of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ...........................................................19

*Est. of Bride v. Yolo Techs., Inc.*,
    112 F.4th 1168 (9th Cir. 2024) .......................................................................6, 12, 13

*Evans v. Pearson Enters., Inc.*,
    434 F.3d 839 (6th Cir. 2006) ...................................................................................22

*Everest Stables, Inc. v. Rambicure*,
    803 F. App'x 819 (6th Cir. 2020) ............................................................................22

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021)...........................................................................7, 11, 12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .............................................................................6, 8

*Flegles, Inc. v. TruServ Corp.*,
    289 S.W.3d 544 (Ky. 2009)..........................................................................15, 21, 23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)..................................................................................6, 7, 9, 10

*Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*,
169 S.W.3d 840 (Ky. 2005).......................................................................................20

*Greer v. Strange Honey Farm, LLC*,
114 F.4th 605 (6th Cir. 2024) .......................................................................................5

*Herceg v. Hustler Mag., Inc.*,
565 F. Supp. 802 (S.D. Tex. 1983) ............................................................................20

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018)............................................................12, 17, 20

*Huffman v. Fifth Third Bank, Inc.*,
2015 WL 12977102 (E.D. Ky. 2015)) ........................................................................24

*Jacobs v. Meta Platforms, Inc.*,
2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ..................................................18

*James v. Meow Media*,
300 F.3d 683 (6th Cir. 2002) .............................................................................. *passim*

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)...........................................................................................7

*Jones v. Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) .............................................................................. *passim*

*Jutzi-Johnson v. United States*,
263 F.3d 753 (7th Cir. 2001) ......................................................................................16

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014)..................................................................................20

*L.W. v. Snap Inc.*,
675 F. Supp. 3d 1087 (S.D. Cal. 2023)......................................................................13

*Lama v. Meta Platforms, Inc.*,
732 F. Supp. 3d 214 (N.D.N.Y. 2024)........................................................................12

*M.P. v. Meta Platforms Inc.*,
127 F.4th 516 (4th Cir. 2025) .....................................................................................12

*McHargue v. Fayette Coal & Feed Co.*,
283 S.W.2d 170 (Ky. 1955).................................................................................23, 24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Meador v. Apple, Inc.*,
    911 F.3d 260 (5th Cir. 2018) ..................................................................................17

*Moody v. NetChoice*,
    603 U.S. 707 (2024)..................................................................................1, 14, 15

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*,
    536 F. App'x 558 (6th Cir. 2013) ...........................................................................21

*Murphy v. LinkedIn Corp.*,
    2026 WL 881710 (N.D. Cal. 2026) ........................................................................14

*Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*,
    22 F. Supp. 3d 669 (E.D. Ky. 2014) .......................................................................23

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022) ..................................................................15

*O'Kroley v. Fastcase, Inc.*,
    831 F.3d 352 (6th Cir. 2016) ...............................................................................6, 8

*Olivia N. v. Nat'l Broad. Co.*,
    126 Cal. App. 3d 488 (Ct. App. 1981)....................................................................20

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) ...................................................................................4

*Ostendorf v. Clark Equip. Co.*,
    122 S.W.3d 530 (Ky. 2003)....................................................................................21

*Presnell Const. Managers, Inc. v. EH Const., LLC*,
    134 S.W.3d 575 (Ky. 2004)....................................................................................24

*Ragland v. DiGiuro*,
    352 S.W.3d 908 (Ky. Ct. App. 2010) ....................................................................25

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) .................................................................................22

*Riggs v. Apple Inc.*,
    2017 WL 4018064 (Cal. Super. Ct. Aug. 24, 2017) ..............................................17

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
    113 S.W.3d 636 (Ky. Ct. App. 2003) ....................................................................25

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*,
    2005 WL 3557947 (N.D. Ill. Dec. 26, 2005)........................................................24

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Ruff v. Perfetti Van Melle USA Inc.*,
 2024 WL 329525 (E.D. Ky. Jan. 27, 2024) ....................................................................21, 24

*Sanders v. Acclaim Ent., Inc.*,
 188 F. Supp. 2d 1264 (D. Colo. 2002).................................................................................16

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,
 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) .....................................................................20

*Social Media Cases*,
 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ...............................................................18

*Thacker v. Ethicon, Inc.*,
 47 F.4th 451 (6th Cir. 2022) .........................................................................................15, 17

*Twitter Inc. v. Taamneh*,
 598 U.S. 471 (2023)..............................................................................................................17

*United Parcel Serv. Co. v. Rickert*,
 996 S.W.2d 464 (Ky. 1999).................................................................................................25

*Waas v. Ashland Day & Night Bank*,
 257 S.W 29 (Ky. 1923).........................................................................................................16

*Walmart, Inc. v. Reeves*,
 671 S.W.3d 24 (Ky. 2023)..............................................................................................15, 19

*Watters v. TSR, Inc.*,
 904 F.2d 378 (6th Cir. 1990) ..........................................................................16, 17, 19, 20

*Winter v. G.P. Putnam's Sons*,
 938 F.2d 1033 (9th Cir. 1991) ............................................................................................18

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997) ................................................................................................6

*Ziencik v. Snap, Inc.*,
 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)........................................................................19

**Statutes**

Communications Decency Act, 47 U.S.C.
 § 230(b)(2) ............................................................................................................................6
 § 230(b)(4) ............................................................................................................................6
 § 230(c) .................................................................................................................................6
 § 230(c)(1) .................................................................................................................... *passim*
 § 230(f)(2).............................................................................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Ky. Rev. Stat. Ann. § 411.130(1) ......................................................................................25

**Other Authorities**

Restatement (Second) of Torts
 § 302B, cmt. d.............................................................................................................20
 § 402A.........................................................................................................................18
 § 402A cmt. d..............................................................................................................18

Fed. R. Civ. P.
 Rule 9(b) ..................................................................................................................... 22
 Rule 12(b)(6)................................................................................................................5

## INTRODUCTION

This case is about Roblox's alleged failure to perfectly moderate the speech of its millions of users. Plaintiff Jaimee Seitz alleges that her daughter, Audree Heine, committed suicide after she "encountered other users . . . who glorified violence and espoused self-harm as a response to real-life hardship." The Amended Complaint ("Complaint") alleges that Audree communicated with these users on Roblox, an interactive online gaming platform owned by Defendant Roblox Corporation ("Roblox"), on Discord, an online messaging service owned by Defendant Discord Inc. ("Discord"), and on TikTok, a video-sharing platform owned by Defendant ByteDance Inc. ("TikTok"). Plaintiff seeks to hold Roblox liable for negligence, product liability, and fraud for publishing "violent" third-party content that Audree allegedly consumed. Audree's death is a tragedy, and Roblox deeply sympathizes with her family for their loss. But the Complaint's legal theories—wholly based on third-party content that Roblox allegedly failed to remove—are preempted by law and fail to state a claim.

