**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE,

Plaintiff,

v.

ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,

Defendants.

Case No. 2:25-cv-00166-DLB-CJS

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISCORD INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 4

A. No Arbitration Agreement Was Formed Because Audree Lacked the Capacity to Consent to the Terms. ........ 4

B. In Any Event, Ms. Seitz Disaffirmed Any Arbitration Agreement on Behalf of Audree. ........ 8

1. Disaffirmance must be decided by the Court, not an arbitrator. ........ 9

2. As Audree's representative, Ms. Seitz has the power to disaffirm the Terms for Audree and exercised that authority. ........ 12

3. Discord's estoppel argument lacks merit. ........ 14

CONCLUSION ........ 17

## INTRODUCTION

Discord is an online platform that for years has knowingly created a haven for child predators and extremists who groom children for sexual exploitation and violence. Discord currently faces nearly sixty lawsuits in federal court brought by children alleging that the platform facilitated their sexual exploitation and assault by child predators. The company also faces approximately fifteen similar lawsuits in California state court, and it has been sued in Washington by the family of a teenage boy who was coerced into suicide by the extremist group "764." Discord is also defending lawsuits brought by attorneys general from the states of New Jersey, Nevada, Indiana, Arkansas, and Texas for its deceptive and unlawful practices regarding child safety.

This case is part of that wave. Audree Heine was eight years old when she started using Discord. One week after her thirteenth birthday, she died by suicide. Discord, as well as Roblox and TikTok, designed and fostered an environment in which a violent online community that glorifies mass shooters and suicide was able to target and manipulate her into taking her own life. Jaimee Seitz, Audree's mother, brought this action to hold these companies accountable, in open court and before a jury, for the role their platforms' design played in her daughter's death.

In response, Discord asks this Court to ensure that no jury and no member of the public ever hear Audree's claims. Discord seeks to force Audree's claims into confidential arbitration, where there is no public docket, no public evidence, and no public verdict. Its theory: Audree agreed to arbitrate her claims when she clicked buttons on a screen when she was eight, ten, eleven, and twelve years old. While Discord concedes that Ms. Seitz's wrongful-death claim cannot be compelled to arbitration, it seeks to stay all court proceedings on that claim during its requested arbitration of Audree's claims. The goal of Discord's motion is thus clear: keep Audree's death out of a courtroom and out of public view for as long as possible, if not forever.

But the law stands in the way of that goal. Arbitration is a matter of contract, and Audree never formed any agreement to arbitrate with Discord. At every age Discord relies on—eight, ten, eleven, twelve—Audree lacked the capacity to understand what she was purportedly agreeing to. And even if an agreement was formed, Ms. Seitz, as the personal representative of Audree's estate, has disaffirmed it on Audree's behalf in the Complaint and in her declaration. Discord's so-called "delegation clause" is no obstacle. Ms. Seitz has specifically challenged that clause by disaffirming it, which means that this Court, not an arbitrator, must decide whether the disaffirmance is effective. And Discord's challenges to the merits of Ms. Seitz's disaffirmance for Audree fail under both California law—Discord's own choice of law—and Kentucky law.

This Court is the proper forum for Audree's claims. The Court should deny Discord's motion and allow the judicial process to move forward.

## FACTUAL BACKGROUND

Audree was eight years old and in third grade when she created her first Discord account on May 21, 2020, using her school email address: audree.heine@stu.campbell.kyschools.us. Declaration of Ben Robbins in Support of Discord's Motion to Compel Arbitration ("Robbins Decl.") ¶ 5; Declaration of Jaimee Seitz in Opposition to Discord's Motion to Compel Arbitration ("Seitz Decl.") ¶ 7. She was in fifth grade when she created a second account on April 16, 2022, using a different email address. Robbins Decl. ¶ 6; Seitz Decl. ¶ 8. Audree used Discord without her mother's knowledge or permission. Seitz Decl. ¶ 15. When Ms. Seitz learned that Audree had a Discord account, she deleted the app. *Id.* But Audree was able to continue to use Discord.

