**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | |
|---|---|
| JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,<br><br>Defendants. | Civil Case No. 2:25-cv-00166-DLB-CJS<br><br>Chief Judge David L. Bunning |

**DEFENDANT ROBLOX CORPORATION'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1
BACKGROUND .......... 2
A. Roblox .......... 2
B. Plaintiff's Allegations. .......... 4
C. The SAC's Revisions. .......... 5
LEGAL STANDARD .......... 5
ARGUMENT .......... 6
I. SECTION 230 BARS EACH OF PLAINTIFF'S CLAIMS .......... 6
A. Section 230 Bars Claims Concerning Imperfect Content Moderation. .......... 6
B. Roblox Is an Interactive Computer Service Provider. .......... 7
C. The Claims Arise from Third-Party Content. .......... 7
D. Plaintiff's Claims Treat Roblox as a Publisher. .......... 7
1. Section 230 Bars the Negligence Claim (Count 3). .......... 9
2. Section 230 Bars the Design Defect Claim (Count 4). .......... 11
3. Section 230 Bars the Failure-to-Warn Claims (Count 5) .......... 12
4. Section 230 Bars the Fraud-Based Claims (Counts 1, 2) .......... 12
5. Section 230 Bars the Wrongful Death Claim (Count 6). .......... 14
II. THE FIRST AMENDMENT BARS PLAINTIFF'S NON-FRAUD CLAIMS .......... 14
III. PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST ROBLOX .......... 15
A. All Claims Fail for Lack of Proximate Cause (Counts 1–6). .......... 15
B. There Is No Viable Product Liability Claim (Counts 4–5). .......... 17
C. The Negligence Claims Fail (Count 3). .......... 18
D. The Fraud Claims Fail (Counts 1, 2). .......... 20
E. The Wrongful Death Claim Fails (Count 6). .......... 25
CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Salesforce.com, Inc.*,
2021 WL 3616097 (S.D. Tex. Mar. 22, 2021) .....20

*Angelilli v. Activision Blizzard, Inc.*,
781 F. Supp. 3d 691 (N.D. Ill. 2025) .....7

*Arnold v. Liberty Mut. Ins. Co.*,
392 F. Supp. 3d 747 (E.D. Ky. 2019) .....21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....5

*B.L. v. Schuhmann*,
380 F. Supp. 3d 614 (W.D. Ky. 2019) .....21

*Barnes v. Yahoo!*,
570 F.3d 1096 (9th Cir. 2009) .....8, 10

*Beckman v. Match.com, LLC*,
668 F. App'x 759 (9th Cir. 2016) .....13

*Bogard v. TikTok Inc.*,
2025 WL 3637035 (N.D. Cal. Dec. 15, 2025) .....24

*Boladian v. UMG Recordings, Inc.*,
123 F. App'x 165 (6th Cir. 2005) .....15

*Brewster v. Colgate-Palmolive Co.*,
279 S.W.3d 142 (Ky. 2009) .....15

*Bright v. Gallia Cnty.*,
753 F.3d 639 (6th Cir. 2014) .....5

*Est. of Abdullah ex rel. Carswell v. Arena*,
601 F. App'x 389 (6th Cir. 2015) .....22

*CCIA v. Paxton*,
184 F.4th 420 (5th Cir. 2026) .....14

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021) .....23

*Corder v. Ethicon, Inc.*,
473 F. Supp. 3d 749 (E.D. Ky. 2020) .....17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Costa v. FCA US LLC*,
542 F. Supp. 3d 83, 101 (D. Mass. 2021) ....................23

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ....................16

*DeSoto Cab Co. v. Uber Techs., Inc.*,
2018 WL 10247483 (N.D. Cal. Sep. 24, 2018) ....................23

*Doe 1 v. Meta Platforms, Inc.*,
174 F.4th 1159 (9th Cir. 2026) ....................8, 11

*Doe v. Discord Inc.*,
2026 WL 1067574 (N.D. Ohio Apr. 20, 2026)....................9, 10, 12, 13

*Doe v. Grindr, Inc.*,
128 F.4th 1148 (9th Cir. 2025) ....................7, 8, 9, 10, 11, 12, 13, 23

*Doe v. MySpace Inc.*,
528 F.3d 413 (5th Cir. 2008) ....................7, 9, 10

*Doll v. Pelphrey*,
2024 WL 4788525 (Ky. Cir. Ct. Oct. 18, 2024) ....................7, 10, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ....................7, 9, 14, 19, 20, 25

*Dyroff v. Ultimate Software Grp., Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ....................9

*Est. of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022)....................18, 19

*Est. of Bride v. Yolo Techs, Inc.*,
112 F.4th 1168 (9th Cir. 2024) ....................11, 12, 14

*Evans v. Pearson Enters., Inc.*,
434 F.3d 839 (6th Cir. 2006) ....................21

*Everest Stables, Inc. v. Rambicure*,
803 F. App'x 819 (6th Cir. 2020) ....................22

*In re Facebook, Inc.*,
625 S.W.3d 80 (Tex. 2021)....................7, 10, 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....6

*Flegles, Inc. v. TruServ Corp.*,
289 S.W.3d 544 (Ky. 2009) ....15, 21, 22

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ....7, 8

*Giddings & Lewis, Inc. v. Indus. Risk Ins.*,
348 S.W.3d 729 (Ky. 2011) ....17, 25

*Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*,
169 S.W.3d 840 (Ky. 2005) ....20

*Greer v. Strange Honey Farm, LLC*,
114 F.4th 605 (6th Cir. 2024) ....6, 23

*Hemry v. Google*,
2026 WL 2909299 (N.D. Cal. Sept. 28, 2026) ....13

*Herceg v. Hustler Mag., Inc.*,
565 F. Supp. 802 (S.D. Tex. 1983) ....19

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018) ....12, 20

*Huffman v. Fifth Third Bank, Inc.*,
2015 WL 12977102 (E.D. Ky. 2015) ....24

*Jacobs v. Meta Platforms, Inc.*,
2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ....18

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) ....14, 16, 17, 18, 19

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ....7

*Jones v. Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ....1, 6, 7, 8, 10, 11

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ....20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Lhotsky v. Sutcliffe*,
723 S.W.3d 842 (Ky. Ct. App. 2025) ....................15

*M.P. v. Meta Platforms Inc.*,
127 F.4th 516 (4th Cir. 2025) ....................11

*McHargue v. Fayette Coal & Feed Co.*,
283 S.W.2d 170 (Ky. 1955) ....................23, 24

*Meador v. Apple, Inc.*,
911 F.3d 260 (5th Cir. 2018) ....................16

*Moody v. NetChoice*,
LLC, 603 U.S. 707 (2024) ....................1, 14

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*,
536 F. App'x 558 (6th Cir. 2013) ....................21

*Murphy v. LinkedIn Corp.*,
2026 WL 881710 (N.D. Cal. 2026) ....................14

*Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*,
22 F. Supp. 3d 669 (E.D. Ky. 2014), *aff'd*, 614 F. App'x 237 (6th Cir. 2015) ....................22

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016) ....................7, 8

*Olivia N. v. Nat'l Broad. Co.*,
126 Cal. App. 3d 488 (Ct. App. 1981) ....................19

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ....................4

*Ostendorf v. Clark Equip. Co.*,
122 S.W.3d 530 (Ky. 2003) ....................20