***First***, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars all claims. Section 230 broadly immunizes interactive online services like Roblox "against liability arising from content created by third parties." *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014). The gravamen of Plaintiff's claims is that Roblox should have more perfectly monitored, screened, blocked, or removed third-party content—specifically, "violent" content authored by "other users"—which Section 230 forecloses. Appellate courts (including the Sixth Circuit) have consistently rejected similar theories under Section 230. So should this Court.

***Second***, Plaintiff's claims are also barred by the First Amendment, which extends to online publishers' decisions to "filter, prioritize, and label the varied messages . . . and other content their users wish to post." *Moody v. NetChoice*, LLC, 603 U.S. 707, 716 (2024). Each of Plaintiff's claims, if sustained, would compel Roblox to alter how it selects, arranges, and presents

1

communications between its users. The First Amendment protects these editorial functions.

**Third**, Plaintiff's claims fail as a matter of law. All claims fail for lack of proximate cause because suicide is not a reasonably foreseeable consequence of viewing content, playing video games, or communicating with other users. The negligence claim fails for lack of a cognizable duty. The product liability claims fail because Roblox is an interactive gaming service that transmits words and ideas; it is not a tangible "product" subject to product liability law. The misrepresentation claims are defective because Plaintiff has not pleaded fraud with particularity, there are no actionable misrepresentations or omissions, and Plaintiff fails to plausibly allege reliance. The Court should dismiss the Complaint with prejudice.[1]

## BACKGROUND

### A.    Roblox

Roblox offers an interactive online gaming service, including the Roblox app, on which millions of users play games, called "experiences," often created by other users. ¶ 19.[2] Designed to be an "interactive experience," Roblox allows users to communicate with each other via direct messages, "[g]ameplay interactions," such as in-experience chat, and voice chat. ¶ 21.

Roblox takes content moderation and safety very seriously. At all relevant times, Roblox informed minors that they must obtain their parents' permission to sign up for an account, ¶ 27, and Roblox offered customizable parental controls for those accounts, ¶ 46. Those controls are described in the 2017 and 2023 Parents' Guides, which the Complaint repeatedly quotes and cites. ¶¶ 37–38 nn.12–16. The Guides explain how parents can limit and disable chat capabilities on their

---

[1] Shortly before filing this Motion to Dismiss, Roblox filed a Motion to Compel Arbitration, which the Court should resolve first.

[2] Citations to "¶" are to the Amended Complaint, ECF No. 19. Unless otherwise noted, all citations, quotations, and alterations are omitted, and all emphasis is added.

children's accounts and how parents or players can "report inappropriate chat messages or content by using our Report Abuse system." Ex. A (2017 Parents' Guide); *see also* Ex. B (2023 Parents' Guide).[3] The 2023 Guide includes a link to an FAQs page (also cited), which describes parental controls, including: an "Account Restrictions" setting, which "restrict[s] accessible experiences on Roblox and completely disable[s] chat everywhere on the platform"; an "Allowed Experiences" setting, which allows parents "to customize access to experiences based on age recommendations"; and an "Account PIN" setting, "which requires a 4-digit code to make any changes to the account." Ex. C at 22. It states that parents can "monitor [their children's] online interactions, including their . . . friends, . . . private message history, and more." *Id.* at 17–18.

These resources also describe Roblox's content moderation efforts, including monitoring and screening certain third-party content. The 2017 Parents' Guide states that Roblox "proactively filter[s] inappropriate content" and its "moderation team is also online around the clock reviewing abuse reports." Ex. A at 3. The same document encourages players and parents to report "any rule violations," and explains how to "completely block others from chatting . . . with them in-game." *Id.* at 3–4. The 2023 Parents' Guide discloses that Roblox "uses a combination of chat filters, human and software moderation, to proactively remove inappropriate content from the platform." Ex. B at 5. And the FAQs page states that "Roblox's state-of-the-art text filtering system is actively monitored and dynamically adjusted to prevent inappropriate content and personally identifiable information from being visible on the platform." Ex. C at 34. Roblox also discloses that despite its robust efforts, it cannot prevent all inappropriate content from appearing on the platform, hence the parental controls and Report Abuse features. *See* Exs. A, B, C, D. Indeed, Roblox's Terms of Use—to which all users must agree—disclose that users may encounter "offensive or

---

[3] Citations to "Ex." are to the accompanying declaration of Thomas P. Peabody and its exhibits.

objectionable" third-party content for which Roblox is "not responsible." ¶¶ 26; Ex. E at 17.[4]

> **B.   The Claims Target Roblox's Alleged Failure to Block Third-Party Content.**

Plaintiff is a Kentucky resident, ¶ 9, whose daughter Audree allegedly began using Roblox when she was eight years old, and Discord and TikTok shortly thereafter, ¶ 216.[5] Audree allegedly "was bullied and felt socially isolated," ¶ 218, and relied heavily on Roblox for social interaction, ¶ 5. Plaintiff alleges that "[t]hrough Roblox, Audree encountered other users, including members of the [True Crime Community (TCC)], who glorified violence and espoused self-harm as a response to real-life hardship." ¶ 218; *see also* ¶ 6. Audree's alleged exposure to "these groups"— i.e., the views of other users—"led to a particular fixation on the Columbine shooters." ¶ 218.

On Discord and TikTok, alleged "predators continued to exploit Audree's emotional vulnerabilities with violent rhetoric," affecting her "mental health." ¶ 219. Plaintiff claims that Audree's "exposure to homophobic and violent content exacerbated her feelings of isolation and despair," and her "mental health deteriorated." ¶ 220.[6] The Complaint alleges that "the platforms facilitated this deterioration" by "fail[ing] to prevent Audree's harmful interactions" with other users. *Id*. In December 2024, when Audree was thirteen years old, she committed suicide. ¶ 215. "Leading up to her suicide, she had been livestreaming her activities on TikTok." ¶ 222.

Plaintiff alleges that although she had attempted to place parental controls on "Audree's accounts, the platforms allowed predators to contact Audree," ¶ 220. Plaintiff does not specify on which Defendants' platforms she attempted to place these controls. *Id.* Plaintiff "was unaware until Audree's death that her daughter had been exposed to these toxic communities and predators," as

---

[4] Plaintiff references the Terms in the Complaint, and the court can properly consider them. *See In re Omnicare, Inc. Sec. Litig*., 769 F.3d 455, 466 (6th Cir. 2014).

[5] Audree would have been eight years old between December 2019 and December 2020. ¶ 215.