Discord claims Audree agreed to its online Terms of Service ("Terms") three more times by clicking through pop-notices about updated Terms. Robbins Decl. ¶¶ 12-14. Two of those clicks were on her first account: once when she was going into sixth grade in July 2022 and again in seventh grade in November 2024—soon before she died by suicide. Robbins Decl. ¶ 14; Seitz

Decl. ¶¶ 4, 9, 11. The third click was on her second account when she was in sixth grade in April 2023. Robbins Decl. ¶ 14; Seitz Decl. ¶ 10.

Each version of the Terms that Discord claims that an elementary- and middle-school child agreed to spans nine to fifteen dense, single-spaced pages, and each contains a mandatory arbitration provision and a delegation clause that purports to send even the question of the arbitration agreement's enforceability to the arbitrator. *See* Robbins Decl. Exs. A-D.

Discord did nothing to verify that users were the ages they claimed to be when creating their accounts. Discord accepts whatever birth date a user types in as long as it indicates the person is thirteen or older. Second Amended Complaint ("SAC") ¶ 190. For years, Discord has known of pervasive underage use of its platform and done nothing about it. *Id.* ¶¶ 191-92. In 2021, Discord hired a consultant to study this issue, and the consultant informed Discord that children under thirteen routinely use its platform and that "[m]ost lied about their age in order to access the platform." *Id.* ¶ 191. Discord responded by leaving its registration process exactly as it was and by continuing to allow underage children to access its platform. *Id.* ¶ 192.

Audree died by suicide on December 2, 2024, one week after her thirteenth birthday. Seitz Decl. ¶ 4. Ms. Seitz was appointed the administrator of Audree's estate on September 10, 2025. Seitz Decl. ¶ 5 & Ex. A. Ms. Seitz, individually and as Audree's personal representative, brought this action seeking to hold Discord, Roblox, and TikTok responsible for Audree's death.

In the Complaint, Ms. Seitz disaffirms any contract that Audree may have entered with Discord, including any arbitration agreement or delegation clause:

> Audree was a minor at the time of using Defendants' apps and, as such, lacked the legal capacity to enter into any binding agreement. To the extent Defendants claim any contract has any effect on Plaintiff's rights in this action, such an assertion is legally erroneous, invalid, and unenforceable because Plaintiff disaffirms any such contract, including any contract containing a forced arbitration agreement and any delegation clause in any contract.

SAC ¶ 12. Ms. Seitz reiterates this disaffirmance in her attached declaration. Seitz Decl. ¶ 14.

Discord nevertheless seeks to force Audree's claims out of court and into arbitration. It does not move to compel Ms. Seitz's wrongful-death claim into arbitration.

## LEGAL STANDARD

The Federal Arbitration Act is not intended to put a thumb on the scale in favor of arbitration. Rather, the FAA's "policy favoring arbitration" is "about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-18 (2022); *see also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989) (emphasizing that arbitration under the FAA "is a matter of consent, not coercion"). In resolving a motion to compel arbitration, then, a court must first determine whether an arbitration agreement exists, applying ordinary state-law contract principles. *Bazemore v. Papa John's United States, Inc.*, 74 F.4th 795, 797-98 (6th Cir. 2023). If such an agreement was formed, it nonetheless may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Such grounds include "generally applicable [state-law] contract defenses," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010), including the "infancy" of the minor, *Davis v. Panda Express, Inc.*, No. 20-cv-728, 2021 U.S. Dist. LEXIS 128252, at *14-15 (W.D. Ky. July 7, 2021).

## ARGUMENT

### A. No Arbitration Agreement Was Formed Because Audree Lacked the Capacity to Consent to the Terms.

For Discord to compel Audree's claims into arbitration, Audree and Discord must have formed an agreement to arbitrate. Arbitration, after all, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). The capacity to contract is an essential element of a

contract under both California and Kentucky law. Cal Civ. Code § 1550; *Conners v. Eble*, 269 S.W.2d 716, 717-18 (Ky. 1954). Courts must "carefully scrutinize transactions between persons who from the very nature of the circumstances occupy unequal positions." *Conners*, 269 S.W.2d at 717. Here, at the times Audree purportedly agreed to the Terms—when she was eight, ten, eleven, and twelve years old—she lacked the capacity to do so under California and Kentucky law.