*Presnell Const. Managers, Inc. v. EH Const., LLC*,
134 S.W.3d 575 (Ky. 2004) ....................24, 25

*Ragland v. DiGiuro*,
352 S.W.3d 908 (Ky. Ct. App. 2010) ....................25

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ....................21, 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
113 S.W.3d 636 (Ky. Ct. App. 2003) ....................25

*Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*,
2005 WL 3557947 (N.D. Ill. Dec. 26, 2005) ....................23

*Ruff v. Perfetti Van Melle USA Inc.*,
2024 WL 329525 (E.D. Ky. Jan. 27, 2024) ....................21, 24

*Sanders v. Acclaim Ent., Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002) ....................16

*Smith v. California*,
361 U.S. 147 (1959) ....................15

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,
702 F. Supp. 3d 809 (N.D. Cal. 2023) ....................20

*In re Social Media Cases*,
2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ....................18, 20

*Thacker v. Ethicon, Inc.*,
47 F.4th 451 (6th Cir. 2022) ....................15, 17

*Touch-N-Buy LLC v. United Consumer Fin. Servs.*,
2026 WL 1211259 (6th Cir. May 4, 2026) ....................23

*Twitter Inc. v. Taamneh*,
598 U.S. 471 (2023) ....................16

*United Parcel Serv. Co. v. Rickert*,
996 S.W.2d 464 (Ky. 1999) ....................25

*Walmart, Inc. v. Reeves*,
671 S.W.3d 24 (Ky. 2023) ....................15, 18

*Watters v. TSR, Inc.*,
904 F.2d 378 (6th Cir. 1990) ....................16, 17, 18, 19

*Winter v. G.P. Putnam's Sons*,
938 F.2d 1033 (9th Cir. 1991) ....................17, 18

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ....................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Ziencik v. Snap, Inc.*,
2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .... 18

**Statutes**

47 U.S.C. § 230 .... 1, 6, 7

Ky. Rev. Stat. Ann. § 411.130(1) .... 25

**Other Authorities**

Fed. R. Civ. P. 9(b) .... 5

Fed. R. Civ. P. 12(b)(6) .... 5

Restatement (3d) of Torts § 19(b) .... 17

Restatement (Second) of Torts
§ 302B .... 19
§ 402A .... 17

## INTRODUCTION

This case is about Roblox's alleged failure to perfectly moderate the speech of its millions of users. Plaintiff Jaimee Seitz alleges that her daughter, Audree Heine, committed suicide after Roblox "exposed [her] to other users … who glorified violence and espoused self-harm as a response to real-life hardship." The Second Amended Complaint ("SAC") alleges that Audree communicated with these users on Roblox, an interactive online gaming platform owned by Defendant Roblox Corporation ("Roblox"), on Discord, an online messaging service owned by Defendant Discord Inc. ("Discord"), and on TikTok, a video-sharing platform owned by Defendant ByteDance Inc. ("TikTok"). Plaintiff seeks to hold Roblox liable for negligence, product liability, and fraud for publishing "violent" third-party content that Audree allegedly consumed. Audree's death is a tragedy, and Roblox deeply sympathizes with her family for their loss. But the SAC's legal theories—wholly based on third-party content that Roblox allegedly failed to remove—are preempted by law and fail to state a claim.

***First***, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars all claims. Section 230 broadly immunizes interactive online services like Roblox "against liability arising from content created by third parties." *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014). The gravamen of Plaintiff's claims is that Roblox should have more perfectly monitored, screened, blocked, or removed third-party content—specifically, "violent" content authored by "other users"—which Section 230 forecloses. Appellate courts (including the Sixth Circuit) have consistently rejected similar theories under Section 230. So should this Court.

***Second***, Plaintiff's claims are also barred by the First Amendment, which extends to online publishers' decisions to "filter, prioritize, and label the varied messages … and other content their users wish to post." *Moody v. NetChoice*, LLC, 603 U.S. 707, 717 (2024). Plaintiff's claims, if sustained, would compel Roblox to alter how it selects, arranges, and presents communications

between its users. The First Amendment protects these editorial functions.

***Third***, Plaintiff's claims fail as a matter of law. All claims fail for lack of proximate cause because suicide is not a reasonably foreseeable consequence of viewing third-party content, playing video games, or communicating with other users. The negligence claim fails for lack of a cognizable duty. The product liability claims fail because Roblox is an interactive gaming service that transmits words and ideas; it is not a tangible "product" subject to product liability law. The misrepresentation claims are defective because Plaintiff has not pleaded fraud with particularity, there are no actionable misrepresentations or omissions, and Plaintiff fails to plausibly allege reliance. The Court should dismiss the SAC with prejudice.[1]

## BACKGROUND

### A. Roblox.

Roblox offers an interactive online gaming service, including the Roblox app, on which millions of users play games, called "experiences," often created by other users. ¶ 19.[2] Designed to be an "interactive experience," Roblox allows users to communicate with each other via direct messages, "[g]ameplay interactions," such as in-experience chat, and voice chat. ¶ 21.

Roblox takes content moderation and safety very seriously. At all relevant times, Roblox informed minors that they must obtain their parents' permission to sign up for an account, ¶ 27, and Roblox offered customizable parental controls for those accounts, ¶ 49. Those controls are described in the 2017 and 2023 Parents' Guides, which the SAC repeatedly quotes and cites. ¶¶ 38–39 nn.12–16. The Guides explain how parents can limit and disable chat capabilities on their

---

[1] Shortly before filing this Motion to Dismiss, Roblox filed a Motion to Compel Arbitration, which the Court should resolve first.

[2] Citations to "¶" are to the SAC, ECF No. 104. Unless otherwise noted, all citations, quotations, and alterations are omitted, and all emphasis is added.

children's accounts and how parents or players can "report inappropriate chat messages or content by using our Report Abuse system." Ex. A (2017 Parents' Guide); *see also* Ex. B (2023 Parents' Guide).[3] The 2023 Guide includes a link to an FAQs page (also cited), which describes parental controls, including: an "Account Restrictions" setting, which "restrict[s] accessible experiences on Roblox and completely disable[s] chat everywhere on the platform"; an "Allowed Experiences" setting, which allows parents "to customize access to experiences based on age recommendations"; and an "Account PIN" setting, "which requires a 4-digit code to make any changes to the account." Ex. C at 17. It states that parents can "monitor [their children's] online interactions, including their … friends, … private message history, and more." *Id.* at 13.[4]

These resources also describe Roblox's content moderation efforts, including monitoring and screening certain third-party content. The 2017 Parents' Guide states that Roblox "proactively filter[s] inappropriate content" and its "moderation team is also online around the clock reviewing abuse reports." Ex. A at 3. The same document encourages players and parents to report "any rule violations," and explains how to "completely block others from chatting … with them in-game." *Id.* The 2023 Parents' Guide discloses that Roblox "uses a combination of chat filters, both human and software moderation, to proactively remove inappropriate content from the platform." Ex. B at 5. And the FAQs page states that "Roblox's state-of-the-art text filtering system is actively monitored and dynamically adjusted to prevent inappropriate content and personally identifiable information from being visible on the platform." Ex. C at 26. Roblox also discloses that despite its robust efforts, it cannot prevent all inappropriate content from appearing on the platform, hence

---

[3] Citations to "Ex." are to the declaration of Thomas P. Peabody and its exhibits.