[6] Although Plaintiff repeatedly characterizes the third-party content as "violent," Plaintiff does not provide any specific example of the content that Audree allegedly encountered.

her daughter "meticulously hid[] her interactions with them." ¶ 221. Although Plaintiff generally alleges that she "trusted the platform's assertions that their safety and community standards kept the platform safe for children," ¶ 216, she does not allege reading or relying on any statement by Roblox. Plaintiff does not specifically allege that she ever visited Roblox's site.

At bottom, Plaintiff's claims seek to hold Defendants liable for "fail[ing] to screen abusive users," ¶ 217, including "an online community dedicated to glorifying violence," ¶ 1. The Complaint does not (and cannot) allege that Roblox created the "violent content" at issue and concedes it was all user-generated content, ¶¶ 1, 21, 215, 217–221.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014). Fraud-based claims "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the 'who, what, where, when and how' of the alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024).

## ARGUMENT

**I. SECTION 230 BARS EACH OF PLAINTIFF'S CLAIMS**

**A. Section 230 Bars Claims Concerning Imperfect Content Moderation.**

Plaintiff's claims are all premised on the theory that Roblox failed "to screen abusive users," including their "harmful" and "violent" content, ¶¶ 217, 220. These claims fall within the heartland of Section 230, which bars claims against (1) a provider of an interactive computer service, where (2) the claim requires "treat[ing]" the defendant as the publisher or speaker (3) of any information "provided by another information content provider." *Jones*, 755 F.3d at 409.

-5-

Section 230 "immunizes providers . . . against liability arising from content created by third parties" by "bar[ring] lawsuits" targeting the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *Jones*, 755 F.3d at 406–07. Section 230 thus reversed the preexisting common-law rule that "allocate[d] liability to publishers or distributors of tortious material written or prepared by others." *Id.* at 407– 08 (noting that a "specific purpose[]" of Section 230 was to "overrule" *Stratton Oakmont v. Prodigy*, which held a website liable for defamatory posts because it had removed some—but not all—objectionable third-party content). Congress enacted Section 230 to "preserve the vibrant and competitive free market that presently exists for the Internet" while "remov[ing] disincentives for the development and utilization of blocking and filtering technologies" by immunizing providers for imperfect content moderation. 47 U.S.C. §§ 230(b)(2), (b)(4), (c); *see Jones*, 755 F.3d at 407– 08. As the text reflects, Congress sought to ensure that platforms could "perform some editing on user-generated content without [] becoming liable for all [] otherwise unlawful messages that they didn't edit or delete." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc) (cited with approval in *Jones*, 755 F.3d at 410–12).

Section 230 recognizes that content moderation is an imperfect art, owing to the "staggering" amount of internet content. *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997). That is why Section 230 bars claims that seek to hold providers liable for failing perfectly to monitor, screen, edit, or remove third-party content. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). "If a website displays content that is created entirely by third parties . . . it is immune from claims predicated on that content." *O'Kroley*, 831 F.3d at 355; *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175–76 (9th Cir. 2024) ("In short,

§ 230 protects apps and websites . . . from liability for any of the [third-party] content posted on their services, even if they take it upon themselves to establish a moderation or filtering system, however imperfect it proves to be."). Section 230's protections are "broad[]," and "close cases . . . must be resolved in favor of immunity," at the earliest stage, to avoid "forcing websites to face death by ten thousand duck-bites." *Jones*, 755 F.3d at 408.

Courts consistently apply Section 230 to dismiss claims, no matter what the cause of action, when the factual predicate is a platform's publication of third-party communications leading to violence or death. *See Force*, 934 F.3d at 59, 65–71 (Section 230 barred claims brought by victims of terrorist attacks premised on Facebook's publication of third-party "content that encouraged terrorist attacks," including use of content-neutral algorithms to organize such content); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1095 (9th Cir. 2019) (barring claims brought by mother whose son fatally overdosed after procuring illegal drugs via anonymous social networking site by communicating with another user); *Doe v. Grindr, Inc.*, 128 F.4th 1148, 1153–54 (9th Cir. 2025) (barring claims brought by minor who was sexually abused by adults he met on dating app); *Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same); *Doll v. Pelphrey*, 2024 WL 4788525, at *6 (Ky. Cir. Ct. Oct. 18, 2024) (same); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar).

### B.    Roblox Is an Interactive Computer Service Provider.

There is no dispute that Roblox provides "interactive computer services," which are any services that give people "access . . . to a computer server." 47 U.S.C. § 230(f)(2); *see, e.g.*, *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 699 (N.D. Ill. 2025).

### C.    The Claims Arise from Third-Party Content.

Nor is there any real dispute that the Complaint seeks to hold Roblox liable for third-party content. 47 U.S.C. § 230(c)(1). Plaintiff admits that Roblox did not create the allegedly "predatory

and harmful content." ¶¶ 217, 218, 220. It was created by "other users" whom Defendants allegedly "failed to screen." ¶¶ 1, 217–18*; see also* Ex. A at 1 ("all of the games and experiences on Roblox are created by the players themselves"). The Complaint's stray reference to "algorithms" that respond to user inputs does not change the analysis. *See* ¶ 61 (alleging that specific word searches will "direct[] users to violent games"). In *Jones*, the Sixth Circuit rejected the notion that a website transforms into a content developer by performing "ordinary search engine" functions, including by "providing neutral tools to carry out what may be unlawful or illicit searches." 755 F.3d at 409, 411 (citing *Roommates.com*, 521 F.3d at 1167, 1169).

### D.      Plaintiff's Claims Treat Roblox as a Publisher.

All of Plaintiff's claims seek to hold Roblox liable for publishing third-party content. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under [S]ection 230." *Roommates.com*, 521 F.3d at 1170–71. Publishing includes reviewing, editing, withdrawing, or altering third-party content. *O'Kroley*, 831 F.3d at 355. The "name of the cause of action" is irrelevant. *Barnes*, 570 F.3d at 1101–02. What matters is "the duty that the plaintiff alleges the defendant violated." *Id.* If the duty "come[s] within a publisher's traditional editorial functions"—i.e., deciding to publish, edit, remove, or screen third-party content—Section 230 bars the claim. *O'Kroley*, 831 F.3d at 355.

The Complaint faults Roblox for publishing third-party speech. Defendants allegedly "failed to screen abusive users," "allowed predators to contact Audree," and "failed to prevent [] harmful interactions." ¶¶ 217, 220. The Complaint says "content" 98 times; "block" 22 times; forms of "moderation" 19 times, and "other user" 10 times. Because the harm underlying these claims is "violent and inciting posts of others," Section 230 applies. *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1168 (9th Cir. 2026).