Discord suggests that Audree had the capacity to contract because under both California and Kentucky law, minors can make contracts in the same manner as adults, subject to the power of disaffirmance. Mem. 14-15. That position is contrary to the law and common sense. A person's status—as a minor or an adult—does not automatically render that person capable of entering a particular contract. *See, e.g.*, *Algo-Heyres v. Oxnard Manor LP,* 88 Cal. App. 5th 1064, 1071-72 (2023) (denying motion to compel arbitration because adult plaintiff lacked capacity to agree to a "relatively complex five-page document that included legal terms, referred to several statutes, and waived the constitutional right to trial"); *St. Matthews Care v. Wood*, No. 2023-CA-0823, 2024 Ky. App. Unpub. LEXIS 321, at *6-8 (Ky. Ct. App. May 31, 2024) (denying motion to compel arbitration because adult plaintiff "lacked the capacity to understand and appreciate the consequences of executing an arbitration agreement," which required her to "consider her right to engage in litigation, to waive that right, and to participate in arbitration as a means of dispute resolution"). Capacity turns on the particular person and the particular transaction, not on a generalization about an entire class of people spanning early childhood to the cusp of majority.

So the question is not whether minors in general can make contracts but whether Audree specifically had "the ability to understand and appreciate the consequences of the particular transaction"—here, Discord's Terms. *Conners*, 269 S.W.2d at 718; *see also Hellman Comm. Trust*

*& Sav. Bank v. Alden*, 206 Cal. 592, 603 (1929) (explaining that capacity to contract requires an ability "to understand the nature of the contract and to appreciate its probable consequences").

She did not. The Terms that Audree supposedly agreed to stretch nine to fifteen dense, single-spaced pages and are rife with legal terms such as "indemnity," "copyright," and "limitation of liability." *See* Robbins Decl. Exs. A-D. The arbitration agreements themselves—which Discord asserts are "materially the same" across the different versions of the Terms, Mem. 3 n.1—are particularly inscrutable. In the 2024 Terms, which Discord claims Audree agreed to at age twelve just before she died, the dispute-resolution section itself spans four single-spaced pages and requires the reader to grasp matters such as the "Federal Arbitration Act," "conflict of law rules," "venue and personal jurisdiction," "binding" arbitration, "injunctive or declaratory relief," "American Arbitration Association Rules," "Federal Rule of Civil Procedure 11," "Offer of Judgement," "preclusive effect," and "waiver." *Id.* Ex. D at 9-12. It further requires the reader to navigate an "Opt-Out" right, under which failing to send written notice to a specified email address within thirty days forfeits the right to decline the arbitration agreement. *Id.* Ex. D at 12.

A child between the ages of eight and twelve could not be expected to understand and appreciate the consequences of this contract. It requires understanding, among other things, the distinction between a jury trial and binding arbitration, the consequences of waiving the right to a jury trial, and the procedure for opting out of binding arbitration and the consequences of not doing so. Few adults could understand these things, much less a child of Audree's ages when Discord claims she agreed to forgo her right to pursue any future claims against the company in court.

Audree's own circumstances make this especially clear. At the times Discord claims Audree agreed to its Terms, she was in elementary or middle school: third grade on May 21, 2020; fifth grade on April 16, 2022; going into sixth grade on July 24, 2022; sixth grade on April 13,

2023; and seventh grade on November 14, 2024. Seitz Decl. ¶¶ 7-11. She had no real-world experience that could have given her any understanding of binding legal commitments, waiver of rights, or dispute-resolution mechanisms like arbitration. She had never engaged in any meaningful financial or legal transaction; she had no bank account, had never been employed. *Id.* ¶ 12. Nothing in Audree's life experience gave her any occasion to understand concepts like binding arbitration and the waiver of fundamental legal rights.

Audree's reading comprehension compounded this problem. Audree read quickly and without absorbing what she read. *Id.* ¶ 13. When a school assignment required her to read a passage or chapter and answer questions about it, she typically needed to read the material multiple times before she could do so. *Id.* This was true from the time she began reading until she passed away. *Id.* A child who could not reliably comprehend a school reading assignment on a single pass could not have understood a lengthy contract addressing complex legal concepts.