[4] The documents Plaintiff cites contradict the SAC's allegation that Roblox "withhold[s] from parents the ability to see the substance of the messages their children send and receive." ¶ 114. Roblox's website makes clear that children can share their passwords with their parents, and nothing prevents a parent from accessing their child's account. *See* Ex. D at 2.

the parental controls and Report Abuse features. *See* Exs. A, B, C, D. Indeed, the 2019 Parents' Guide (in effect when Audree's Roblox accounts were created) encourages parents to talk to their "child about online grooming," Ex. E at 4, 8, and Roblox's Terms of Use—to which all users must agree—disclose that users may encounter "offensive or objectionable" third-party content for which Roblox is "not responsible," Ex. F at 17; *see* ¶ 26.[5]

**B. Plaintiff's Allegations.**

Plaintiff is a Kentucky resident, ¶ 9, whose daughter Audree allegedly began using Roblox and Discord when she was eight years old, and TikTok before she was thirteen, ¶¶ 250, 253, 258. Plaintiff alleges that Roblox was "widely used among Audree's peers," she "saw Audree playing innocent-looking games for children," and she understood Roblox to be a "platform designed for children to play games with one another." ¶ 250. Plaintiff alleges that "Roblox exposed Audree to other users, including members of the [True Crime Community (TCC)], who glorified violence and espoused self-harm[.]" ¶ 252; *see also* ¶ 6. Audree's alleged exposure to "these groups"—i.e., the views of other users—"led to a particular fixation on the Columbine shooters." ¶ 252.

Plaintiff alleges that Discord "expose[d] [Audree] to the dangers on the platform through the years that followed, including just before her death." ¶ 255. Plaintiff alleges that on Discord, "predators rampantly target children to groom them for violence against themselves and others through coercion, emotional manipulation, and social pressure," ¶ 164, that Audree exchanged messages with "strangers" on Discord, and "the social pressure was heightened," ¶ 6; *see* ¶¶ 253–57. On TikTok, Audree was allegedly "expose[d]" to algorithm-driven content that purportedly

[5] Plaintiff references the Terms in the SAC, and the Court can properly consider them. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The Terms contained the same disclosure and disclaimer when Audree's accounts were created. *See* Ex. G at 3, 12; Ex. H at 2, 9. The SAC also references several versions of the Parents' Guide and states that Audree's account was created when she was eight, which would have included the year 2019. *See* ¶¶ 248, 250.

"maximize[s] engagement by feeding users more of whatever keeps them watching, including content related to self-harm and suicide." ¶ 262. Plaintiff claims that Audree's "mental health deteriorated." ¶ 263. In December 2024, when Audree was thirteen, she committed suicide. ¶ 249. "Leading up to her suicide, she had been livestreaming her activities on TikTok." ¶ 264.

Plaintiff alleges that "[h]ad Defendants taken any steps to screen the users allowed on the apps, Audree would not have been exposed to the large communities of violent extremists she encountered there." ¶ 7. In the same vein, Plaintiff targets Defendants' alleged failure to implement "age- and identity- verification systems, along with effective parental controls," which allegedly would have prevented Audree from "interact[ing] with these communities" and her death. *Id.*

### C. The SAC's Revisions.

The SAC removes references to "abusive users," "harmful content," Ex. I at 91 ¶ 217, real-world bullying experienced by Audree, *id.* ¶ 251, and Roblox's content moderation practices, *id.* ¶ 130. It adds a paragraph disclaiming the intent to hold Roblox liable for publishing third-party content. ¶ 60. And it modifies allegations about Roblox's recommendations, inserts a new screenshot of trending Roblox games, and discusses age verification and account creation procedures. ¶¶ 27, 29–32, 104–09, 140–46. Like its predecessor, the SAC seeks to hold Defendants liable for allegedly failing to "screen the users," and for "expos[ing]" Audree, ¶ 7, to third-party content created by "an online community" that is "dedicated to glorifying violence," ¶ 1.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations … will not suffice." *Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014). Fraud-based claims "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the 'who, what, where, when and how' of the

alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024).

## ARGUMENT

### I. SECTION 230 BARS EACH OF PLAINTIFF'S CLAIMS

#### A. Section 230 Bars Claims Concerning Imperfect Content Moderation.

Plaintiff's claims are all premised on the theory that Roblox failed "to screen [] users," ¶ 7, who "glorified violence and espoused self-harm," ¶ 252, and failed to remove their "harmful" and "violent" content, ¶¶ 84, 120, 125. These claims are barred by Section 230, which precludes claims against (1) a provider of an interactive computer service, where (2) the claim requires "treat[ing]" the defendant as the publisher or speaker (3) of any information "provided by another information content provider." *Jones*, 755 F.3d at 409.

In enacting Section 230, Congress sought to "preserve the [Internet's] vibrant and competitive free market" while "remov[ing] disincentives" for using "blocking and filtering technologies." 47 U.S.C. §§ 230(b)(2), (b)(4), (c). Section 230 recognizes that content moderation is an imperfect art, given the "staggering" amount of internet content, *Zeran v. American Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997), and permits providers to "perform some editing on user-generated content without [] becoming liable for all [] otherwise unlawful messages that they didn't edit or delete." *Fair Hous. Council of San Fernando Valley v. Roommates.com*, *LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008). Section 230 thus "immunizes providers … against liability arising from content created by third parties" by "bar[ring] lawsuits" targeting the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content," however imperfect those practices may be. *Jones*, 755 F.3d at 406–07.

The statute's protections are "broad[]," and "close cases … must be resolved in favor of immunity," at the earliest stage. *Jones*, 755 F.3d at 408. Under these principles, courts consistently apply Section 230 to dismiss claims, no matter what the cause of action, when the factual predicate

is a platform's publication of third-party communications leading to violence or death.[6]

**B. Roblox Is an Interactive Computer Service Provider.**

There is no dispute that Roblox provides "interactive computer services," which are services that give people "access … to a computer server." 47 U.S.C. § 230(f)(2); *see, e.g.*, *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 699 (N.D. Ill. 2025).

**C. The Claims Arise from Third-Party Content.**

The SAC also seeks to hold Roblox liable for third-party content. 47 U.S.C. § 230(c)(1). The challenged content was created entirely by "other users." ¶ 252. The SAC briefly references an "algorithm" that responds to user inputs, ¶ 65, and Roblox's "recommendation systems," ¶ 29, but a website does not develop content by performing "ordinary search engine" functions, including by "providing *neutral* tools to carry out what may be unlawful or illicit searches." *Jones*, 755 F.3d at 409, 411; *see also O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) (Section 230 barred claims premised on Google's automated arrangement of third-party content).[7]

**D. Plaintiff's Claims Treat Roblox as a Publisher.**

All of Plaintiff's claims seek to hold Roblox liable for publishing third-party content. Publishing includes reviewing, editing, withdrawing, and changing the reach of third-party content. *O'Kroley*, 831 F.3d at 355. It includes deciding what third-party content to publish, adding

[6] *See Force v. Facebook, Inc.*, 934 F.3d at 59, 65–71 (2d Cir. 2019) (Section 230 barred claims premised on Facebook's publication of third-party "content that encouraged terrorist attacks"); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1095 (9th Cir. 2019) (barring claims brought by mother whose son fatally overdosed after procuring illegal drugs through communications with another user); *Doe v. Grindr, Inc.*, 128 F.4th 1148, 1153–54 (9th Cir. 2025) (barring claims brought by minor who was sexually abused by adults he met on dating app); *Doe v. MySpace Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (same); *Doll v. Pelphrey*, 2024 WL 4788525, at *6 (Ky. Cir. Ct. Oct. 18, 2024) (same); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (similar); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar).