Recent appellate decisions are instructive. In *Grindr*, the minor plaintiff brought

-8-

negligence, product liability, failure-to-warn, and misrepresentation claims against a dating app after he was sexually assaulted by adults with whom he had matched and exchanged messages on the app. *Grindr*, 128 F.4th at 1151. As here, the plaintiff framed his claims as targeting the app's "features" and "design"—including lack of age verification and not suppressing messages between adults and minors—not third-party content. *Id.* at 1152–53. The Ninth Circuit recognized that the claims required treating Grindr as a publisher, as they sought to impose a duty to prevent "messages between users that could lead to illegal activity." *Id.* There, as here, Section 230 barred the claims. *Id.*; *see also MySpace*, 528 F.3d at 416, 419–22 (Section 230 barred claims targeting lack of adequate safety features, including age verification software, where minor plaintiff was assaulted by adult she met on defendant's website, as claims were "merely another way of claiming that MySpace was liable for publishing the communications").

Similarly, in *Dyroff*, the Ninth Circuit affirmed dismissal of negligence, failure-to-warn, and wrongful death claims premised on anonymous communications leading to a fatal drug overdose. 934 F.3d at 1096; *see* 2017 WL 5665670, at *1 (N.D. Cal. Nov. 26, 2017) (listing claims). The plaintiff claimed that the defendant website's "features and functions," such as user anonymity, not requiring a phone number, and using neutral algorithms to "recommend" content, fell outside Section 230. 934 F.3d at 1098. The court disagreed, holding that "[t]hese functions— recommendations and notifications—are tools meant to facilitate the communication and content of others . . . not content in and of themselves." *Id.* So too here.

And in *Force*, the Second Circuit applied Section 230 to dismiss terrorism claims where Facebook allegedly "allowed" a terrorist group to "post content that encouraged terrorist attacks," including by "direct[ing] such content to . . . the individuals who harmed the plaintiffs." 934 F.3d at 59. As here, the plaintiffs alleged that Facebook was liable for giving a violent group a means

to communicate and for failing to eliminate content despite prohibiting it. *Id.* at 60, 65, 71. The court found that Facebook's alleged conduct "falls within the heartland of what it means to be [a] 'publisher,'" including by "withdraw[ing]" content. *Id.* at 65. The court rejected the notion that Facebook had forfeited Section 230 immunity by removing some, but not all, violative content, as "one of the purposes of Section 230 was to ensure that [providers] should not incur liability . . . because they undertake such efforts—even if they are not completely effective." *Id.* at 71.

Plaintiff's claims and theories are materially indistinguishable and must be dismissed.

### 1. Section 230 Bars the Negligence Claims (Counts 3, 5, 6).

The negligence claims—whether styled as general negligence, negligent design, or negligent undertaking—all seek to impose a duty on Roblox to moderate third-party content, or else face liability, which Section 230 forecloses. Plaintiff criticizes Roblox for: (i) transmitting harmful third-party communications, specifically "grooming for violence"; (ii) having an "open chat function," including permitting adults and children to communicate; (iii) failing to "ban" abusive users; (iv) allowing "unsupervised" communications between users; (v) failing to "monitor for, report, and prevent the use of" it app by "predators to victimize, abuse, coerce, and exploit" users; (vi) not requiring age, identity, or phone number verification to create an account; (vii) failing to implement "parental controls" or "parental notifications" to monitor communications. ¶¶ 270–72; *see also* ¶¶ 313–14 (similar); ¶¶ 332–34 (faulting Roblox for not preventing "child users from being contacted by adult accounts or strangers' accounts").

Every one of these duties would require Roblox to change the way it publishes, which includes monitoring, screening, and removing third-party content. *Jones*, 755 F.3d at 416. Decisions about who can speak on a platform, including what barriers, if any, to impose on speech (such as age or identity verification, parental controls, or user anonymity), and what speech to screen (e.g., by banning users), are quintessential publishing functions. *See, e.g.*, *id.* at 415–16

(barring tort claims against website that published allegedly defamatory posts, and provided "neutral tools" for users to submit posts); *Doll*, 2024 WL 4788525, at *2, *8 (barring negligence claims alleging that app should have had "stricter age verification procedures"); *Doe v. Discord Inc.*, 2026 WL 1067574, at *1, *9–10 (N.D. Ohio Apr. 20, 2026) (Section 230 barred negligence claims alleging that substantially identical app "features" allowed "predator" to "groom" minor plaintiff); *Grindr*, 128 F.4th at 1152–54 (barring negligence claims because "discharging the alleged duty would require [the app] to monitor third-party content and prevent adult communications to minors"); *MySpace*, 528 F.3d at 421 (barring negligence claims premised on lack of age verification software); *In re Facebook, Inc.*, 625 S.W.3d at 93 (barring negligence claims premised on app's failure to verify age and identity, prevent adults from contacting minors, and report suspicious messages); *Barnes*, 570 F.3d at 1103 (barring negligent undertaking claim asserting ineffective removal of indecent profiles).

### 2.    Section 230 Bars the Design Defect Claim (Count 7).

The design defect claim also seeks to impose a duty that would require Roblox to change the way it displays third-party content, including who can access it—"traditional editorial" decisions protected by Section 230. *Jones*, 755 F.3d at 407. The alleged "defect[]" is "allow[ing] children to come into contact with predators," ¶ 349; *see also* ¶¶ 355, 357 (listing same "problematic features" as negligence claims). Plaintiff's proposed cure would require Roblox to change how it publishes, including by "blocking direct messaging between child and adult users"; blocking "abusers"; and offering a more restrictive "[c]ontrolled chat" option. ¶¶ 314, 357. Plaintiff's "theory is about the sharing of messages and what happens when some users interact with bad content," which necessarily requires treating Roblox as a publisher. *Meta Platforms*, 174 F.4th at 1163, 1168 (barring defect claim about "Facebook's core design and function" and features that allegedly "encourag[ed] . . . violent posts").

-11-

Courts routinely apply Section 230 to bar analogous design-based claims. In *M.P. v. Meta Platforms Inc.*, 127 F.4th 516, 521–22 (4th Cir. 2025), the Fourth Circuit held that Section 230 barred product liability claims alleging that Facebook's "design and architecture" was "unreasonably dangerous" for recommending "extremist groups" to a mass-shooter who killed the plaintiff's father and others. Because the challenged features simply automated publishing functions (arranging, sorting, and recommending third-party content), they were "inextricably intertwined with Facebook's role as a publisher of third-party content." *Id.* at 525; *see also Grindr*, 128 F.4th at 1153–54 (affirming dismissal of product liability claim asserting breach of a "duty not to . . . design defective products by failing to prevent a minor from being matched with predators"); *Bride*, 112 F.4th at 1180 (affirming dismissal of design defect claims asserting that app anonymity caused "harassing and bullying posts" leading to plaintiffs' suicides); *In re Facebook*, 625 S.W.3d at 93–94 (barring design defect claims premised on alleged failure to "provid[e] adequate warnings and/or instructions regarding the dangers of 'grooming'"); *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 222 (N.D.N.Y. 2024) (dismissing design claims because harm "allegedly flows from the third-party statements" posted to the platform, and the alleged defect "relate[s] to . . . requesting the removal of offensive content and/or accounts").