Finding lack of capacity here would break no new ground. A California appellate court recently affirmed the trial court's ruling that a twelve-year-old child lacked the capacity to enter a contract with an attorney because she did not understand the "terms" of the contract, "was not aware of what her attorney was charging or the definition of 'retainer,'" and "did not know how to discharge him if she became dissatisfied." *A.F. v. Jeffrey F.*, 90 Cal. App. 5th 671, 687 (2023). Here, Audree's inability to understand the critical provisions of the Terms is no different.

Given her lack of capacity, Audree never agreed to the Terms and no contract exists. *See, e.g.*, Cal. Civ. Code § 1550 (stating that the "existence of a contract" requires "[p]arties capable of contracting"); *Conners*, 269 S.W.2d at 718 ("There must be a meeting of the minds to effect assent, and there can be no meeting of the minds where either party to the agreement is mentally incapable of understanding the consequence of its act."). If the Court finds a material factual dispute

regarding Audree's capacity, Ms. Seitz demands a jury trial on that issue. *See* 9 U.S.C. § 4 (stating that when the formation of the arbitration agreement is "in issue," the court must "proceed summarily to the trial thereof" and the resisting party can "demand a jury trial of such issue"); *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347-50 (11th Cir. 2017) (holding that a jury demand under § 4 must specifically identity the disputed issue and be timely made).

**B. In Any Event, Ms. Seitz Disaffirmed Any Arbitration Agreement on Behalf of Audree.**

Even if the Court finds Audree had the capacity to agree to the Terms, Discord's motion should still be denied because Ms. Seitz disaffirmed the arbitration agreement for Audree, who was a minor when she purportedly agreed to arbitrate. A minor may disaffirm a contract before majority or within a reasonable time afterwards. *See* Cal. Fam. Code § 6710; *Peters v. Noble*, 196 Ky. 123, 124 (1922). California courts have long recognized that the right to disaffirm exists "to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant." *Niemann v. Deverich*, 98 Cal. App. 2d 787, 793 (1950). Kentucky courts have described this protection as "an absolute and uncontrollable privilege, founded upon an incapacity, conclusively fixed by law," which courts enforce "without enquiry into particular circumstances and without regard to consequences." *Elkhorn Coal Corp. v. Tackett*, 261 Ky. 795, 799-800 (1935) (citation omitted).

Although the Terms that Discord seeks to enforce select California as the applicable choice of law, *see* Robbins Decl. Exs. A-D, the Court need not decide whether that provision controls because Discord's challenges to Ms. Seitz's disaffirmance for Audree fail under either state's law. The Court must first determine, however, that it may reach those challenges at all.

**1. Disaffirmance must be decided by the Court, not an arbitrator.**

Discord contends that the Court is powerless to consider Ms. Seitz's disaffirmance for Audree because the so-called "delegation clause" in its Terms assigns that question exclusively to the arbitrator. That position misconstrues the FAA and ignores binding case law interpreting it.

A delegation clause is simply a specific kind of arbitration agreement: an agreement to arbitrate disputes about whether the arbitration clause itself is enforceable. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). And "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). The rule is well settled: the FAA *requires* courts to address any "generally applicable contract defense[]" that "challenges specifically the validity of the agreement to arbitrate," not just "the contract as a whole." *Id.* at 68, 70; *see also Buckeye Check Cashing, Inc.*, 546 U.S. 440, 449 (2006). That rule applies equally whether the challenged arbitration agreement is the arbitration clause itself or the separate delegation clause, and a party opposing arbitration may specifically challenge either one through a generally applicable contract defense. *Rent-A-Center*, 561 U.S. at 70-72. Infancy is such a defense. *See Davis*, 2021 U.S. Dist. LEXIS 128252, at *15 (holding that "infancy" is a "generally applicable contract defense[]" sufficient to challenge an arbitration agreement).

Ms. Seitz has made exactly that challenge to both agreements. She has expressly disaffirmed both any "arbitration agreement" itself and any "delegation clause" in the Terms on the basis that Audree was a minor when she purportedly agreed to them. SAC ¶ 12; Seitz Decl. ¶ 14. Because her disaffirmance is a specific challenge to each agreement individually, not merely to the Terms as a whole, the Court, not an arbitrator, must decide that issue as to both. *See, e.g.*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (holding that the plaintiff specifically challenged the delegation clause by asserting that "the delegation provision . . . is also fraudulent"); *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (finding it "resoundingly clear"

that the plaintiff challenged the delegation clause because she separately challenged both the delegation and arbitration provisions as invalid under Missouri law).