[7] Plaintiff has not alleged that Roblox "materially contributed" to the illegality of the content, nor could she. *See* Ex. A at 1 ("games and experiences on Roblox are created by the players").

editorial comments, and declining to remove content after notice. *Jones*, 755 F.3d at 402–07, 416. The "name of the cause of action" is irrelevant. *Barnes v. Yahoo!*, 570 F.3d 1096, 1101–02 (9th Cir. 2009). What matters is "the duty that the plaintiff alleges the defendant violated." *Id.* If the duty "come[s] within a publisher's traditional editorial functions," Section 230 bars the claim. *O'Kroley*, 831 F.3d at 355.

The SAC faults Roblox for publishing third-party speech. Roblox allegedly did not "screen the users," ¶ 7, "exposed Audree to other users, including members of the [TCC], who glorified violence," ¶ 252, and functioned as "an entry point to an online world of violent extremism," ¶ 57. Because the harm underlying these claims is the "violent and inciting 'posts of others,'" Section 230 applies. *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1168 (9th Cir. 2026).

Courts routinely dismiss analogous claims. In *Force*, the Second Circuit applied Section 230 to dismiss claims where Facebook allegedly "allowed" a terrorist group to "post content that encouraged terrorist attacks," including by "direct[ing] such content to … individuals who harmed the plaintiffs." 934 F.3d at 59. As here, the plaintiffs alleged that a platform was liable for giving a violent group a means to communicate and failing to eliminate terrorist content despite prohibiting it. *Id.* at 60, 65, 71. The court held that Facebook's alleged conduct "f[ell] within the heartland of what it means to be [a] 'publisher,'" *id.* at 65, and it did not forfeit that immunity by ineffectively removing terrorism content. *Id.* at 71.

Plaintiff cannot skirt Section 230 by disclaiming the intent to "hold Roblox liable for any specific game, message, or other piece of content," ¶ 60, and characterizing her claims as challenges to Roblox's features, defaults, or operational decisions. In *Grindr*, the minor plaintiff brought negligence, product liability, failure-to-warn, and misrepresentation claims against a dating app after being sexually assaulted by adults with whom he had matched and exchanged

messages on the app. *Grindr*, 128 F.4th at 1151. As here, the *Grindr* plaintiff framed his claims as targeting the app's "features" and "design," including lack of age verification and not suppressing messages between adults and minors. *Id.* at 1152–53. The Ninth Circuit nonetheless dismissed the claims, recognizing that they all required treating Grindr as a publisher, as they sought to impose a duty to prevent "messages between users that could lead to illegal activity." *Id.*; *see also MySpace*, 528 F.3d at 416, 419–22 (barring claims targeting lack of safety features, including age verification software, as claims were "merely another way of claiming that MySpace was liable for publishing the communications"); *Doe v. Discord Inc.*, 2026 WL 1067574, at *14 (N.D. Ohio Apr. 20, 2026) (barring negligence, product liability, and misrepresentation claims against Discord for allegedly failing to use adequate safety features, age-verification, and content moderation to prevent sexual exploitation of minor by another user).

Similarly, in *Dyroff*, the Ninth Circuit affirmed dismissal of negligence, failure-to-warn, and wrongful death claims premised on anonymous communications leading to a fatal drug overdose. 934 F.3d at 1096; *see Dyroff*, 2017 WL 5665670, at *1 (N.D. Cal. Nov. 26, 2017) (listing claims). The plaintiff claimed that the defendant website's "features and functions," such as user anonymity, not requiring a phone number, and using neutral algorithms to "recommend" content, fell outside Section 230. 934 F.3d at 1098. The court disagreed, holding that "[t]hese functions—recommendations and notifications—are tools meant to facilitate the communication and content of others … not content in and of themselves." *Id.* So too here.

**1. Section 230 Bars the Negligence Claim (Count 3).**

The negligence claim seeks to impose a duty on Roblox to moderate third-party content, or else face liability, which Section 230 forecloses. Plaintiff faults Roblox for: (i) transmitting harmful third-party communications, specifically "grooming for violence," ¶ 296; (ii) permitting adults and children to communicate, ¶¶ 30-32, 99–100, 110; (iii) failing to "screen" or "block"

abusive users, ¶¶ 7, 115; (iv) allowing "unsupervised" communications between users, ¶ 311; (v) not requiring age, identity, or phone number verification to create an account, ¶¶ 27, 104–05; (vi) failing to implement parental controls or approvals for monitoring communications and creating accounts, ¶¶ 30–32, 82, 108–09, 114; and (vii) failing to provide "adequate warnings" about the risk of "grooming for violence." ¶¶ 296–98, 311.

Each of these duties would require Roblox to change the way it publishes, including monitoring, screening, and removing third-party content. *Jones*, 755 F.3d at 416. Plaintiff says her claims do not require Roblox to "monitor its own platform," ¶ 60, but decisions about who can speak on a platform, including what barriers, if any, to impose on speech (such as age verification, parental controls, messaging limitations, or user anonymity), and what speech to screen (e.g., by banning users), are quintessential publishing functions. *See Grindr*, 128 F.4th at 1152–54 (barring negligence claims that "would require [the app] to monitor third-party content and prevent adult communications to minors"); *Discord*, 2026 WL 1067574, at *14 (similar). Plaintiff's core criticism is Roblox's purported failure to protect users from the "unreasonable risk of grooming for violence." ¶ 296. But "grooming for violence" simply describes the content of third-party speech. When "the underlying basis of the plaintiff's claims" is harm from third-party content, holding a platform liable for negligence in addressing that harm requires treating the platform as a publisher. *MySpace*, 528 F.3d at 421.[8]

---

[8] *See also, e.g.*, *Jones*, 755 F.3d at 411, 415–16 (barring tort claims based on provision of "*neutral* tools" for users to submit posts); *Doll*, 2024 WL 4788525, at *2, *8 (barring negligence claims alleging that app should have had "stricter age-verification procedures"); *Discord*, 2026 WL 1067574, at *1, *9–10 (barring negligence claims alleging that app "features" allowed "predator" to "groom" minor); *In re Facebook, Inc.*, 625 S.W.3d at 93 (barring negligence claims premised on app's failure to verify age and identity, prevent adults from contacting minors, and report suspicious messages); *Barnes*, 570 F.3d at 1103 (barring negligent undertaking claim asserting ineffective removal of indecent profiles).

**2. Section 230 Bars the Design Defect Claim (Count 4).**

The design defect claim also seeks to impose a duty that would require Roblox to change the way it displays third-party content, including who can access it—"traditional editorial" decisions protected by Section 230. *Jones*, 755 F.3d at 407. The alleged "defect[]" is designing the app in a way that "mak[es] it easy" for "adult predators" "to find children and groom them for violence," ¶ 334; *see also* ¶ 337 (listing same "problematic features" as negligence claims). Plaintiff's proposed cure would require Roblox to change how it publishes, including by erecting "barriers" to "separate child users from adult users" and "screen[ing] users before allowing them on the app." ¶ 337. Plaintiff's "theory is about the sharing of messages and what happens when some users interact with bad content," which necessarily requires treating Roblox as a publisher. *Meta Platforms*, 174 F.4th at 1163, 1168 (barring claim about "Facebook's core design and function" and features that allegedly "encourag[ed] … violent posts").