### 3.    Section 230 Bars the Failure-to-Warn Claims (Counts 4, 8).

Section 230 bars the failure-to-warn claims because they too would require Roblox to change the way it moderates third-party content. *See, e.g.*, *Discord*, 2026 WL 1067574, at *8–10 (dismissing failure-to-warn claims premised on "second guessing" content-moderation decisions). Plaintiff argues that Roblox should have warned that its app was "danger[ous]" due to the "risk of grooming for violence" by other users. ¶ 286. Where, as here, "[t]he warnings . . . would only be necessary because of [the defendant's] allegedly inadequate policing of third-party content," Section 230 immunity applies. *In re Facebook*, 625 S.W.3d at 94; *see Herrick v. Grindr, LLC*, 306

-12-

F. Supp. 3d 579, 592 n.8 (S.D.N.Y. 2018) (barring failure-to-warn claim because "a warning about third-party content is a form of editing"), *aff'd*, 765 F. App'x 586, 591 (2d Cir. 2019); *Grindr*, 128 F.4th at 1154 (barring failure-to-warn claim premised on "duty to warn . . . about the risks of child sexual exploitation on the App"); *Bride*, 112 F.4th at 1180 (barring failure-to-warn claim premised on "not mitigating, in some way, the harmful effects of harassing and bullying content").

### 4.       Section 230 Bars the Fraud-Based Claims (Counts 1, 2).

The concealment and misrepresentation claims suffer from similar flaws. As in *Grindr*, the aspirational statements at issue concern Roblox's content moderation policies aimed at fostering user safety. *See* ¶¶ 36–40 (highlighting statements that Roblox "take[s] kids' safety and privacy very seriously"; has "kept . . . safety top-of-mind when designing our platform"; employs a "stringent safety system and policies"). Like Grindr's assertion that it "would maintain a 'safe and secure environment for its users,'" these statements are "not a specific promise, but a description of its moderation policy," protected by Section 230. *Grindr*, 128 F.4th at 1154. As in *Grindr*, the thrust of Plaintiff's claim here is that Roblox should have taken "certain moderation actions" that she believes the policies required. *Id.* But complying with that duty would necessarily require Roblox to change how it publishes third-party content—i.e., by blocking, screening, or removing the "violent content" and Audree's allegedly "harmful interactions." ¶ 220. Courts routinely dismiss misrepresentation claims that trace back to the publication of third-party content or profiles, and this Court should too. *See, e.g.*, *Beckman v. Match.com, LLC*, 668 F. App'x 759, 759–60 (9th Cir. 2016) (barring misrepresentation claim based on defendant's publication of profile belonging to plaintiff's attacker); *Discord*, 2026 WL 1067574, at *12 (barring misrepresentation claims challenging app's statements about content moderation implying its platform was "safe for minors"); *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1096 (S.D. Cal. 2023) (similar).

And given Roblox's express disclaimer of responsibility or liability for "offensive or

-13-

objectionable" third-party content," Ex. E § 11, there is no enforceable promise. *Barnes*, 570 F.3d at 1108; *see also Murphy v. LinkedIn Corp.*, 2026 WL 881710, at *2–*3 (N.D. Cal. 2026) (barring misrepresentation-based claims predicated on safety-related statements where defendant disclaimed liability and notified users they might encounter "illegal, offensive, or otherwise harmful" content).

### 5. Section 230 Bars the Wrongful Death Claim (Count 9).

The wrongful death claim relies on the same allegations as the other claims, ¶¶ 388–93, and Section 230 bars it for the same reasons. Plaintiff claims that Defendants are responsible for Audree's death because she used their services to communicate with other users, whose "homophobic and violent content exacerbated her feelings of isolation and despair." ¶ 220. The claim therefore targets Roblox's facilitation of "the communication and content of others." *Dyroff*, 934 F.3d at 1098 (affirming Section 230 dismissal of wrongful death claim premised on plaintiff's communications with user from whom he bought fentanyl-laced heroin).

## II.   THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIMS

The First Amendment independently bars the claims. "[L]ike the editors" and "cable operators" of the past, internet platforms enjoy First Amendment rights when they exercise editorial discretion in organizing or presenting third-party content. *Moody*, 603 U.S. at 738. As the Supreme Court has explained, "major social-media platforms are in the business, when curating their feeds, of combining 'multifarious voices' to create a distinctive expressive offering." *Id.* That "expressive offering" "derive[s] largely from the platforms' editorial decisions about which posts to remove, label, or demote." *Id.* at 738–39. "The choice of material, the decisions made as to content, the treatment of public issues . . . all [] constitute the exercise of editorial control and judgment." *Id.* In short, Roblox "has important First Amendment rights that would be jeopardized by a court telling [it] what content-moderation policies to adopt and how to enforce those policies."

*O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186, 1188 (N.D. Cal. 2022), *aff'd*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases about online services' First Amendment editorial rights).

These fundamental First Amendment principles, which "overlap" with Section 230's protections, preclude Plaintiff's claims. *Computer & Commc'ns. Indus. Ass'n v. Paxton*, 2026 WL 2130729, at *14 (5th Cir. July 24, 2026). As noted above, Plaintiff's claims target Roblox's decisions about what content to publish—including whether to publish it in the first place, whether to remove content from circulation, and what voices should be permitted to speak. As the Sixth Circuit and courts across the country have recognized, the First Amendment bars claims predicated on the theory that publishing objectionable material has inspired violence or self-harm. *See James v. Meow Media*, 300 F.3d 683, 695–99 (6th Cir. 2002); *see infra* 18–19. To hold Roblox liable for content-moderation choices would have "an obvious chilling effect" on the free exchange of information the First Amendment was designed to protect. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003). The First Amendment bars Plaintiff's attempt to use state law to "alter[] the platforms' choices about the views they will, and will not, convey" because she does "not like the way those platforms are selecting and moderating content." *Moody*, 603 U.S. at 737, 743; *see also Doll*, 2024 WL 4788525, at *2 (First Amendment barred negligence and design claims against app for transmitting communications without knowledge of their unlawfulness).

## III.   PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST ROBLOX

Apart from these federal protections, Plaintiff's claims fail as a matter of state law.