Discord claims that Ms. Seitz's disaffirmance of the delegation clause does not constitute a specific challenge to that clause because any defense that "by its nature" would apply not just to the delegation clause but also to the Terms "as a whole" must be decided by the arbitrator. Mem. 15. The Supreme Court recently rejected that exact assertion in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). The requirement that a party challenge the delegation clause specifically, the Court held, "does *not* require that a party challenge *only* the arbitration or delegation provision"—or that it do so on grounds that are unique to the delegation clause. *Id.* at 151 (first emphasis added). Rather, if a party "directly challenge[s]" the enforceability of the delegation clause itself, "not just the contract as a whole," a "court *must* consider the challenge," even if the challenge "applies 'equally' to the whole contract and to an arbitration or delegation provision." *Id.* at 150-51 (emphasis added) (quoting *Rent-A-Center*, 561 U.S. at 71); *see also Rice v. Wells Fargo Bank, N.A.*, No. 24-cv-2647, 2025 U.S. Dist. LEXIS 94564, at *13 (E.D. Pa. May 19, 2025) (applying *Coinbase* in holding that "Plaintiffs' challenge applies equally to the operative account agreement, arbitration agreement, and delegation provision, so the Court must address it accordingly").

In arguing otherwise, Discord does not mention the Supreme Court's decision in *Coinbase*. While Discord cites the Sixth Circuit's pre-*Coinbase* decision, *In re StockX Customer Data Security Breach Litigation*, that decision is fully consistent with *Coinbase*. *StockX* did not hold that a defense (there, infancy) that applies to the whole contract is categorically insufficient to specifically challenge the delegation clause. Rather, *StockX* recognized that "'[a] party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement.'" 19 F.4th 873, 885 (6th Cir. 2021) (quoting *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021)).

But, according to the court, "a party's mere statement that it is challenging the delegation clause is not enough"—the party must show that the "basis" of its challenge is "directed specifically" to the delegation provision. *Id*. at 885-86. (quoting *Rent-A-Center*, 561 U.S. at 71-72).[1]

Here, Ms. Seitz's challenge is directed specifically at the delegation clause. She has not merely asserted that a defense aimed at the Terms as a whole happens to sweep in the delegation clause too. She has named the delegation clause specifically and disaffirmed it on the basis that Audree was a minor at the time. SAC ¶ 12; Seitz Decl. ¶ 14. That satisfies *StockX*, which does not—and cannot—require anything more given *Coinbase*.

On reply, Discord may cite the Sixth Circuit's opinion in *Becker v. Delek US Energy, Inc.*—also decided before *Coinbase*—which read *StockX* to require more: that a delegation-clause challenge must "rest, in part, on different factual or legal grounds" than the ones supporting its challenge to the contract as a whole. 39 F.4th 351, 356 (6th Cir. 2022). That reading does not survive *Coinbase*, and the Sixth Circuit's own post-*Coinbase* application of the "applies equally" standard confirms as much. In *Hines v. National Entertainment Group, LLC*, the Sixth Circuit acknowledged that "*where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge*." 140 F.4th 322, 333 (6th

---

[1] Discord also relies on a handful of out-of-circuit cases that either predate *Coinbase* or postdate it but do not mention it. And, in each case, the plaintiff's disaffirmance was directed at the contract as a whole and did not specifically challenge the delegation clause. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1033 (9th Cir. 2022); *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1085 (N.D. Cal. 2025); *N.A. v. Nintendo of Am. Inc*, No. 23-cv-02424, 2023 U.S. Dist. LEXIS 220175, at *11-12 (N.D. Cal. Dec. 11, 2023); *French v. Roblox Corp.*, No. 25-cv-5306, 2026 U.S. Dist. LEXIS 169880, at *19-20 (E.D. Pa. July 29, 2026); *Angelilli v. Activision Blizzard*, No. 23-cv-16566, 2025 U.S. Dist. LEXIS 28315, at *19 (N.D. Ill. Feb. 18, 2025); *Dunn v. Activision Blizzard*, 749 F. Supp. 3d 976 (E.D. Ark. Sept. 23, 2024). The one case that did address *Coinbase*, *S.T.G. v. Epic Games*, also concluded that "Plaintiffs' disaffirmance defense is not directed specifically to the delegation clause" because "[n]either the Complaint nor the declarations mention the delegation clause, let alone specifically challenge its enforceability." 752 F. Supp. 3d 1200, 1208, 1210 (S.D. Cal. 2024). Ms. Seitz's disaffirmance has no such defect.