Courts regularly apply Section 230 to dismiss analogous design-based claims. In *M.P. v. Meta Platforms Inc.*, 127 F.4th 516, 521–22 (4th Cir. 2025), the Fourth Circuit dismissed product liability claims alleging that Facebook's "design and architecture" was "unreasonably dangerous" for recommending "extremist groups" to a mass-shooter who killed the plaintiff's father and others. *Id.* at 525. Because the plaintiff could not show that the algorithm was unreasonably dangerous "without also demonstrating that the algorithm prioritizes the dissemination of one type of content over another," the plaintiff's claims were "inextricably intertwined with Facebook's role as a publisher of third-party content." *Id.* Similarly here, Plaintiff cannot show that any of Roblox's features are unreasonably dangerous without referring to the "violent" and "dangerous" third-party content, ¶¶ 60, 120, that those features purportedly facilitate.[9]

---

[9] *See Grindr*, 128 F.4th at 1153–54 (affirming dismissal of product liability claim asserting breach of a "duty not to design … defective products by failing to prevent a minor from being matched

**3. Section 230 Bars the Failure-to-Warn Claims (Count 5).**

Section 230 bars the failure-to-warn claim because it too would require Roblox to change the way it moderates third-party content. *See, e.g.*, *Discord*, 2026 WL 1067574, at *8–10 (dismissing failure-to-warn claims premised on "second guessing" content-moderation decisions).[10] Plaintiff argues that Roblox should have warned that its app was "danger[ous]" due to the "risk of grooming for violence" by other users. ¶ 353; *see* ¶ 298. Where, as here, "[t]he warnings … would only be necessary because of [the defendant's] allegedly inadequate policing of third-party content," Section 230 immunity applies. *In re Facebook*, 625 S.W.3d at 94. Plaintiff's argument that Roblox did not "need to monitor its own platform" to know or warn about allegedly "vile and dangerous content ***that proliferates on its platform***" is nonsensical. ¶ 60. It is impossible to determine if content is "vile or dangerous" without reviewing it.[11]

**4. Section 230 Bars the Fraud-Based Claims (Counts 1, 2).**

The concealment and misrepresentation claims suffer from similar flaws. The aspirational statements at issue concern Roblox's content moderation policies aimed at fostering user safety. *See* ¶¶ 36–41 (Roblox "take[s] kids' safety and privacy very seriously"; has "kept … safety top-of-mind when designing our platform"; and employs "stringent safety system and policies"); ¶ 45

---

with predators"); *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (barring design defect claims asserting that app anonymity caused "harassing and bullying posts" leading to suicides); *In re Facebook*, 625 S.W.3d at 93–94 (barring design defect claims premised on alleged failure to "provid[e] adequate warnings … regarding the dangers of 'grooming'").

[10] In the SAC, Plaintiff includes negligent failure-to-warn as part of her general negligence claim (Count 3) and asserts a standalone "Strict Liability – Failure to Warn" claim (Count 5). ¶¶ 298, 311, 348–64. Both theories suffer from the same flaws.

[11] *See Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 n.8 (S.D.N.Y. 2018) (barring failure-to-warn claim because "a warning about third-party content is a form of editing"), *aff'd*, 765 F. App'x 586, 591 (2d Cir. 2019); *Grindr*, 128 F.4th at 1154 (barring failure-to-warn claim premised on "duty to warn … about the risks of child sexual exploitation on the App"); *Bride*, 112 F.4th at 1180 (barring failure-to-warn claim premised on "not mitigating, in some way, the harmful effects of harassing and bullying content").

(highlighting "what a priority safety is"); ¶ 51 ("number one priority" "to create a safe, civil, and inclusive community"). Like Grindr's assertion that it "would maintain a 'safe and secure environment for its users,'" these statements are "not a specific promise, but a description of [Roblox's] moderation policy," protected by Section 230. *Grindr*, 128 F.4th at 1154. And as in *Grindr*, the thrust of Plaintiff's claim is that Roblox should have taken "certain moderation actions" that she believes the policies required. *Id.* Complying with that duty would necessarily require Roblox to change how it publishes third-party content—i.e., by blocking, screening, or removing content and users to which Audree allegedly was "exposed." ¶ 252.

Courts routinely dismiss misrepresentation claims targeting content moderation policies because "where a litigant relies on general statements of content moderation policy rather than specific, enforceable promises, the duty [sought to be imposed] involves precisely the kind of content moderation regulation that Section 230 protects from liability." *Hemry v. Google*, 2026 WL 2909299, at *2 (N.D. Cal. Sept. 28, 2026).[12] *Hemry* is instructive. The plaintiffs downloaded fraudulent third-party apps, allegedly in reliance on Google's statements that its app store was "safe and trusted," its apps undergo "rigorous safety reviews," it "protect[s] users from … harmful applications," and it prohibits "apps that 'expose users to deceptive or harmful financial products and services." *Id.* at *3. Section 230 barred the claims because Google could "put apps through safety reviews … scan apps to protect users from malware [and] forbid harmful apps … while still hosting dangerous apps despite its best efforts." *Id.* The same is true here.

In contrast, courts that have declined to dismiss misrepresentation claims have done so to

---

[12] *See also Discord*, 2026 WL 1067574, at *12 (barring misrepresentation claims challenging app's statements about content moderation implying platform was "safe for minors"); *Beckman v. Match.com, LLC*, 668 F. App'x 759, 759–60 (9th Cir. 2016) (barring misrepresentation claim based on defendant's publication of profile belonging to plaintiff's attacker).

enforce duties arising from specific, enforceable promises. *Bride*, 112 F.4th at 1178. There can be no enforceable promise here because Roblox expressly disclaimed responsibility or liability for "offensive or objectionable" third-party content. Ex. F at 17; *see Murphy v. LinkedIn Corp.*, 2026 WL 881710, at *2–3 (N.D. Cal. Mar. 30, 2026) (barring challenge to safety-related statements, as defendant disclaimed liability and warned about "illegal," "offensive," or "harmful" content).

**5. Section 230 Bars the Wrongful Death Claim (Count 6).**

The wrongful death claim relies on the same allegations, ¶¶ 366–71, and Section 230 bars it for the same reasons. Plaintiff claims that Roblox is responsible for Audree's death because she "was exposed [] to other users" who "glorified violence." ¶ 252. The claim targets "the communication and content of others," *Dyroff*, 934 F.3d at 1098, which Section 230 precludes.

## II. THE FIRST AMENDMENT BARS PLAINTIFF'S NON-FRAUD CLAIMS

The First Amendment independently bars the non-fraud claims, which seek to hold Roblox liable for its editorial decisions about the way it organized and presented third-party content. *Moody*, 603 U.S. at 738. As the Supreme Court held in *Moody*, "[d]eciding on the third-party speech that will be included in or excluded from a compilation—and then organizing and presenting [it]—is expressive activity," which results in a "distinctive expressive offering." *Id.* at 731, 738. That "expressive offering" "derive[s] largely from the platforms' editorial decisions about which posts to remove, label, or demote." *Id.* at 738–39. Plaintiff's claims target Roblox's decisions about what third-party content to publish—including whether to remove it from circulation, recommend it, and what voices should be permitted to speak and to whom. ¶¶ 29–32 (challenging Roblox's decisions to show "top playing" games, and to permit communication between adults and minors). These protected editorial choices, which "overlap" with Section 230's protections, preclude Plaintiff's claims. *CCIA v. Paxton*, 184 F.4th 420, 444 (5th Cir. 2026); *see James v. Meow Media, Inc.,* 300 F.3d 683, 695 (6th Cir. 2002) (First Amendment bars claims

predicated on theory that publishing objectionable content inspired violence or self-harm).