### A.   All Claims Fail for Lack of Proximate Cause (Counts 1–9).

To start, each claim requires pleading proximate cause or its equivalent,[7] which is

---

[7] *See, e.g.*, *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023) (negligence requires proximate cause); *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 459–60 (6th Cir. 2022) (same for products liability); *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (misrepresentations).

impossible given the allegations. Proximate cause requires an unbroken natural and probable chain of causation between the allegedly tortious act and resulting harm. *Waas v. Ashland Day & Night Bank*, 257 S.W 29, 30–31 (Ky. 1923).[8] Where there is an independent intervening cause, the causal chain is broken, and proximate cause is absent. That is the case here.

The Complaint transparently asserts that every claim "seeks to hold [Defendants] accountable for causing . . . Audree Heine, to die by suicide." ¶ 1. As the Sixth Circuit has recognized, under Kentucky law, "suicide is [generally] viewed as an independent intervening act which the original tortfeasor could not have reasonably been expected to foresee." *Watters v. TSR, Inc.*, 904 F.2d 378, 383 (6th Cir. 1990). *Watters* is instructive. There, the plaintiff sued the manufacturer of "Dungeons & Dragons" for allegedly causing her son to commit suicide after playing the game. *Id.* at 379. The wrongful death, negligence, and product liability claims failed for lack of proximate cause because suicide was an independent intervening cause that was not reasonably foreseeable. *Id.* at 383–84; *see also, e.g.*, *Jutzi-Johnson v. United States*, 263 F.3d 753, 755 (7th Cir. 2001) ("[S]uicide is said to be a supervening cause of the victim's loss of his life, breaking the chain of responsibility that would otherwise link the loss to the negligent act."); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1276 (D. Colo. 2002) (suicide and murder by Columbine shooters not proximately caused by defendants' video games and films). The same reasoning applies here. Audree's suicide was a tragedy, but Roblox did not cause it.

Furthermore, Roblox is unaware of any Kentucky case holding that a communications service can proximately cause injuries inflicted by a third party merely by transmitting messages between users. A contrary rule would lead to "endless" liability, with no limiting principle. *Crosby*

---

[8] Federal courts in Kentucky apply Kentucky substantive law when the case has "significant contacts" with Kentucky, including as where, as here, the case involves alleged injuries to a Kentucky resident. *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009).

*v. Twitter, Inc.*, 921 F.3d 617, 623–25 & n.4 (6th Cir. 2019) (applying federal and Michigan law to "refus[e] to extend" tort liability to "everything that an individual may do" through social media); *see Twitter Inc. v. Taamneh*, 598 U.S. 471, 501 (2023) ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants . . . aided and abetted those wrongdoers' acts. . . . [A] contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them," "run[ning] roughshod over the typical limits on tort liability"); *Meador v. Apple, Inc.*, 911 F.3d 260, 265 (5th Cir. 2018) (transmitting iMessages did not proximately cause car crash because "a smartphone's effects on its user [is not] a cause at all"); *Riggs v. Apple Inc.*, 2017 WL 4018064, at *4 (Cal. Super. Ct. Aug. 24, 2017) (similar). The Court should dismiss all claims for lack of proximate cause.

### B.      There Is No Viable Product Liability Claim (Counts 5, 7, 8).

The product liability claims (whether styled as design claims or failure to warn) fail because Roblox is not a "product"—it is an intangible service that transmits words and ideas.[9]

Sixth Circuit precedent is squarely on point. In *James v. Meow Media, Inc.*, the plaintiffs alleged that the defendants' "video games, movie, and internet transmissions constitute 'products' and their violent content 'product defects,'" that caused a mass shooting. 300 F.3d at 700–01. In dismissing the product liability claims, the court followed a long line of authorities holding that "words and images" and "communicative element[s]"—even if contained in a tangible cassette or book—"are not sufficiently 'tangible' to constitute products[.]" *Id.* at 701; *see also Watters*, 904 F.2d at 381 (recognizing that product liability law "has never been extended to words or pictures");

---

[9] To state a product liability claim, a plaintiff must establish a cognizable product defect and resulting harm. *See Thacker*, 47 F.4th at 459. Roblox has grouped negligent design (Count 5), strict liability—design defect (Count 7), and failure to warn (Count 8)—together because all require a "product." *See, e.g.*, *Herrick*, 306 F. Supp. 3d at 588.

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991) (words and ideas in book are not a "product"); Restatement (Second) of Torts § 402A cmt. d (defining "product" with examples of tangible items, such as "an automobile, a tire, an airplane, a grinding wheel, a water heater").[10]

Plaintiff does not challenge a tangible "product." Instead, she targets the words and ideas conveyed through Roblox's communication features. *E.g.*, ¶ 307 ("abusive contact facilitated by Defendants' apps"); ¶ 349 (alleging defectively designed app that "allow[s] children to come into contact with predators"); ¶ 374 (alleging failure to warn about "risk of grooming for violence" by other users). That is insufficient as a matter of law to give rise to product liability. *James*, 300 F.3d at 701 (ideas and images in video games not "products"). Furthermore, extending product liability law to encompass intangible communication features would be unworkable and lead to "significant constitutional problems under the First Amendment that ought to be avoided." *Id.* at 695. Imposing product liability law on decisions about whether to permit or remove content would "seriously inhibit those who wish to share thoughts and theories," raising the "disturbing . . . prospect that we might be deprived of the latest ideas," and would not "take into consideration the unique characteristics of ideas and expression." *Winter*, 938 F.2d at 1034–35.

Plaintiff's theory would implicate each of these concerns. That is why courts across the country agree that product liability law does not apply in similar situations. *See, e.g.*, *James*, 300 F.3d at 701 (dismissing product liability claim; "words and images" in video games and internet transmissions not a "product"); *Social Media Cases*, 2023 WL 6847378, at *20 (Cal. Super. Ct. Oct. 13, 2023) (same; TikTok and YouTube not a "product"); *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (same; "as a social media platform that

---

[10] Kentucky "has adopted the Restatement (Second) of Torts § 402A" for product liability claims. *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 756 (E.D. Ky. 2020).

connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat is not a "product"); *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) ("numerous authorities" conclude that "[t]here is no strict [product] liability for books, movies, or other forms of media").

### C.    The Negligence Claims Fail (Counts 3, 6).

In addition to lack of proximate cause, the negligence claims fail because Plaintiff has not alleged a cognizable duty of care. *See Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023).