Cir. 2025) (emphasis in original) (quoting *Coinbase*, 602 U.S. at 150-51). That was not the case there because the plaintiff claimed that the arbitration agreement was invalid based on "the alleged substantive unconscionability of *unrelated provisions*" in the same contract, such that resolving those arguments would not resolve the arbitration agreement's enforceability. *Id.* at 333 (emphasis added). Ms. Seitz's infancy defense is entirely different. If correct, it invalidates the Terms as a whole, the arbitration agreement, and the delegation clause for the same reason. That is the type of "applies equally" challenge that *Coinbase* requires courts, not arbitrators, to address, and that *Becker*'s "different factual or legal grounds" requirement would wrongly exclude.

This Court, not an arbitrator, must therefore decide whether Ms. Seitz's disaffirmance for Audree defeats the delegation clause and the arbitration agreement. It does.

**2. As Audree's representative, Ms. Seitz has the power to disaffirm the Terms for Audree and exercised that authority.**

Discord argues that Ms. Seitz's disaffirmance for Audree is invalid because Audree herself was required to disaffirm any contract with Discord before she died. Mem. 17. Discord is wrong on the law. The power to disaffirm a contract, where the minor dies before exercising it, passes to the minor's personal representative—in this case, Ms. Seitz. *See* Seitz Decl. Ex. A (order appointing Ms. Seitz as the personal representative and administrator of Audree's estate).

California law—Discord's chosen choice of law in its Terms—is crystal clear on this point. By statute, California law allows the contract of a minor "to be disaffirmed by the minor before majority or within a reasonable time afterwards *or, in case of the minor's death within that period, by the minor's heirs or personal representative*." Cal. Fam. Code § 6710 (emphasis added).

Kentucky has also long recognized that the power to disaffirm a minor's contract survives the minor's death and passes to those who succeed to the minor's estate. In *Bedford's Administrators v. Clay*, the Court of Appeal—then the Commonwealth's highest court—explained

that the power to "confirm[]" a deceased minor's contract passed to the "representatives" of his estate. 33 Ky. 226, 226-27 (1835). Confirmation and disaffirmance are two sides of the same power: the power to decide whether a voidable contract stands. *See* Restatement (Second) of Contracts § 7 ("A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance."). *Bedford's Administrators* established that this power passes to a minor's representative when she dies before executing it.

Kentucky statutory law reinforces this conclusion. Kentucky Revised Statute § 395.195(3) empowers a personal representative, "acting reasonably for the benefit of the interested persons," to "[p]erform, compromise, or refuse performance for proper cause of the decedent's contracts that continue as obligations of the estate, as he may determine under the circumstances." Infancy is a quintessential reason to avoid a minor's contract, and Ms. Seitz can exercise that authority here as the administrator and "personal representative" of Audree's estate. *Id.* § 395.195.

Ms. Seitz has unambiguously disaffirmed the Terms, including any arbitration agreement and delegation clause within them, on behalf of Audree, in the operative Complaint and in her declaration supporting her opposition to Discord's motion. *See* SAC ¶ 12; Seitz Decl. ¶ 14. That is more than sufficient under California law, which requires only an "act or declaration disclosing an unequivocal intent to repudiate [the contract's] binding force and effect." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) (citation omitted). The same is true under Kentucky law, which requires only that Ms. Seitz "indicate[] her desire" to Discord that Audree is "not to be bound by the terms of the arbitration agreement." *Davis*, 2021 U.S. Dist. LEXIS 128252, at *18.