The First Amendment likewise prohibits holding a forum for third-party speech liable for the content it distributes absent proof that it had "knowledge … of the content[]." *Smith v. California*, 361 U.S. 147, 149, 153 (1959); *see Doll*, 2024 WL 4788525, at *2 (First Amendment barred negligence and design claims against app for transmitting communications without knowledge of unlawfulness). Plaintiff does not allege that Roblox knew of any scheme targeting Audree or of her communications with "groom[ers] for violence," ¶ 251. The general allegation that "TCC content" appeared on Roblox, ¶ 67, is insufficient. *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168, 169 (6th Cir. 2005) (First Amendment barred liability for distributor who lacked actual knowledge that records were libelous, even if it "should have known").

## III. Plaintiff Fails to State Any Claim Against Roblox

Apart from these federal protections, Plaintiff's claims fail as a matter of state law.

### A. All Claims Fail for Lack of Proximate Cause (Counts 1–6).

To start, each claim requires pleading proximate cause or its equivalent,[13] which is impossible given the allegations. Proximate cause requires that the defendant's conduct be a "substantial factor in bringing about plaintiff's harm." *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 460 (6th Cir. 2022).[14] Even if defendant's conduct "may be the actual but-for cause" of injury, "proximate cause limits a defendant's liability if the breach is 'too attenuated from the damages in time, place, or foreseeability.'" *Lhotsky v. Sutcliffe*, 723 S.W.3d 842, 854 (Ky. Ct. App. 2025). That is the case here, as each claim "seeks to hold [Defendants] accountable for causing" Audree's

[13] *See, e.g.*, *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023) (negligence); *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 459–60 (6th Cir. 2022) (products liability); *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (misrepresentations).

[14] Federal courts in Kentucky apply Kentucky substantive law when the case has "significant contacts" with Kentucky. *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009).

suicide. ¶ 1.

Under similar circumstances, the Sixth Circuit has rejected the theory that suicide is sufficiently foreseeable to impose liability. In *Watters v. TSR, Inc.*, 904 F.2d 378 (6th Cir. 1990), the plaintiff sued the manufacturer of "Dungeons & Dragons" for allegedly causing her son to commit suicide after playing the game. *Id.* at 379. But the wrongful death, negligence, and product liability claims failed for lack of proximate cause because suicide was not a reasonably foreseeable consequence of playing a game. *Id.* at 380–84. In *James*, the Sixth Circuit similarly held that a school shooting was not a sufficiently foreseeable result of violent "video games, movies, and internet sites," as it is "simply impossible to predict" that these materials "would incite a young person to violence." *James*, 300 F.3d at 687, 693; *see also Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1276 (D. Colo. 2002) (suicide and murder by Columbine shooters not proximately caused by defendants' video games and films). The same reasoning applies here. Audree's suicide was a tragedy, but Roblox did not proximately cause it.

There are good reasons why courts reject the theory that a communications service can proximately cause injuries inflicted by a third party merely by transmitting messages between users. A contrary rule would "effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them," which would "run roughshod over the typical limits on tort liability." *Twitter Inc. v. Taamneh*, 598 U.S. 471, 502–03 (2023); *see also, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623–25 & n.4 (6th Cir. 2019) ("refusing to extend" tort liability to "everything that an individual may do" through social media); *Meador v. Apple, Inc.*, 911 F.3d 260, 265 (5th Cir. 2018) (transmitting iMessages did not proximately cause car crash because "a smartphone's effects on its user [is not] a cause at all"). This Court should likewise dismiss all claims for lack of proximate cause.

**B. There Is No Viable Product Liability Claim (Counts 4–5).**

The product liability claims (whether styled as design or failure-to-warn claims) fail because they concern Roblox's transmission of words and ideas—not a tangible "product."[15]

Again, Sixth Circuit precedent is squarely on point. In *James*, the plaintiffs alleged that the defendants' "video games, movie, and internet transmissions constitute 'products' and their violent content 'product defects,'" that caused a school shooting. 300 F.3d at 700–01. In dismissing the product liability claims, the court followed a long line of authorities holding that "words and images" and "communicative element[s]"—even if contained in a tangible cassette or book—"are not sufficiently 'tangible' to constitute products." *Id.* at 701; *see also Watters*, 904 F.2d at 381 (recognizing that product liability law "has never been extended to words or pictures"); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991) (words and ideas in book are not a "product"); Restatement (Second) of Torts § 402A cmt. d (defining "product" with examples of tangible items, such as "an automobile, a tire, an airplane, a grinding wheel, a water heater").[16]

Rather than challenging a tangible "product," Plaintiff targets the words and ideas conveyed through Roblox's intangible communication features. *E.g.*, ¶ 329 (alleging defectively designed app that "allow[s] children to come into contact with predators"); ¶ 332 (alleging app defectively designed "to appeal to adult predators by making it easy to find children and groom them for violence"); ¶ 353 (alleging failure to warn about "risk of grooming for violence" by other users). But these are not "products." *James*, 300 F.3d at 701. And extending product liability law

---

[15] To state a product liability claim, a plaintiff must establish a cognizable product defect and resulting harm. *See Thacker*, 47 F.4th at 459.

[16] Kentucky "has adopted the Restatement (Second) of Torts § 402A." *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 756 (E.D. Ky. 2020). It also has relied on the Third Restatement, which defines products as "tangible personal property," and provides that "[s]ervices, even when provided commercially, are not products." Restatement (3d) of Torts § 19(b); *see Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729, 737–39 & n.5 (Ky. 2011) (citing Third Restatement).

to these communication features would be unworkable, leading to "significant constitutional problems under the First Amendment that ought to be avoided," *id.* at 695. Doing so would "seriously inhibit those who wish to share thoughts and theories," raising the "disturbing … prospect that we might be deprived of the latest ideas," without "tak[ing] into consideration the unique characteristics of ideas and expression." *Winter*, 938 F.2d at 1034–35.

These concerns explain why courts consistently hold that product liability law does not apply in similar situations. *See, e.g.*, *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) ("a social media platform that connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat is not a "product"); *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) ("numerous authorities" conclude that "[t]here is no strict [product] liability for books, movies, or other forms of media"); *Social Media Cases*, 2023 WL 6847378, at *20 (Cal. Super. Ct. Oct. 13, 2023) (TikTok and YouTube not a "product"). This Court should do the same.

### C. The Negligence Claims Fail (Count 3).

In addition to lack of proximate cause, the negligence claims fail because Plaintiff has not alleged a cognizable duty of care. *See Walmart*, 671 S.W.3d at 26.