Under Kentucky law, "the determination of whether a duty of care exists is whether the harm to the plaintiff resulting from the defendant's negligence was 'foreseeable.'" *James*, 300 F.3d at 690. Here, the negligence claims seek to impose a duty on Roblox to prevent users from communicating violent ideas to other users, on the theory that such ideas could lead to suicide. ¶ 265 (asserting duty to avoid unreasonable "risk of grooming for violence" by other users, which could lead to "self-harm"); ¶ 259 (duty to "protect" against other users' communications).

But the Sixth Circuit rejected this precise theory of duty in *Watters* and *James.* In *Watters*, the court held that a game manufacturer owed no duty to a victim allegedly inspired to commit suicide after playing a parlor game, which "desensitized" the victim to violence. *See* 904 F.2d at 381–82. The court held that suicide was not a foreseeable result of playing the game, notwithstanding its violent content. *Id.* at 381–83. Finding otherwise would "stretch the concepts of foreseeability and ordinary care to lengths that would deprive them of all normal meaning." *Id.* at 381. Similarly, in *James*, the Sixth Circuit dismissed a negligence claim asserting that defendants' allegedly violent video games, movies, and website content caused a high school student to shoot and kill classmates. 300 F.3d at 687. No duty existed under Kentucky law, as the student's "reaction to the games and movies at issue . . . was simply too idiosyncratic to expect the defendants to have anticipated it." *Id.* at 693; *see also Est. of B.H.*, 2022 WL 551701, at *3 (website

-19-

owed no duty to minor to prevent self-harm when the duty is premised on "content and [its] dissemination"); *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802, 802 (S.D. Tex. 1983) (rejecting theory that a magazine that described asphyxiation owed "a duty of social responsibility" to the plaintiffs, whose relatives died after imitating the practices described in the article).[11]

If Plaintiff's theory is that Roblox had a duty to control the conduct of users who may have spread the violent ideas that Audree allegedly consumed, that duty is not cognizable, either. Absent a "special relationship" not present here, a defendant has no duty to prevent intentional criminal acts by third parties. *James*, 300 F.3d at 693–94 (citing Restatement (Second) of Torts § 302B, cmt. d)); *see also Dyroff*, 934 F.3d at 1101 (website has no "special relationship" with its users). While it is far from clear that disseminating violent content qualifies as a crime, it is well-established that websites do not owe a legal duty to users to monitor or remove content. *See, e.g.*, *Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359–60 (D.C. Cir. 2014) (no duty of care or special relationship between Facebook and its users); *Herrick*, 306 F. Supp. 3d at 598–99 (similar); *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *4–5 (S.D. Tex. Mar. 22, 2021) (similar).[12]

---

[11] As with the product liability claims, recognizing a duty in these circumstances would raise serious First Amendment concerns. *See, e.g.*, *Watters*, 904 F.2d at 383; *Olivia N. v. Nat'l Broad. Co.*, 126 Cal. App. 3d 488, 494 (Ct. App. 1981) (declining to recognize duty to prevent violent content because it "would lead to self-censorship which would dampen the vigor and limit the variety of public debate," raising First Amendment concerns).

[12] Courts have distinguished between duties arising from "misfeasance" (affirmative conduct that "creates a new risk of harm") or from "nonfeasance" (inaction), with a "reluctance to impose liability on the latter." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005) (citation omitted). Plaintiff has no viable theory of nonfeasance, and "[m]erely operating a website or web-based platform used by malicious third parties" is not "misfeasance." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2023 WL 7524912, at *38 (N.D. Cal. Nov. 14, 2023).

-20-

As to the negligent undertaking claim, the Complaint contains no allegation that Roblox undertook to prevent minors from being contacted by "strangers' accounts," ¶ 332, and Plaintiff does not allege relying on any statement to that effect. *See Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 538 (Ky. 2003) (negligent undertaking requires duty and reliance). The cited materials reveal that Roblox provided tools for parental supervision and reporting abuse by other users, so any alleged undertaking to "prevent child users from being contacted by adult accounts strangers' accounts" is contradicted by the Complaint. *See supra* 2–3.

### D.     The Fraud Claims Fail (Counts 1, 2).

The fraud-based claims—whether framed as fraudulent or negligent misrepresentation or concealment—require dismissal for many reasons. Plaintiff fails to plead fraud with particularity, an actionable misrepresentation or concealment, reliance, or any duty to disclose.

Under Kentucky law, fraudulent misrepresentation requires pleading that: (1) the defendant made a material misrepresentation, (2) the misrepresentation was false, (3) the false misrepresentation was made knowingly or recklessly, (4) the defendant induced the plaintiff to act upon the misrepresentation, (5) the plaintiff relied upon the misrepresentation, and (6) the misrepresentation caused injury to the plaintiff. *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 770 (E.D. Ky. 2019). Reliance "must be reasonable." *Id.* (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)). Negligent misrepresentation occurs when "[o]ne [] in the course of his business . . . or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions" which causes "pecuniary loss to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Ruff v. Perfetti Van Melle USA Inc.*, 2024 WL 329525, at *3 (E.D. Ky. Jan. 27, 2024). Fraudulent concealment requires (1) a duty to disclose a material fact, (2) failure to disclose, (3) reliance, and (4) damages. *See Morris Aviation,*

-21-

*LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013).

***Rule 9(b).*** Plaintiff's fraud-based claims fail at the threshold because Plaintiff fails to plead fraud with particularity, which requires: (1) specifying the fraudulent statements; (2) identifying the speaker; (3) pleading when and where the statements were made; and (4) explaining what made the statements fraudulent. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). "Conclusory statements of reliance" are insufficient "to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852–53 (6th Cir. 2006). These requirements apply to all claims sounding in fraud, including negligent misrepresentation and concealment. *Republic Bank*, 683 F.3d at 248 (misrepresentation); *see B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 652–53 (W.D. Ky. 2019) (concealment).

Plaintiff's generalized assertions that Roblox misrepresented the "safety of its app" or concealed the "safety risks presented by its app" fall far short of Rule 9(b). ¶¶ 227, 229. While the Complaint's general allegations cite various documents describing Roblox's approach to content moderation, most pre-date Audree's alleged use of Roblox by many years, and some are before her birth. ¶¶ 35–40. Plaintiff does not explain what statements were fraudulent, or that she relied on any of them. These defects are fatal under Rule 9(b). *See, e.g.*, *Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 825–26 (6th Cir. 2020) (rejecting misrepresentations claims under Kentucky law for failing to "identif[y]" a "specific fraudulent statement" or "a false statement"). Nor does Plaintiff identify specific facts that Roblox purportedly concealed, or how Roblox "affirmative[ly] act[ed]" to suppress those facts. *See Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 395 (6th Cir. 2015). These failures alone require dismissal of the fraud claims.