Discord's assertion that effective disaffirmance under Kentucky law requires returning the "consideration" received under the contract makes no sense here. Mem. 17. Discord identifies no

consideration that Audree ever received under the Terms—no money, no goods, nothing capable of being returned. The sole case it cites for this argument, *Mitchell ex rel. Fee v. Mitchell*, 963 S.W.2d 222 (Ky. Ct. App. 1998), recites the rule from *Bensingers Coexrs v. West*, 255 S.W.2d 27 (Ky. 1953), which requires a minor to return the consideration received only "if within his power to do so." And there, the court declined to require the return of consideration because the minor had received nothing capable of being returned. *Id.* at 29. Here, too, Audree received nothing under the Terms, so there is nothing to return. In any event, California law—which the Terms select—does not require the return of consideration. *See Deck v. Spartz*, No. 11-cv-01123, 2011 U.S. Dist. LEXIS 110038, at *17 (E.D. Cal. Sept. 27, 2011) (explaining that under California law disaffirmance "does not require the return of consideration for the disaffirmance to be effective if the disaffirmance is made before the minor reaches the age of majority").

**3. Discord's estoppel argument lacks merit.**

Discord also argues that Ms. Seitz should be estopped from disaffirming the Terms because Audree purportedly entered a birth date indicating that she was an adult when she created both her Discord accounts. Mem. 16-17. That argument, too, fails under both California and Kentucky law.

Under California law—again, Discord's choice of law in the Terms that it seeks to enforce—"a minor is not estopped from disaffirming a voidable contract as a result of misrepresentations that he or she is an adult." *Bloom v. ACT, Inc.*, No. 18-cv-6749, 2019 U.S. Dist. LEXIS 255497, at *23 (C.D. Cal. Mar. 7, 2019) (citation omitted). That has been the rule for over a hundred years. *See Lee v. Hibernia Sav. & Loan Soc.*, 177 Cal. 656, 660 (1918) (holding that estopping a minor from disaffirming a contract because they falsely represented their age "would nullify and destroy the plain provisions of" the minors' statutory right to disaffirm contracts). Discord concedes as much, citing no California case for its misrepresentation-estoppel theory.

Discord instead relies only on Kentucky law for its estoppel argument. While Kentucky law does recognize a narrow form of this estoppel, it places an important limit on it. The other party's reliance on the misrepresentation must be reasonable. Indeed, Discord bears the "burden" to show that the adult birth dates that Audree self-reported "induc[ed]" it to enter the contract. *Young v. Daniel*, 201 Ky. 65, 68 (1923). Discord has not come close to meeting that burden for three independent reasons: (1) beyond Audree's self-reported birthdates, it identifies no circumstances that would have justified its belief that Audree was actually an adult; (2) it possessed information that made any such belief affirmatively unreasonable; and (3) it cannot even substantiate that Audree misrepresented her birth date in the first place.

Under Kentucky law, a minor's bare misrepresentation of their age is not alone sufficient. The surrounding circumstances must corroborate the misrepresentation such that reliance on it was justified: "when an infant by reason of *his personal appearance, family surroundings, and business activities*, *coupled with a misrepresentation or fraudulent concealment*, leads one who deals with him, in good faith, and not knowing that he is an infant, to believe that he is of age, he will be estopped from maintaining an action to avoid the executed contract." *Cty. Bd. of Educ. v. Hensley*, 147 Ky. 441, 443-44 (1912) (emphasis added). Thus, in *Hensley*, for example, the court applied estoppel only because the minor's personal appearance, family surroundings, and business activities—a married man with two children, years of business dealings, and payment of taxes—combined with his misrepresentation of his age to create a good-faith belief that he was of age. *Id.* at 442-44; *see also Young,* 201 Ky. 65, 67-69 (1923) (applying *Hensley* to estop minors who fraudulently concealed their age, where their independent business dealings, sophisticated contract negotiations, and other conduct corroborated an appearance of adulthood).

Discord has nothing comparable here. Its estoppel argument is based solely on its assertion that for each account Audree entered an adult birth date into the registration screen. *See* Mem. 16. Discord identifies no other fact or circumstance establishing that its belief was reasonable that she was an adult, and its registration screen provided no way to verify that claim in the first place. *See* Robbins Decl. ¶ 8 (screenshot of registration screen). Discord can point to nothing similar to the "personal appearance, family surroundings, and business activities" in *Hensley* and *Young* that corroborated the misrepresentations there. Discord has not met its burden for this reason alone.