Under Kentucky law, "the determination of whether a duty of care exists is whether the harm to the plaintiff resulting from the defendant's negligence was 'foreseeable.'" *James*, 300 F.3d at 690. Here, the negligence claims seek to impose a duty on Roblox to prevent users from communicating violent ideas to other users, on the theory that such ideas could lead to suicide. ¶ 296 (duty to avoid unreasonable "risk of grooming for violence" by other users, which could lead to "self-harm"); ¶ 299 (duty to "protect" against other users).

But the Sixth Circuit rejected precisely this theory of duty in *Watters* and *James.* In *Watters*, the court held that a game manufacturer owed no duty to a victim allegedly inspired to

commit suicide by playing the game, which "desensitized" the victim to violence. *See* 904 F.2d at 381–82. Because suicide was not a foreseeable result of playing the game, notwithstanding its violent content, imposing a duty would "stretch the concepts of foreseeability and ordinary care to lengths that would deprive them of all normal meaning." *Id.* at 381. And in *James*, the Sixth Circuit dismissed the negligence claim asserting that allegedly violent video games, movies, and website content caused a high school student to shoot and kill classmates. 300 F.3d at 687. No duty existed under Kentucky law, as the student's "reaction to the games and movies at issue … was simply too idiosyncratic to expect the defendants to have anticipated it." *Id.* at 693; *see also Est. of B.H.*, 2022 WL 551701, at *3 (website owed no duty to minor to prevent self-harm when the duty is premised on "content and [its] dissemination"); *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802, 802 (S.D. Tex. 1983) (rejecting theory that a magazine that described asphyxiation owed "a duty of social responsibility" to the plaintiffs, whose relatives died after imitating the practices described in the article).[17]

If Plaintiff's theory is that Roblox had a duty to control the conduct of users who may have spread the violent ideas that Audree allegedly consumed, that duty is not cognizable, either. Absent a "special relationship" not present here, a defendant has no duty to prevent intentional criminal acts by third parties. *James*, 300 F.3d at 693–94 (citing Restatement (Second) of Torts § 302B, cmt. d)); *see also Dyroff*, 934 F.3d at 1101 (website has no "special relationship" with its users). While it is far from clear that disseminating violent content qualifies as a crime, it is well-established that websites do not owe a legal duty to users to monitor or remove content. *See, e.g.*,

[17] As with the product liability claims, recognizing a duty in these circumstances would raise serious First Amendment problems. *James*, 300 F.3d at 695; *see, e.g.*, *Watters*, 904 F.2d at 383; *Olivia N. v. Nat'l Broad. Co.*, 126 Cal. App. 3d 488, 494 (1981) (no duty to prevent violent content because that "would lead to self-censorship which would dampen the vigor and limit the variety of public debate[,]" raising First Amendment concerns).

*Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359–60 (D.C. Cir. 2014) (no duty of care or special relationship between Facebook and its users); *Herrick*, 306 F. Supp. 3d at 598–99 (similar); *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *4–5 (S.D. Tex. Mar. 22, 2021) (similar).[18]

As to the negligent undertaking theory, the SAC contains no allegation that Roblox undertook any duty to prevent "expos[ure]" to other users, ¶ 252, claiming instead that Roblox has "voluntarily undertaken a responsibility to keep children safe on [its] app[]," ¶ 299(g), by publicly stating it "take[s] steps to keep children safe." *Id.* But there are no allegations that Roblox's parental controls or safety functions affirmatively "increas[ed] the risk of harm," or that Plaintiff relied on any statement to that effect, as an undertaking claim requires. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 538 (Ky. 2003); *see also In re Social Media Cases*, 2023 WL 6847378, at *39–41 (rejecting undertaking claim as to platforms' age-verification services). Plaintiff's cited materials reveal that Roblox provided tools for parental supervision and reporting abuse by other users, so any alleged undertaking is contradicted by the SAC. *See supra* at 2–4.

### D. The Fraud Claims Fail (Counts 1, 2).

The fraud-based claims—whether framed as fraudulent or negligent misrepresentation or concealment—require dismissal for many reasons. Plaintiff fails to plead fraud with particularity, an actionable misrepresentation or concealment, reliance, or any duty to disclose.

---

[18] Courts distinguish between duties arising from "misfeasance" (affirmative conduct that "creates a new risk of harm") or from "nonfeasance" (inaction), with a "reluctance to impose liability on the latter." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005). Plaintiff cannot demonstrate nonfeasance because there is generally "no duty to control the conduct of a third person to prevent him from causing harm to another," *id.*, which is exactly what Plaintiff seeks to require Roblox to do. *Supra* at 9–10. And "[m]erely operating a website or web-based platform used by malicious third parties" is not "misfeasance." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 702 F. Supp. 3d 809, 858 (N.D. Cal. 2023).

Under Kentucky law, fraudulent misrepresentation requires pleading that: (1) the defendant made a material misrepresentation, (2) the misrepresentation was false, (3) the false misrepresentation was made knowingly or recklessly, (4) the defendant induced the plaintiff to act upon the misrepresentation, (5) the plaintiff relied upon the misrepresentation, and (6) the misrepresentation caused injury to the plaintiff. *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 770 (E.D. Ky. 2019). Reliance "must be reasonable." *Id.* (citing *Flegles*, 289 S.W.3d at 549). Negligent misrepresentation occurs when "[o]ne [] in the course of his business … or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions" which causes "pecuniary loss to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Ruff v. Perfetti Van Melle USA Inc.*, 2024 WL 329525, at *3 (E.D. Ky. Jan. 27, 2024). Fraudulent concealment requires (1) a duty to disclose a material fact, (2) failure to disclose, (3) reliance, and (4) damages. *See Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013).

***Rule 9(b).*** Plaintiff's fraud-based claims fail at the threshold for not pleading fraud with particularity, which requires: (1) specifying the fraudulent statements; (2) identifying the speaker; (3) pleading when and where the statements were made; and (4) explaining what made the statements fraudulent. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). "Conclusory statements of reliance" are insufficient "to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852–53 (6th Cir. 2006). These requirements apply to all claims sounding in fraud, including negligent misrepresentation and concealment. *Republic Bank*, 683 F.3d at 248 (misrepresentation); *see B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 652–53 (W.D. Ky. 2019) (concealment).

Plaintiff's generalized assertions that Roblox misrepresented the "safety of its app" or concealed the "safety risks presented by its app" fall far short of Rule 9(b). ¶¶ 269, 271. While the SAC's general allegations cite various documents describing Roblox's approach to content moderation, most pre-date Audree's alleged use of Roblox by many years, and some are before her birth. ¶¶ 35–40. Plaintiff does not explain what statements were fraudulent, or that she relied on any of them. These defects are fatal under Rule 9(b). *See, e.g.*, *Everest Stables, Inc. v. Rambicure*, 803 F. App'x 819, 825–26 (6th Cir. 2020) (rejecting misrepresentations claims under Kentucky law for failing to "identif[y]" a "specific fraudulent statement" or "a false statement"). Nor does Plaintiff identify specific facts that Roblox purportedly concealed, or how Roblox "affirmative[ly] act[ed]" to suppress those facts. *Est. of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 395 (6th Cir. 2015). These failures alone require dismissal of the fraud claims.