***No actionable misrepresentation.*** The misrepresentation claims fail on the merits, too. The Complaint fails to allege an actionably false statement. *Republic Bank*, 683 F.3d at 248, 260. To

-22-

be capable of being "false," a representation must "relate to a past or present material fact." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). "A mere statement of opinion or prediction may not be the basis of an action." *Id.* In determining whether a statement is factual (or false), courts also consider the alleged misrepresentation in its full context, evaluating other accompanying information and disclosures. *See Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*, 22 F. Supp. 3d 669, 678 (E.D. Ky. 2014) (considering whether statements were misleading "in the context the statements are made"), *aff'd*, 614 F. App'x 237 (6th Cir. 2015).

None of the statements are actionable. All are aspirational statements about Roblox's goals to prioritize safety and descriptions of content-moderation policies. *See, e.g.*, ¶ 37 (Roblox "takes kids' safety and privacy very seriously"); ¶ 38 (Roblox "develops [] technologies . . . to ensure . . . a safe and fun space"); ¶¶ 46, 50 ("focuses on making sure that everything is done in a safe and appropriate way" and has a "guiding vision" to create "safest and most civil community"); ¶ 48 (describing "safety and civility" as being "baked into everything that we do"); ¶ 39 ("safety is in our DNA"); ¶ 40 (describing types of content Roblox "won't allow"). These are not statements of fact capable of being proven true or false. They are "general statements about big-picture concepts such as trust, security, reputation, and safety[.]" *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021); *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 171–72 (Ky. 1955) (no actionable misrepresentation where advertiser stated product was "the best and most satisfactory . . . on the market" which "would result in great saving of time and labor"); *Grindr*, 128 F.4th at 1154 (no actionable misrepresentation because "statement that an interactive computer service provider will create a safe and secure environment is too general to be enforced").[13]

---

[13] *See also, e.g.*, *DeSoto Cab Co. v. Uber Techs., Inc.*, 2018 WL 10247483, at \*12 (N.D. Cal. Sep. 24, 2018) ("Uber's statement that its drivers 'provide[d] the safest ride on the road' and were the 'gold standard' of safety practices" were "not specific enough to create consumer reliance");

-23-

While Plaintiff suggests that Roblox promised to eliminate all third-party content that violates its policies, the statements say no such thing. To the contrary, the documents describing content Roblox "won't allow" convey that it does not promise perfect content moderation. For example, in response to the question "How can I keep my child safe on Roblox?," the FAQs encourage parents to "monitor your kids' online interactions, including their creations, friends, virtual item purchases, private message history, and more." Ex. C at 18. Roblox also instructs parents and users to report safety-related issues, Ex. A, including by "immediately send[ing] an abuse report to the ROBLOX team" "[i]f someone on the ROBLOX site harasses you or makes any comments that you feel are inappropriate." Ex. D at 2. No reasonable person would read these statements to promise a platform devoid of offensive content, especially given the Terms' clear disclaimer. *McHargue*, 283 S.W.2d at 172; Ex. E at 17.

**Reliance.** Plaintiff also fails to allege reliance. Despite citing nearly two decades of statements, Plaintiff does not identify a single statement that she read or relied on. She does not clearly allege ever being in a place where she would have viewed the statements. Courts routinely dismiss misrepresentation claims in these circumstances. *See, e.g.*, *Bogard v. TikTok Inc.*, 2025 WL 3637035, at *10 (N.D. Cal. Dec. 15, 2025); *Huffman v. Fifth Third Bank, Inc.*, 2015 WL 12977102, at *3 (E.D. Ky. 2015).

**No Pecuniary Loss (Negligent Misrepresentation).** Under Kentucky law, negligent misrepresentation must cause a plaintiff "pecuniary loss" or "economic loss." *Ruff*, 2024 WL 329525, at *3; *see Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 582 n.1

---

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) ("innovative" is "not specific, not concrete, not measurable"); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021) ("'relentless focus and commitment to safety' is non-actionable").

-24-

(Ky. 2004) (defining "economic loss" as "[a] monetary loss such as lost wages or *lost profits*"). The sole claimed harms here are "injuries and harm" to the "health, safety, and welfare" of customers. ¶¶ 251–253. That is not pecuniary loss. *See Ragland v. DiGiuro*, 352 S.W.3d 908, 921 (Ky. Ct. App. 2010) ("[W]hile it is . . . impossible to place a value on the loss of a loved one's life, such noneconomic harm is not compensable.").

*No Duty to Disclose or Concealment (Fraudulent Concealment).* There is no duty to disclose information unless (1) there is "a confidential or fiduciary relationship between the parties," (2) "a statute imposes [] a duty," or (3) "a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). None of these circumstances exist here. There is no special relationship between a website and its users, *Dyroff*, 934 F.3d at 1101, and no statutory duty to disclose. Nor did any of Roblox's statements give the impression of a comprehensive disclosure or offer a "materially misleading" "mere partial truth," *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 469 (Ky. 1999)—indeed, the cited documents discuss violent and other violative content, abusive users, and the risk of "grooming," ¶¶ 26, 38, 40, 42–43, 120, 130 (alleging Roblox's public disclosure of its safety measures intended to address known risks with the platform). *See, e.g.*, *Rivermont Inn*, 113 S.W.3d at 641 (no partial-disclosure duty where defendant's prior disclosures foreclosed any false impression of full disclosure).

## E.    The Wrongful Death Claim Fails (Count 9).

A wrongful death claim requires "an injury inflicted by the negligence or wrongful act of another." Ky. Rev. Stat. Ann. § 411.130(1). The Complaint does not allege any negligence or wrongful act of Roblox, so the wrongful death claim must also be dismissed. *See supra* 19–21.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

-25-

Dated: August 7, 2026

Respectfully submitted,

By: */s/ Tiana A. Demas*

Tiana A. Demas (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
Jamie D. Robertson (*pro hac vice*)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone:    +1 312 881 6500
Facsimile:    +1 312 881 6598
tdemas@cooley.com

Max. A. Bernstein (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    +1 415-693-2000
Facsimile:    +1 415-693-2222
mbernstein@cooley.com

Raymond P. Tolentino*
Anna O. Mohan*
COOLEY LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:    +1 202-842-7800
Facsimile:    +1 202-842-7899
rtolentino@cooley.com
amohan@cooley.com

Patrick J. Hayden*
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone:    +1 212-479-6000
Facsimile:    +1 212-479-6275
phayden@cooley.com

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC - LOUISVILLE
500 W. Jefferson Street
Suite 2400
Louisville, KY 40202
Telephone:    +1 502-783-6245

-26-

bpaul@mcbrayerfirm.com
mdenham@mcbrayerfirm.com

Attorneys for Defendant
ROBLOX CORPORATION

*Pro Hac Vice* forthcoming