But Discord's estoppel argument also fails because Discord possessed information that made its reliance affirmatively unreasonable. A minor "is not estopped" from disaffirming a contract when the other party "knew or ought to have known" that the minor was not an adult. *Elkhorn Coal Corp. v. Tackett*, 261 Ky. 795, 805 (1935). Discord's records contained that information for Audree's first account, which she created in May 2020, and it remained there when Discord claims she agreed to updated Terms on that account in July 2022 and November 2024. Specifically, Audree created that account using her school email address, audree.heine@stu.campbell.kyschools.us, which clearly indicated that she was a K-12 student, not an adult. *See* Robbins Decl. ¶ 4. That a small fraction of K-12 students may be eighteen does not make Discord's reliance reasonable. The question is whether Discord "knew or ought to have known" Audree was not an adult. *Tackett*, 261 Ky. at 805. It had information strongly suggesting that she was not, yet it made no effort to resolve that contradiction at any of the three points when it supposedly relied on her birth date. Discord cannot claim reasonable reliance on a self-reported birth date when it ignored contrary information sitting in its own records each time.

Discord's claimed reliance fares no better as to Audree's second account, created in April 2022, and her supposed agreement to updated Terms on that account in April 2023. *See* Robbins

Decl. ¶¶ 6, 14. By that time, Discord had actual, documented knowledge that children were regularly misrepresenting their age to gain access to the platform, and reasonable reliance requires more than accepting a fact at face value that a party knows is often false. In 2021, Discord hired an outside consultant to study under-13 use of its platform. SAC ¶ 191. That consultant informed Discord that children under 13 routinely used Discord and that "[m]ost lied about their age in order to access the platform." *Id.* Despite this knowledge, and despite its own consultant's recommendation that Discord implement age and identity verification, Discord actively chose not to bolster its age-verification process for years. *Id.* ¶ 192. In short, Discord knew, or at the very least should have known, that it could not reasonably rely on any self-reported birth date, including the one entered for Audree's second account.

Finally, Discord's estoppel argument fails because it cannot even substantiate the misrepresentations it supposedly relied on. Discord asserts that no dates of birth are ever stored for users who indicate they are eighteen or older. Robbins Decl. ¶ 3. Discord further states that its own records "contain no stored date of birth for either of [Audree's] accounts." *Id.* ¶ 7. Discord's claim that Audree misrepresented herself as an adult thus rests not on any record of what she actually entered, but on an inference drawn from the absence of a record, which is confirmed only by Discord's account of its "system logic" and conversations with unnamed "Discord personnel." *Id.* Discord cannot meet its burden of showing that a specific misrepresentation of adulthood induced its reliance when it has no record of what, if anything, Audree actually represented.

For these reasons, Discord's estoppel argument fails under both states' laws.

## CONCLUSION

For the foregoing reasons, the Court should deny Discord's motion to compel arbitration. Because none of Audree's claims should be compelled to arbitration, the Court need not address

Discord's request to stay Ms. Seitz's wrongful-death claim pending arbitration of Audree's claims.

This Court is the proper forum for this case, and it should be permitted to proceed here in full.

Dated: September 21, 2026

Respectfully submitted,

*/s/ D. Patrick Huyett*
Alexandra M. Walsh (*pro hac vice*)
Kristen Feden (*pro hac vice*)
D. Patrick Huyett (*pro hac vice*)
**Anapol Weiss**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
awalsh@anapolweiss.com
kfeden@anapolweiss.com
phuyett@anapolweiss.com

Tad Thomas (KY 88577)
J. Nicholas Thompson (KY 99750)
**Thomas Law Offices**
9418 Norton Commons Blvd.
Louisville, KY 40059
Telephone: (502) 466-2637
tad@thomaslawoffices.com
nick.thompson@thomaslawoffices.com

Davis Cooper (*pro hac vice)*
Joseph Masterman (*pro hac vice*)
**Cooper Masterman, PLLC**
1717 Pennsylvania Ave., NW, Suite 1025
Washington, DC 20006
Telephone: 202-866-0171
davis@coopermasterman.com
joe@coopermasterman.com

*Attorneys for Plaintiff Jaimee Seitz, individually, and as administrator of the Estate of Audree Heine*