***No actionable misrepresentation.*** The misrepresentation claims fail on the merits, too. The SAC fails to allege an actionably false statement. *Republic Bank*, 683 F.3d at 248, 260. To be capable of being "false," a representation must "relate to a past or present material fact." *Flegles*, 289 S.W.3d at 549. "A mere statement of opinion or prediction may not be the basis of an action." *Id.* In determining whether a statement is factual (or false), courts also consider the alleged misrepresentation in its full context, evaluating other accompanying information and disclosures. *See Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*, 22 F. Supp. 3d 669, 686 (E.D. Ky. 2014) (considering whether statements were misleading "in the context the statements are made"), *aff'd*, 614 F. App'x 237 (6th Cir. 2015).

Here, Plaintiff challenges aspirational statements about Roblox's goals to prioritize safety and descriptions of content-moderation policies. *See, e.g.*, ¶ 38 (Roblox "takes kids' safety and privacy very seriously"); ¶ 39 (Roblox "develops [] technologies to ensure … a safe and fun

space"); ¶ 45 ("highlight what a priority safety is on our platform," ); ¶¶ 49, 53 ("focuses on making sure that everything is done in a safe and appropriate way" and has a "guiding vision" to create "safest and most civil community"); ¶ 51 (describing "safety and civility" as being "baked into everything that we do"); ¶ 40 ("safety is in our DNA"); ¶ 41 (describing types of content Roblox "won't allow"). Such "statement[s] that an interactive computer service provider will create a safe and secure environment [are] too general to be enforced." *Grindr*, 128 F.4th at 1154; *see also, e.g.*, *DeSoto Cab Co. v. Uber Techs., Inc.*, 2018 WL 10247483, at *12 (N.D. Cal. Sep. 24, 2018) ("Uber's statement that its drivers 'provide[d] the safest ride on the road' and were the 'gold standard' of safety practices" are "not specific enough to create consumer reliance"); *accord McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 171–72 (Ky. 1955) (similar).[19]

And, even if any of Roblox's statements could be viewed as factual, Plaintiff nowhere alleges falsity with requisite particularity. There are no specific allegations, for instance, that Roblox did *not* employ "a large team of human moderators," make use of "machine learning," or remove reported content in the timeframe Roblox disclosed. ¶¶ 41, 51. Absent such particularized allegations, dismissal is required. *See, e.g.*, *Greer*, 114 F.4th at 615 (dismissing under Rule 9(b) where "the complaint contains sparse allegations about *why* the statements … were false"); *Touch-N-Buy LLC v. United Consumer Fin. Servs.*, 2026 WL 1211259, at *8 (6th Cir. May 4, 2026) (same as to statement that company "would be its only independent representative," where "there are no allegations that [it] hired other representatives to compete").

[19] *See also, e.g.*, *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021) ("general statements about big-picture concepts such as trust, security, reputation, and safety" not actionable); *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) ("innovative" is "not specific, not concrete, not measurable"); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *9 (S.D.N.Y. Aug. 23, 2021) ("'relentless focus and commitment to safety' is non-actionable").

Nor do the statements promise to perfectly eliminate all third-party content that violates Roblox's policies. If anything, the documents describing content Roblox "won't allow" convey the opposite. For example, in response to the question "How can I keep my child safe on Roblox?," the FAQs encourage parents to "monitor your kids' online interactions, including their creations, friends, virtual item purchases, private message history, and more." Ex. C at 13; *see also* Ex. D at 2 ("immediately send an abuse report to the ROBLOX team" "[i]f someone on the ROBLOX site harasses you or makes any comments that you feel are inappropriate"). These statements do not promise a platform devoid of offensive content, especially given the Terms' clear disclaimer. *McHargue*, 283 S.W.2d at 172; Ex. F at 17. Indeed, many cited statements directly responded to reports of offensive content. *See, e.g.*, ¶ 49 & n.27 (noting safety goals in context of simulated assault of user's avatar); ¶ 49 & n.28 (describing "safety team review[]" in response to report about inappropriate digital avatars); ¶ 51 & n.34 (at 8:04) (same in response to question about "key initiative[s]" or "mechanism[s]" to address incidents and noting there will "always" be "bad content uploaded").

***Reliance.*** Despite citing nearly two decades of statements, Plaintiff does not identify a single statement that she read or relied on. Instead, she merely alleges that she "saw Audree playing innocent-looking games," ¶ 250, without alleging that she ever could or did view any statement by Roblox. Courts routinely find such allegations deficient. *See, e.g.*, *Bogard v. TikTok Inc.*, 2025 WL 3637035, at *10 (N.D. Cal. Dec. 15, 2025); *Huffman v. Fifth Third Bank, Inc.*, 2015 WL 12977102, at *3 (E.D. Ky. May 11, 2015).

***No Pecuniary Loss (Negligent Misrepresentation).*** Under Kentucky law, negligent misrepresentation must cause a plaintiff "pecuniary loss" or "economic loss." *Ruff*, 2024 WL 329525, at *3; *see Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 582 n.1

(Ky. 2004) (defining "economic loss" as "[a] monetary loss such as lost wages or *lost profits*"). But the sole claimed harms are "injuries and harm" to the "health, safety, and welfare" of customers. ¶¶ 289–91. That is not pecuniary loss. *See Ragland v. DiGiuro*, 352 S.W.3d 908, 921 (Ky. Ct. App. 2010) ("[W]hile it is … impossible to place a value on the loss of a loved one's life, such noneconomic harm is not compensable.").

***No Duty to Disclose or Concealment (Fraudulent Concealment).*** There is no duty to disclose information unless (1) there is "a confidential or fiduciary relationship between the parties," (2) "a statute imposes [] a duty," or (3) "a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). None of these circumstances exist here. There is no special relationship between a website and its users, *Dyroff*, 934 F.3d at 1101, and no statutory duty to disclose. Nor did any of Roblox's statements give the impression of a comprehensive disclosure or offer a "materially misleading" "mere partial truth," *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 469 (Ky. 1999)—indeed, the cited documents discuss violent content, abusive users, and the risk of "grooming," ¶¶ 26, 38, 41, 43–44, 127, 137 (Roblox's public disclosure of its safety measures intended to address known risks with the platform); *see, e.g.*, *Rivermont Inn*, 113 S.W.3d at 641 (no partial-disclosure duty where defendant's prior disclosures foreclosed any false impression of full disclosure); *Giddings & Lewis*, 348 S.W.3d at 748–49.

### E. The Wrongful Death Claim Fails (Count 6).

A wrongful death claim requires "an injury inflicted by the negligence or wrongful act of another." Ky. Rev. Stat. Ann. § 411.130(1). The SAC does not allege any negligence or wrongful act of Roblox, so the wrongful death claim must also be dismissed. *See supra* at 15–25.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

Dated: October 6, 2026

Respectfully submitted,

By: */s/ Tiana Demas*

Tiana A. Demas (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
Jamie D. Robertson (*pro hac vice*)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
tdemas@cooley.com

Max A. Bernstein (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415-693-2000
Facsimile: +1 415-693-2222
mbernstein@cooley.com

Raymond P. Tolentino (*pro hac vice*)
Anna O. Mohan (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: +1 202-842-7800
Facsimile: +1 202-842-7899
rtolentino@cooley.com
amohan@cooley.com

Patrick J. Hayden (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: +1 212-479-6000
Facsimile: +1 212-479-6275
phayden@cooley.com

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC - LOUISVILLE
500 W. Jefferson Street
Suite 2400
Louisville, KY 40202
Telephone: +1 502-783-6245

bpaul@mcbrayerfirm.com
mdenham@mcbrayerfirm.com

Attorneys for Defendant
ROBLOX CORPORATION