**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | |
|---|---|
| JAIMEE SEITZ, individually, and as administrator of the Estate of AUDREE HEINE,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, DISCORD INC., TIKTOK LLC, TIKTOK INC., AND BYTEDANCE INC.,<br><br>Defendants. | Civil Case No. 2:25-cv-00166-DLB-CJS<br><br>Chief Judge David L. Bunning |

**DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION (ORAL ARGUMENT REQUESTED)**

**REDACTED VERSION OF DOCUMENT**

**SOUGHT TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. BACKGROUND ON ROBLOX ..... 2

II. PLAINTIFF'S ALLEGATIONS ..... 3

III. AUDREE AND HER RESPONSIBLE ADULTS AGREED TO ROBLOX'S TERMS ..... 3

A. Agreement to Roblox's Terms at Account Creation ..... 4

B. Agreement to Updated Terms ..... 6

C. Agreement to Roblox Terms Through Robux Purchases and Gift Card Redemptions ..... 8

1. For Minors, a Responsible Adult Must Agree to Roblox's Terms. ..... 10

IV. THE ARBITRATION AGREEMENT. ..... 12

A. Roblox's Terms Delegate Questions of Arbitrability to the Arbitrator ..... 13

B. The Arbitration Agreement Has a Broad Scope. ..... 14

ARGUMENT ..... 15

I. LEGAL STANDARD AND THE FEDERAL ARBITRATION ACT. ..... 15

II. THE PARTIES AGREED TO ARBITRATE ALL DISPUTES. ..... 16

A. Both Audree and Her Responsible Adults Agreed to Arbitrate. ..... 17

B. Audree Was Bound Each Time Her Responsible Adults Agreed to the Terms. ..... 19

III. ANY PURPORTED DISAFFIRMANCE IS INVALID AND DELEGATED TO THE ARBITRATOR. ..... 21

IV. THE ACTION SHOULD BE STAYED PENDING ARBITRATION OR, IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED DISCOVERY ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. by and through Carbajal v. Nintendo of Am. Inc.*,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021)....24

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....16

*Anderson v. Amazon.com, Inc.*,
490 F. Supp. 3d 1265 (M.D. Tenn. 2020)....18, 19

*Angelilli v. Activision Blizzard, Inc.*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025)....24

*Antonetti v. Activision Blizzard, Inc.*
764 F. Supp. 3d 1309 (N.D. Ga. 2025)....24

*In re Auto. Parts Antitrust Litig.*,
951 F.3d 377 (6th Cir. 2020)....15

*Bixby v. Toyota Motor N. Am., Inc.*,
2023 WL 2110884 (E.D. Ky. Feb. 17, 2023)....15

*BLC Lexington SNF, LLC v. Townsend*,
719 S.W.3d 48 (Ky. Ct. App. 2025)....21

*Boykin v. Fam. Dollar Stores of Mich., LLC*,
3 F.4th 832 (6th Cir. 2021)....25

*Brookbank v. Heights Fin. Corp.*,
2026 WL 1194927 (E.D. Ky. May 1, 2026)....15

*Brown v. Elk Horn Coal Corp.*,
8 S.W.2d 404 (Ky. 1928)....23

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....15

*Carman v. Signature HealthCARE, LLC*,
2020 WL 3086253 (W.D. Ky. June 10, 2020)....22

*Carter Nursing & Rehab., LLC v. Wright*,
2022 WL 3449472 (E.D. Ky. Aug. 17, 2022)....15

*Creason v. Experian Info. Sols., Inc.*,
722 F. Supp. 3d 760 (W.D. Ky. 2024)....16

## TABLE OF AUTHORITIES

**Page(s)**

*Dahdah v. Rocket Mortg., LLC*,
166 F.4th 556 (6th Cir. 2026) ....................15, 17, 19

*Davis v. Panda Express, Inc.*,
2021 WL 4692387 (W.D. Ky. Oct. 7, 2021) ....................23

*Diversicaire Leasing Corp. v. Brouthon*,
2022 WL 16927789 (E.D. Ky. Nov. 14, 2022) ....................21

*Drus v. Microsoft Corp.*,
2026 WL 539470 (E.D. Ky. Feb. 26, 2026) ....................15, 20, 24

*Dunn v. Activision Blizzard, Inc.*,
749 F. Supp. 3d 976 (E.D. Ark. 2024) ....................24

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026) ....................21

*Espinoza v. Walmart Inc.*,
2020 WL 13886119 (S.D. Cal. Apr. 16, 2020) ....................19

*Mitchell ex rel. Fee v. Mitchell*,
963 S.W.2d 222 (Ky. Ct. App. 1998) ....................17, 22, 23

*French v. Roblox Corp.*,
2026 WL 2195890 (E.D. Pa. July 29, 2026) ....................1, 20, 24

*G.G. v. Roblox Corp.*,
2026 WL 1615999 (N.D. Cal. June 5, 2026) ....................1, 18

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) ....................1, 18

*Gaskins v. Swope Ventures, Inc.*,
645 F. Supp. 3d 682 (W.D. Ky. 2022) ....................16

*Gibson v. Roblox Corp.*,
2026 WL 2076374 (Cal. Super. Ct. July 15, 2026) ....................1

*Henderson v. Clark*,
173 S.W. 367 (Ky. 1915) ....................23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ....................23

## TABLE OF AUTHORITIES

**Page(s)**

*Jackson v. Legacy Health Services, Inc.*,
640 S.W.3d 728 (Ky. 2022) ....................21

*Javitch v. First Union Sec., Inc.*,
315 F.3d 619 (6th Cir. 2003) ....................10, 15, 19, 21

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) ....................23

*Keebaugh v. Warner Bros. Ent., Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................19

*Ky. Prot. & Advoc. v. White*,
2026 WL 788685 (E.D. Ky. Mar. 20, 2026) ....................17

*Ky. Shakespeare Festival, Inc. v. Dunaway*,
490 S.W.3d 691 (Ky. 2016) ....................16

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................17, 19

*Miller as Next Friend of E.M. v. House of Boom Ky., LLC*,
575 S.W.3d 656 (Ky. 2019) ....................21

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ....................19

*N. Fork Collieries, LLC v. Hall*,
322 S.W.3d 98 (Ky. 2010) ....................19

*N.A. v. Nintendo of Am. Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ....................23

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................19

*Olshan Found. Repair & Waterproofing v. Otto*,
276 S.W.3d 827 (Ky. Ct. App. 2009) ....................21

*Page v. GameStop Corp.*,
2025 WL 637441 (6th Cir. Feb. 27, 2025) ....................18, 19

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................17

## TABLE OF AUTHORITIES

**Page(s)**

*Phelps KY Opco, LLC v. Working*,
2026 WL 63511 (E.D. Ky. Jan. 8, 2026) ....................25

*Phoenix Am. Adm'rs, LLC v. Lee*,
670 S.W.3d 832 (Ky. 2023) ....................19

*Ping v. Beverly Enters., Inc.*,
376 S.W.3d 581 (Ky. 2012) ....................25

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,
2025 WL 793577 (W.D. Tenn. Mar. 12, 2025) ....................20

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....................22

*S.T.G. by and through Garcia v. Epic Games, Inc.*,
752 F. Supp. 3d 1200 (S.D. Cal. 2024) ....................24

*Scott v. RVshare LLC*,
2022 WL 866259 (M.D. Tenn. Mar. 22, 2022) ....................18, 19

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....................24

*In re StockX Customer Data Security Breach Litigation*,
19 F.4th 873 (6th Cir. 2021) ....................24

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ....................16

*Swiger v. Rosette*,
989 F.3d 501 (6th Cir. 2021) ....................22

*Tomlin v. Roblox Corp.*,
2026 WL 1412606 (E.D. Pa. May 20, 2026) ....................1, 21, 23

*Treved Exteriors, Inc. v. Lakeview Constr., Inc.*,
2014 WL 1047117 (E.D. Ky. Mar. 18, 2014) ....................15

*Univ. of Ky. v. Regard*,
670 S.W.3d 903 (Ky. 2023) ....................17

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013) ....................20

## TABLE OF AUTHORITIES

**Page(s)**

*Whaley v. T-Mobile, USA, Inc.*,
2013 WL 5155342 (E.D. Ky. Sep. 12, 2013) ....................15

*Whittaker v. Roblox Corp.*,
2026 WL 2640984 (D. Colo. Sep. 2, 2026) ....................1

*Williams v. Moon Active Ltd.*,
811 F. Supp. 3d 1079 (N.D. Cal. 2025) ....................23

*Wright v. Stanley Motor Co.*,
60 S.W.2d 144 (Ky. 1933) ....................21

*Wurtland Nursing & Rehab., LLC v. Harvey*,
621 F. Supp. 3d 805 (E.D. Ky. 2022) ....................16

**Statutes**

9 U.S.C.
§ 1 ....................16
§ 2 ....................16
§ 3 ....................24

Ky. Rev. Stat. § 411.130 ....................3

**Other Authorities**

Local Rule 7.1(f) ....................25

## INTRODUCTION

Before her tragic suicide, Audree Heine allegedly was an "avid Roblox user" who, under parental supervision, "relied heavily" on the gaming platform. SAC ¶¶ 5, 250.[1] When Audree's Roblox accounts were created, users had to agree to Roblox's Terms of Use ("Terms"), which at all relevant times contained a binding arbitration agreement. Audree's accounts agreed to the Terms at least 15 times, over many years, in many ways: at account creation, by agreeing to updated Terms, by purchasing Robux, Roblox's digital currency, and by purchasing and redeeming Roblox gift cards. Courts routinely compel arbitration in these circumstances, including in cases involving minors who assented to Roblox's Terms.[2]

The Terms also required minor users to confirm that their parents or guardians agreed to the Terms on their behalf, binding Audree's parents or legal guardian ("Responsible Adult"). The Complaint and Audree's accounts confirm that a Responsible Adult agreed to arbitrate the claims. Audree was eight years old when her first Roblox account was created. Plaintiff, Audree's mother, has alleged supervising Audree's Roblox use as a young child. Audree's accounts repeatedly purchased Robux with payment card information linked to her father, and these purchases required assenting to the Terms. Audree's accounts repeatedly clicked "I Agree" on simple Terms update notices that instructed minor users to show the Terms to a Responsible Adult. Audree's father's email address was verified through one of her accounts, and the same account had a linked parental PIN. *Infra* at 10–11. Plaintiff previously conceded that she set "parental controls on Audree's

---

[1] The Second Amended Complaint (Dkt. No. 104) is referred to as the "SAC," and the First Amended Complaint (Dkt. No. 19) as the "FAC."

[2] *See, e.g.*, *Whittaker v. Roblox Corp.*, 2026 WL 2640984, at *2 (D. Colo. Sep. 2, 2026); *French v. Roblox Corp.*, 2026 WL 2195890, at *6–7 (E.D. Pa. July 29, 2026); *Garcia v. Roblox Corp.*, 2026 WL 413636, at *2–7 (C.D. Cal. Feb. 11, 2026); *G.G. v. Roblox Corp.*, 2026 WL 1615999, at *1–2 (N.D. Cal. June 5, 2026); *Tomlin v. Roblox Corp.*, 2026 WL 1412606, at *6–9 (E.D. Pa. May 20, 2026); *Gibson v. Roblox Corp.*, 2026 WL 2076374, at *7–10 (Cal. Super. Ct. July 15, 2026).

accounts." FAC ¶ 216.[3] There can be no dispute that a Responsible Adult entered into an arbitration agreement with Roblox.

The Terms delegate all questions of arbitrability to the arbitrator. Under binding Supreme Court precedent, this Court's inquiry is limited to: (1) whether there is a valid agreement to arbitrate; and (2) whether that agreement delegated all further questions of arbitrability to the arbitrator. The answer to both questions is yes, so the Court must compel arbitration. Nor is there any merit to Plaintiff's expected argument that she disaffirmed the Terms. Disaffirmance is a question of contract enforceability, not formation, which is an issue for the arbitrator to decide. The Court should order the parties to arbitrate this dispute and stay this case.

## BACKGROUND

### I. BACKGROUND ON ROBLOX

Roblox offers an online gaming service on which users of all ages can play user-generated games, called "experiences." SAC ¶ 19. These include educational experiences that immerse learners and motivate exploration, play, and deep thinking in topics ranging from "chemistry to physics to robotics and more." *Id.* ¶ 22. Roblox is enormously popular, with an interactive gaming ecosystem that permits users to create and play games and communicate with each other. *Id.* ¶¶ 19, 21. The Roblox app is free to download and can be used on a variety of devices, including computers and phones. *Id.* ¶ 20. Users must agree to the Terms to create a Roblox account and must agree to material updates to the Terms to continue using Roblox. Jit Decl. ¶¶ 14, 25; *see also id.* ¶ 19 (depicting sign-up screen with conspicuous blue hyperlink directing users to the Terms of Use). Minor users must have parental permission to sign up for a Roblox account. SAC ¶ 27.

[3] After receiving Roblox's prior motion to compel arbitration (Dkt. No. 95), Plaintiff amended her complaint and removed this allegation in the SAC.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a Kentucky resident whose daughter Audree allegedly began using Roblox when she was about eight years old. SAC ¶¶ 9, 250.[4] Plaintiff supervised her daughter's use of Roblox as a young child. *Id.* ¶ 250 ("Roblox was widely used among Audree's peers, and Plaintiff saw Audree playing innocent-looking games for children, which reinforced her belief that Roblox was safe for children.").

At some point, Audree allegedly used Roblox to communicate with "other users" who "glorified violence and espoused self-harm as a response to real-life hardship." *Id.* ¶ 252. Plaintiff claims that these other users "exposed [Audree] to emotional manipulation and social pressure . . . and encouraged violence against oneself and others." *Id.* ¶ 6. Audree also created accounts on Discord and TikTok, "where the social pressure was heightened," *id.*, including through alleged communications with "strangers" (Discord), and algorithmically driven content "built to maximize engagement by feeding users more of whatever keeps them watching, including content related to self-harm and suicide," (TikTok). *Id.* ¶¶ 256, 262. In December 2024, when Audree was thirteen years old, she committed suicide. *Id.* ¶ 249.

Plaintiff's tort claims against Roblox are based on Audree's communications with these "other users." She brings claims on Audree's behalf for negligence, product liability, and fraud, SAC ¶¶ 9, 266–365 (Counts One through Five), and, in her individual capacity, asserts a wrongful death claim, SAC ¶ 366–371 (Count Six). *See also* Ky. Rev. Stat. § 411.130.

## III. AUDREE AND HER RESPONSIBLE ADULTS AGREED TO ROBLOX'S TERMS

Roblox users agree to the Terms (i) at account creation; (ii) each time there are material

[4] Based on the SAC's allegations, Audree would have been eight years old between December 2019 and December 2020. SAC ¶ 249.

updates to the Terms; (iii) when purchasing Robux, Roblox's digital currency; and (iv) whenever they purchase or redeem gift cards for Robux. During this litigation, Plaintiff provided information about one of Audree's Roblox accounts, registered with the username "XxAudi_2011xX". Jit Decl. ¶ 4. Using data associated with that account, Roblox identified a second account, "twistedpandora12658", which appears to have been used by Audree.[5] *Id.* ¶ 9. This secondary account pre-dates Audree's "XxAudi_2011xX" account by nearly nine months. *Id.* ¶ 10.[6] After receiving Audree's usernames, Roblox located the relevant account records—which showed that the accounts agreed to Roblox's Terms and its arbitration provision (the "Arbitration Agreement") at least 15 times. The accounts also reflect evidence of parental involvement and their assent to terms, including: (1) a parental PIN; (2) multiple purchases of Robux and Roblox gift cards; and (3) one verified email address containing Audree's father's full name.

### A. Agreement to Roblox's Terms at Account Creation

Audree's two Roblox accounts were created on July 28, 2019 (Twistedpandora12658) and April 18, 2020 (XxAudi_2011xX). Jit Decl. ¶¶ 6, 10. To create a Roblox account, users must visit Roblox's account registration page ("Registration Page"), provide basic information, and agree to Roblox's Terms. Users can access the Registration Page from a web browser ("Web") or through the Roblox app ("App"). *Id.* ¶ 17.

When Audree's accounts were created, the Web Registration Page informed users in prominent text that "[b]y clicking Sign Up, you are agreeing to the Terms of Use." *Id.* ¶¶ 19–20. The phrase "Terms of Use" appeared in blue to indicate it was a hyperlink which, if clicked, would

---

[5] On July 6, 2026, Plaintiff's counsel informed Roblox's counsel that Plaintiff could not confirm that the twistedpandora12658 account belonged to Audree, but "believes that it could have."

[6] The period from the date Audree's earliest account was created—July 28, 2019—to December 3, 2024 is referred to as the "Relevant Period."

take the user to the then-effective Terms. *Id*. The Web Registration Page effective when Audree's Roblox account was created in 2020 is shown below, and the Page was materially the same in 2019. *See* Jit Decl. Ex. 4–5.




**Exhibit 5: *Web Registration Page on April 18, 2020***

When Audree's accounts were created, the App Registration Page likewise contained prominent language notifying users that by clicking "Sign Up," they were agreeing to the hyperlinked terms. Jit Decl. ¶¶ 21–24. The App Registration Page in effect in July 2019, when twistedpandora12658 was created, stated: "By tapping Sign Up, you are agreeing to the Terms of Use and acknowledging the Privacy Policy." The words "Terms of Use" appeared just above the "Sign Up" button in blue underlined text and hyperlinked to the Terms, as shown below. *Id*. Ex. 6. The App Registration Page from April 18, 2020—when XxAudi_2011xX was created—was

materially the same. *Id*. Ex. 7




**Exhibit 6: *App Registration Page*.**

### B. Agreement to Updated Terms

Before any material update to Roblox's Terms, Roblox notifies users in advance and obtains their assent to the updated Terms. First, users receive a message directly to their accounts one month before the updated Terms take effect. Jit Decl. ¶ 26. Users are then reminded of the notice through a "jewel notification" on their Messages page. *Id.* The message informs users that the Terms are being updated and, if they, or their parent or guardian if they are a minor, do not agree to be bound by the updated Terms, they must stop using Roblox. *Id*.

Second, users receive a pop-up notification when they next log into Roblox. *Id.* ¶¶ 28–33. This "on-platform blocker card" requires users to affirmatively agree to the updated Terms before they can proceed. *Id.* Below is a blocker card a user would have clicked to keep playing Roblox.




**Ex. 10: *Pop-Up Notification, or "Blocker Card"***

The blocker card's text makes clear that by clicking "I Agree," the user is agreeing to the updated Terms, which are bolded and hyperlinked. *Id.* ¶¶ 29–30. The blocker card also requires a minor user to show the updated Terms to an adult. *Id.* Audree's accounts affirmatively agreed to four separate updates to Roblox's Terms in this manner, including on August 7, 2023, February 18, 2024, June 17, 2024, and November 30, 2024.[7] *Id.* Ex. 1; *id.* Ex. 2 at 3–5, 6. Each time, Audree clicked the prominently displayed "I Agree" button to accept the updated Terms. *Id.* Exs. 8–11. The blocker card was materially the same for each of the four Terms updates detailed above. *Id.* ¶ 32.

[7] The account records show extensive gameplay on most dates when the accounts agreed to updated Terms. *See* Jit Decl. Ex. 2 at 54 (two games played on July 6, 2023, for six minutes total); *id.* Ex. 2 at 54–55 (eight games played on August 7, 2023, 91.5 minutes total); *id.* Ex. 2 at 60 (two games played on February 18, 2024 for 4.3 minutes total); *id.* Ex. 2 at 61 (two games played on June 17, 2024, for 34.3 minutes total); *id.* Ex. 2 at 65 (four games played on November 30, 2024, for 40.35 minutes total).

### C. Agreement to Roblox Terms Through Robux Purchases and Gift Card Redemptions

"Robux" is Roblox's official digital currency. Though Roblox is free to join and play, some gameplay enhancements require Robux to acquire virtual content like clothes or accessories for avatars, or to access certain experiences.[8] Jit Decl. ¶ 35.

***Purchasing Robux Online:*** Roblox's records show repeated online Robux purchases from Audree's accounts. These purchases required both adult involvement and their agreement to Roblox's Terms. Jit Decl. ¶¶ 36–37. From May 2018 until January 2023, Robux purchases were processed exclusively by Xsolla. *Id.* An example of the Xsolla purchase page as it would have appeared on a web browser is shown in Figure 5 below. *Id.* Exs. 13–14.




**Exhibit 14: *Robux Purchase Flow (Xsolla)***

While elements of the Xsolla pages have changed over time, the Web purchase page has at all relevant times required users to confirm that they are at least 18 years old and agree to Roblox's hyperlinked terms, including the arbitration clause, by clicking "Pay now" or a similar button. *Id.*

[8] Roblox, *What is Roblox?*, https://about.roblox.com/what-is-roblox (last visited Oct. 6, 2026).

¶ 37. Roblox's records show two Robux purchases from the XxAudi_2011xX account, where Xsolla was the processor. These Robux purchases occurred on February 14, 2021, and January 1, 2024. *Id.* Ex. 1; *id.* Ex. 2 at 7, 9.

***Redemption:*** The Robux redemption page, used to redeem physical or digital Roblox gift cards for Robux ("Redemption Page"), from November 20, 2021 to July 23, 2024, when the last gift card was redeemed on Audree's accounts, required users to affirmatively agree to Roblox's hyperlinked Terms by clicking "Redeem." *Id.* ¶¶ 42–45. Each Gift Card has a unique redemption code that can be redeemed by visiting www.roblox.com/redeem on the Web. *Id.* ¶¶ 38, 42. One must be logged into a Roblox account to redeem gift cards. *Id.* ¶ 42. An example of the Redemption Page as it appeared between September 9, 2021 and April 24, 2023 is shown below. *Id.* Ex. 17.




**Ex. 17: *Redeem Robux Page***

The Redemption Page likewise required users to click a button—"Redeem"—affirming that they agreed to the hyperlinked Terms. *Id.* ¶¶ 43–45. Users who redeemed codes had to confirm that they were adults or Responsible Adults acting for minors. *Id.* The assent language has remained substantially the same since August 18, 2021, and has always appeared immediately above or

below the "Redeem" button. *Id*. Exs. 17–18.

**1. For Minors, a Responsible Adult Must Agree to Roblox's Terms.**

The record shows that Audree's Responsible Adults repeatedly agreed to the Terms.

***First***, Roblox's Terms require that a Responsible Adult review and agree to the Terms before a minor user can use Roblox. When Audree created her accounts, Roblox's Terms stated: "In order to agree to these Terms, you need to (1) be 18 or older, or have your parent or guardian's consent to agree to the Terms, and (2) have the power to enter a binding contract with us and not be barred from doing so under any applicable laws." Jit Decl. Ex. 19.[9] This means that when Audree's accounts agreed to the Terms over a dozen times, they repeatedly confirmed that an adult had reviewed the Terms and agreed to them on Audree's behalf.

***Second***, Audree's accounts agreed to Terms updates at least four times. *See* III.B., *supra*. By clicking "I Agree" on the blocker cards, Audree confirmed she showed the Terms to a Responsible Adult. Jit Decl. Ex. 10 ("If you are a minor, please show this to your parent or guardian.").

***Third***, Audree allegedly began playing Roblox when she was eight years old. SAC ¶ 250. Plaintiff claims she supervised Audree's Roblox use by watching her play. *Id.* Additionally, Roblox's records show that someone—likely Audree's father—set a parental PIN on Audree's XxAudi_2011xX account on February 15, 2021. Jit Decl. ¶ 34. A parental PIN allowed parents to set and lock certain account settings, preventing the minor user from changing those settings without the PIN. *Id.* Plaintiff's allegations and the account data show that Audree's Responsible

[9] Beginning in August 2023, the Terms stated "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY (A "**MINOR**" . . . YOUR PARENT OR LEGAL GUARDIAN MUST READ AND CONSENT TO THE ROBLOX TERMS. BY PERMITTING A MINOR TO USE THE SERVICES, A MINOR'S PARENT OR GUARDIAN BECOMES SUBJECT TO THE ROBLOX TERMS AND AGREES TO BE RESPONSIBLE FOR THE MINOR'S ACTIVITIES ON THE SERVICES." Ex. 20 at 2.

Adults were involved in her use of Roblox and her Roblox accounts.[10]

***Fourth***, beginning as early as 2019, Audree's accounts were linked to two email addresses: (1) dons132@yahoo.com (linked to the XxAudi_2011xX account on November 24, 2020); and (2) [redacted] (linked to the XxAudi_2011xX account on February 13, 2021, and to the twistedpandora12658 account on August 2, 2019). *Id.* ¶¶ 7–9. The [redacted] email address was verified. *Id.* ¶ 7. This means that a Responsible Adult would have received an email about Audree's XxAudi_2011xX account, and clicked a "verify email" button to complete the verification process. *Id.* [redacted] was added to Audree's account just two days before the parental PIN was set, and the day before a Robux purchase. *Id.* ¶¶ 7, 34. Audree's father's name is Bradley Heine.[11]

***Fifth***, Roblox's records show that between November 20, 2021, and July 23, 2024, Audree's accounts redeemed five physical gift cards purchased in retail stores. Two of these gift cards stated on the back of the card that the user and their Responsible Adult agreed to the Terms by redeeming the cards. *Id.* ¶¶ 39–41, Exs. 15–16 ("By purchasing, accepting or redeeming this card, you (or your parent or guardian if you are under 18 years old) agree to these terms and conditions and the Roblox Terms of Use (available at www.roblox.com/termsofuse), which are both subject to change."). This notification, printed on the gift card itself, was plainly visible before and after purchase, and, at all relevant times, Roblox's Terms could be found at the URL www.roblox.com/termsofuse. *Id.*

---

[10] In November 2024, Roblox changed this method of parental oversight from parental PINs to linked parental accounts. *See* Parent PIN General Information, *available at* https://en.help.roblox.com/hc/en-us/articles/360000239523-Parent-PIN-General-Information (last accessed Sept. 27, 2026).

[11] *See, e.g.*, https://nkytribune.com/obituaries-2/audree-megan-heine/ (last accessed August 7, 2026).

***Sixth***, Roblox's records show two online purchases of Robux by Audree's accounts on February 14, 2021 and January 1, 2024, respectively. Jit Decl. Ex. 2 at 7, 9, 9.1. Both purchases were made with credit cards. *Id.* The February 14, 2021 purchase was made using Audree's father's email address. *Id.* At the time of these purchases, Audree was between eight and 12 years old. A Responsible Adult made these purchases, and they had to agree to the Terms during the purchase process. Jit Decl. ¶¶ 36–37.

Accordingly, there is substantial evidence that a Responsible Adult agreed to the Terms.

## IV. THE ARBITRATION AGREEMENT

The most recent version of the Terms accepted by Audree's XxAudi_2011xX account is dated November 6, 2024, and those terms apply here.[12] *See* Jit Decl. ¶ 47. The introduction to the Terms states: "PLEASE READ THE ROBLOX TERMS CAREFULLY BEFORE BEGINNING TO USE THE SERVICES, AS THEY SET FORTH A LEGALLY BINDING AGREEMENT BETWEEN YOU AND ROBLOX." *See, e.g.*, Jit Decl. Ex. 23 at 2 (emphasis in original).[13] Another all-caps section in the introduction (which is partially bolded) informs users of the mandatory arbitration agreement:

> **For U.S. Users**, Roblox's Arbitration Agreement (Section 11), [ ] outlines how disputes between you and Roblox will be resolved. Specifically, these Roblox Terms contain **A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER. THIS MEANS THAT YOU GIVE UP THE RIGHT TO BRING AN ACTION IN COURT, INDIVIDUALLY OR AS PART OF A CLASS ACTION.**

---

[12] The Arbitration Agreement has not changed since August 1, 2023, and Audree's accounts have agreed to the same Arbitration Agreement on multiple dates, including updated Terms presented by blocker cards on August 7, 2023, February 18, 2024, June 17, 2024, and November 30, 2024. *See supra* at 6–7. Audree's Responsible Adults accepted the same Arbitration Agreement by purchasing Robux, through gift card redemptions, and other methods, as explained above. *Supra* at 8–12.

[13] The introduction to Roblox's Terms has remained substantially since August 2023.

*Id.* (emphasis in original) ("Arbitration Agreement"). As it had for years, the Arbitration Agreement as of November 6, 2024 provided that the user agrees to arbitrate their claims and explains the rights surrendered as a result:

> **YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR ANY DISPUTES SUBJECT TO THE ARBITRATION PROVISION BELOW.**

*Id.* § 11 (emphasis in original). The Arbitration Agreement has also explained that users have the right to opt out of arbitration the first time they agree to Terms and each time the Arbitration Agreement is materially updated:

> Opting Out. You may opt-out of the Arbitration Agreement entirely and litigate any Dispute with us by sending written notice to Roblox within 30 days of signing up for the Services for the first time. Thereafter, you may only opt-out of material changes to the Arbitration Agreement by sending written notice within 30 days after Roblox provides notice of those changes (unless a longer period is required by applicable law). In either case, to opt-out, a User must send a written notice … and include (a) the User's full name, Roblox username, and email address, (b) a clear statement that the User wants to opt-out of the Arbitration Agreement, or wants to opt-out of a material change to the Arbitration Agreement, as applicable, and (c) the User's signature (or the signature of the User's guardian, if the User is a Minor).

*Id.* § 11(b)(ix). Despite having the unfettered right to do so, Plaintiff does not allege—and Roblox has no record that—Audree or anyone acting on her behalf opted out of the Arbitration Agreement. Jit Decl. ¶¶ 54–55.

### A. Roblox's Terms Delegate Questions of Arbitrability to the Arbitrator.

At all relevant times, the Arbitration Agreement to which Audree and a Responsible Adult repeatedly agreed has also included a delegation clause that requires that any question of arbitrability be resolved by the arbitrator. When Audree's accounts were created, the Terms made clear that "You and we empower the arbitrator with the exclusive authority to resolve any Dispute, including without limitation whether or not any part of these Terms is void or voidable." Jit Decl.

Ex. 19 § 11(c)(1). Later versions of the Terms to which Audree and her Responsible Adults also agreed state:

> Delegation; Interpretation. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable[.]

*E.g.*, *id.* Ex. 23 § 11(b)(vii) (the "Delegation Provision").

Since at least August 1, 2023, the Arbitration Agreement has incorporated FedArb arbitration rules ("FedArb Rules"), which vest arbitrators with the power to decide the issue of arbitrability. *Id.* Ex. 20 § 11(b)(iv); *see also* FedArb Rules, Rule 5.02 ("The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause[.]").

**B. The Arbitration Agreement Has a Broad Scope.**

At all relevant times, the Arbitration Agreement has broadly applied to disputes "arising out of or relating to any aspect of the[] Terms." *E.g.*, Jit Decl. Ex. 19 at 2. Since August 1, 2023, the Arbitration Agreement has applied to "any dispute, claim, or controversy [the user] may have with Roblox arising under or relating in any way to the Roblox Terms or the Services ('Dispute')." *Id.* Ex. 20 § 11.[14] Roblox "Services" are broadly defined to include "the Roblox website … and its related platform … and various other features and services, including websites, applications, forums, content, functionality, products, and services[.]" *Id.* Ex. 20 at 1. The Arbitration Agreement also makes clear that it encompasses "***all Disputes***—regardless of (a) the legal theories involved in the Dispute, (b) when the Dispute arose, and (c) whether the Dispute is with Roblox

[14] In February 2021, when a Responsible Adult added the parental PIN to Audree's account and purchased Robux, the Arbitration Agreement contained a similar delegation clause, empowering "the arbitrator with the exclusive authority to resolve any Dispute, including without limitation whether or not any part of these Terms is void or voidable." Jit Decl. Ex. 19 § 11(c)(1).

[or affiliated parties]." *Id.* § 11(b)(i) (emphasis added). The claims at issue here (*see supra* at 3) concern the operation of the Roblox platform and are encompassed by the Arbitration Agreement.

## ARGUMENT

### I. LEGAL STANDARD AND THE FEDERAL ARBITRATION ACT.

There is a "strong presumption in favor of arbitration." *Whaley v. T-Mobile, USA, Inc.*, 2013 WL 5155342, at *2 (E.D. Ky. Sep. 12, 2013) (Bunning, J.) (citation omitted). This presumption stems from the Federal Arbitration Act, which "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Brookbank v. Heights Fin. Corp.*, 2026 WL 1194927, at *2 (E.D. Ky. May 1, 2026) (Bunning, C.J.) (citation omitted).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties[.]" *Drus v. Microsoft Corp.*, 2026 WL 539470, at *3 (E.D. Ky. Feb. 26, 2026) (Bunning, C.J.) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also, e.g.*, *Bixby v. Toyota Motor N. Am., Inc.,* 2023 WL 2110884, at *2 (E.D. Ky. Feb. 17, 2023) (Bunning, J.); *Treved Exteriors, Inc. v. Lakeview Constr., Inc.*, 2014 WL 1047117, at *5 (E.D. Ky. Mar. 18, 2014) (Bunning, J.). The FAA "instructs courts to follow the same contract-law rules when analyzing an arbitration agreement that they would follow when analyzing any other agreement." *Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 566 (6th Cir. 2026). "Once prima facie evidence of the arbitration agreement is presented, the burden shifts from the party seeking to enforce the agreement to the party seeking to avoid the agreement." *Carter Nursing & Rehab.,*

*LLC v. Wright*, 2022 WL 3449472, at *5 (E.D. Ky. Aug. 17, 2022) (Bunning, J.). "However, [t]he party seeking to avoid the arbitration agreement has a **heavy** burden." *Wurtland Nursing & Rehab., LLC v. Harvey*, 621 F. Supp. 3d 805, 814–15 (E.D. Ky. 2022) (Bunning, J.) (alteration and emphasis in original) (citation omitted). "The burden is onerous due to the 'strong federal policy in favor of arbitration.'" *Id.* (citation omitted). "Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

The FAA controls the disposition of this motion. The Terms state that they are "governed by the" FAA, which applies to agreements that evidence a transaction involving interstate commerce, including Internet-based transactions. *See* 9 U.S.C. §§ 1–2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274–77 (1995) (interpreting "involving commerce" provision as broadly as the phrase "affecting commerce"). Under the FAA, the Court must order the parties to arbitrate.

## II. THE PARTIES AGREED TO ARBITRATE ALL DISPUTES.

The evidence makes clear that Audree and her Responsible Adults repeatedly agreed to arbitrate all claims against Roblox. "Questions concerning the formation of an arbitration agreement are resolved in accordance with the applicable state law governing contract formation." *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (citation omitted).[15] "Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms." *Gaskins v. Swope Ventures, Inc.*, 645 F. Supp. 3d 682, 687 (W.D. Ky. 2022) (citation omitted). This includes contracts formed online by a user clicking agreement. *See Creason v. Experian Info. Sols., Inc.*, 722 F. Supp. 3d 760, 764 (W.D. Ky.

[15] Roblox is based in California, and the Terms select for California law. However, the Court need not resolve whether Kentucky or California law applies to the analyses herein, as, on each issue, the two state's laws do not materially differ.

2024) ("[C]ourts in Kentucky and elsewhere recognize the validity of 'clickwrap' contracts whereby parties signal their assent to the terms of an agreement by clicking 'I agree'"); *see also Univ. of Ky. v. Regard*, 670 S.W.3d 903, 910–11 (Ky. 2023) (recognizing clickwrap agreements are enforceable). And, in Kentucky, a minor may form a contract, subject to later disaffirmance before the minor reaches majority. *Mitchell ex rel. Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. Ct. App. 1998) ("Ordinarily, a contract executed by a minor is enforceable by the minor but may be avoided by the minor if not affirmed by him after reaching adulthood."); *Ky. Prot. & Advoc. v. White*, 2026 WL 788685, at *9 (E.D. Ky. Mar. 20, 2026) ("Kentucky courts have long recognized that minors do possess the requisite *capacity* to enter into contracts.").

### A. Both Audree and Her Responsible Adults Agreed to Arbitrate.

In this case, Audree and her Responsible Adult received notice of the Terms and manifested assent ***more than a dozen times***: when creating Roblox accounts, through four pop-up notifications alerting the user to updated Terms and requiring the user to click "I Agree," when purchasing and redeeming gift cards, and when making Robux purchases. *Supra* at 4–9. Each of these assents formed a contract.

***Account Creation:*** Courts routinely find that when an online platform or website conspicuously tells a user that by clicking a button to create an account they are agreeing to terms of use, the user manifests assent by doing so. *See Dahdah*, 166 F.4th at 577–80 (by clicking "Calculate," with notice that doing so would accept terms of service, user accepted arbitration agreement); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (agreement enforceable where notice of terms of use was "clear and legible" and placed directly below button to complete purchase); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) (similar). As shown above, Audree and her Responsible Adults were given clear notice that by creating her Roblox accounts, they were agreeing to the Terms. *See supra* at 5-6. In fact, courts have found that

the Roblox sign-up flow specifically binds users to the Terms. *E.g.*, *Garcia*, 2026 WL 413636, at *4 (mobile Roblox sign-up flow sufficient to secure user assent to terms).

***Updates to Terms:*** Audree and her Responsible Adults also agreed to the Terms when they were updated. As explained above, Audree's accounts received and accepted multiple blocker cards that required the user to alert a Responsible Adult to updates in the Terms—and only then click "I Agree" to the same. It is hard to conceive of an online notice more conspicuous than a blocker card with no other content except language highlighting the Terms, advising minor users to show the Terms to a Responsible Adult, and only then to click "I Agree." *See Page v. GameStop Corp.*, 2025 WL 637441, at *3 (6th Cir. Feb. 27, 2025) (by clicking "I Agree," user bound to terms); *Berman*, 30 F.4th at 856 (observing that courts routinely compel arbitration where a "website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed"). Any of the four times Audree or her Responsible Adult clicked "I Agree" was enough to bind them to the Terms. *See G.G.*, 2026 WL 1615999, at *1 (holding that Roblox's "pop-up notifications gave adequate notice of the terms of use").

***Other Assents:*** Audree and her Responsible Adult agreed to the Terms in still other ways, including when they purchased Robux and purchased and redeemed gift cards for Robux. *See, e.g.*, *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1276 (M.D. Tenn. 2020) (enforcing arbitration agreement from online purchase flow); *Scott v. RVshare LLC*, 2022 WL 866259, at *4 (M.D. Tenn. Mar. 22, 2022) (same). Each time Audree's accounts purchased Robux on the Web, the user represented that they: (1) were 18 or over; and (2) consented to Roblox's Terms. *See* Jit Decl. ¶¶ 35–37; *id.* Ex. 2 at 7, 9, 9.1. Each time Audree's accounts redeemed Roblox gift cards, they likewise represented that the person(s) who were redeeming was the parent or legal guardian

of the minor. *See id.* ¶¶ 38–45; *id.* Exs. 17–18, 2 at 10. A Responsible Adult also appears to have purchased at least two physical gift cards for Audree that likewise bound the Responsible Adult and Audree to the Terms. *See*, *e.g.*, *Espinoza v. Walmart Inc.*, 2020 WL 13886119, at *7–8 (S.D. Cal. Apr. 16, 2020) (finding valid assent where plaintiff received terms when he purchased gift cards, the outer packaging gave clear notice that terms were enclosed, and plaintiff could access terms before he tried to use the gift cards). In addition, Audree and her Responsible Adults redeemed at least five Roblox gift cards, which also required them to separately agree to the Terms. *See* Jit Decl. Ex. 2 at 10; *Dahdah*, 166 F.4th at 577–80 (by clicking "Calculate", with notice that it would accept terms of service, user accepted arbitration agreement); *Page*, 2025 WL 637441, at *3 (same by clicking "I Agree"); *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (similar); *Morrison v. Yippee Ent., Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025) (similar); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (similar); *Meyer*, 868 F.3d at 80 (similar); *Scott*, 2022 WL 866259, at *4 (similar); *Anderson*, 490 F. Supp. 3d at 1276 (similar and noting agreements of this "type" have "regularly been upheld by courts").

**B. Audree Was Bound Each Time Her Responsible Adults Agreed to the Terms.**

Even if there were question about Audree's assent (and there is not), her estate's claims are still subject to arbitration through her Responsible Adults' assents. Under Kentucky law, a third party may be subject to an agreement she did not sign where she is a beneficiary of the agreement. *See Phoenix Am. Adm'rs, LLC v. Lee*, 670 S.W.3d 832, 838-39 (Ky. 2023); *see also N. Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 106 (Ky. 2010) (explaining the related doctrine of direct benefits estoppel and holding that a party claiming a benefit of an agreement is estopped from disclaiming its arbitration provision); *Javitch*, 315 F.3d at 629 (similar). Such is the case here.

The evidence shows that Audree's Responsible Adults repeatedly accepted the Arbitration Agreement. To start, Audree was *eight* when her first Roblox account was created, Plaintiff alleges

close involvement in Audree's use of Roblox, and one of Audree's accounts had a verified parental email address and a parental PIN. *See supra* at 10–11. These facts evidence a Responsible Adult's involvement in creating Audree's accounts and overseeing their use. In fact, Roblox's Terms required that a Responsible Adult agree to the Terms on a minor's behalf, and Audree's accounts repeatedly agreed to versions of the Terms with this language. Audree then confirmed on multiple occasions—by agreeing to blocker card updates—that she had shown updates to the Terms to her parents. Plaintiff even conceded in her earlier complaint that she set "parental controls on Audree's accounts." FAC ¶ 216; *accord Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, 2025 WL 793577, at *8 (W.D. Tenn. Mar. 12, 2025) (withdrawn factual allegations "may still be advanced at the summary judgment stage as evidence rebutting a subsequent contrary assertion") (citing *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172–73 (3d Cir. 2013) (collecting cases)). Moreover, Audree's accounts repeatedly purchased Robux using credit or debit cards, with each purchase requiring an additional assent to the Terms and confirmation that the purchaser was an adult. The record shows that at least one of these payments was made with Audree's father's email address. Finally, her Responsible Adults agreed to be bound by the Terms each time they purchased physical Gift Cards that stated the same.

When her Responsible Adults agreed to the Terms, Audree was the beneficiary of those agreements. Absent their assent to the Terms, Audree could not have used and "relied heavily on the app for social interaction." *See* SAC ¶¶ 5, 250. As such, "under Kentucky law," Audree is "bound as a third-party beneficiary to the agreements between" Roblox and her Responsible Adults, and Plaintiff should be equitably estopped from arguing otherwise. *French*, 2026 WL 2195890, at *9 (applying Kentucky and Pennsylvania law to enforce Roblox's Terms in case involving minor); *see also, e.g.*, *Drus*, 2026 WL 539470, at *7–8 (applying third-party beneficiary

doctrine to arbitration agreement); *Tomlin*, 2026 WL 1412606, at *8 (same concerning Roblox's Terms); *see also E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026) ("Therefore, the Court holds that the arbitration agreement binds Plaintiffs under the doctrine of equitable estoppel because of their preexisting relationship with their Guardian."); *BLC Lexington SNF, LLC v. Townsend*, 719 S.W.3d 48, 51 (Ky. Ct. App. 2025) ("[B]eneficiaries who [] sign an arbitration agreement [] elect to arbitrate their wrongful death claims—because [] representatives are in fact parties to the contract.").[16]

## III. ANY PURPORTED DISAFFIRMANCE IS INVALID AND DELEGATED TO THE ARBITRATOR.

Despite the clear Arbitration Agreement, Plaintiff purports to disaffirm it. SAC ¶ 12. But she cannot do so—and certainly not in this forum.

***First***, Audree's Responsible Adults agreed to arbitrate claims with Roblox. As explained above, minor Roblox users were required to obtain consent from a Responsible Adult to create an account and there is ample evidence that Audree's Responsible Adults, including Plaintiff, did so here. *Supra* 4–9, 15–16.[17] Neither Plaintiff nor Audree's father can disaffirm contracts that they entered as adults. *Wright v. Stanley Motor Co.*, 60 S.W.2d 144, 144 (Ky. 1933) (affirming

---

[16] Indeed, as this Court has already indicated, any argument that a Responsible Adult lacked the ability to bind Audree to arbitration under Kentucky law would be preempted by the FAA. *See Diversicaire Leasing Corp. v. Brouthon*, 2022 WL 16927789, at *6 (E.D. Ky. Nov. 14, 2022) (Bunning, C.J.) (holding that the FAA preempted *Jackson v. Legacy Health Services, Inc.*, 640 S.W.3d 728 (Ky. 2022), which ruled that a statutorily-enabled guardian lacked authority under the relevant Kentucky statute to bind the beneficiary to arbitration). Kentucky cases involving parental authority to bind minors to pre-injury waivers and releases under Kentucky statutes and public policy are not to the contrary, in that they do not concern disputes that both the minor and Responsible Adult agreed to arbitrate. *See Miller as Next Friend of E.M. v. House of Boom Ky., LLC*, 575 S.W.3d 656, 660–63 (Ky. 2019).

[17] Even if Audree's father was the only one who consented to the Terms, Plaintiff should similarly be equitably estopped from disaffirming it. *See, e.g.*, *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831–32 (Ky. Ct. App. 2009).

enforcement against adult father to a sale contract, in contrast to infant son).

***Second***, under Kentucky law, a minor cannot simply opt out of contract obligations without more. For a minor to disaffirm a contract, the minor (or her estate) must "return the consideration" offered by the other party. *Mitchell*, 963 S.W.2d at 223. Here, by virtue of Audree agreeing to the Terms, Roblox allowed her to play hundreds of hours of Roblox experiences for free. Plaintiff does not explain how such consideration has been "returned" or how it could be. But if Audree's estate cannot return the consideration, then it cannot disaffirm the contracts under which this consideration was provided. *Id*.

Yet the Court need not, and should not, decide these issues. Instead, Plaintiff's purported disaffirmance is a question for the arbitrator. As the Supreme Court has explained, a "delegation provision" is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69; *see also Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021); *Carman v. Signature HealthCARE, LLC*, 2020 WL 3086253, at *3 (W.D. Ky. June 10, 2020). That is the case here. The Arbitration Agreement contained a broad "Delegation" clause, which vested "the arbitrator, and not any … court" with determining the "interpretation, applicability, [and] *enforceability*" of the agreement, "including" any claim that the agreement is "*voidable.*" Jit. Decl. Ex. 20 § 11(b)(vii) (emphases added).[18] Confirming as much, the Arbitration Agreement incorporated the FedArb rules, which similarly vest arbitrability to the arbitrator. *Id.* § 11(b)(iv); *supra* at 11. As such, "[t]he delegation clause[] of the [Roblox Terms] clearly and

[18] As noted above, the same was true in 2021, when a Responsible Adult added a parental PIN to Audree's account and purchased Robux.

unmistakably delegate questions of enforceability to the arbitrator." *Tomlin*, 2026 WL 1412606, at *9; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract").

Under Kentucky law, it is well established that disaffirmance pertains to the voidability of a contract with a minor and is therefore a matter of contract enforcement, not formation. *See, e.g.*, *Davis v. Panda Express, Inc.*, 2021 WL 4692387, at *5 (W.D. Ky. Oct. 7, 2021) ("An infant's contract is not void, but merely voidable at his or her election after reaching the age of eighteen.") (quoting *Henderson v. Clark*, 173 S.W. 367, 370 (Ky. 1915)); *Mitchell*, 963 S.W.2d at 223 ("Although the minor has the legal capacity to contract, he has the privilege of avoiding the contract."); *Brown v. Elk Horn Coal Corp.*, 8 S.W.2d 404, 406 (Ky. 1928) (minors' contracts are "voidable but not void"). California law, which the Terms adopt, similarly holds that disaffirmance is a matter of contract enforcement, not formation. *See, e.g.*, *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1084–86 (N.D. Cal. 2025) (applying California law and holding that minor plaintiff's disaffirmance challenged the contract's "enforceability or validity" as a whole and did "not single out the arbitration provision or delegation clause," requiring the arbitrator to decide); *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at *5–6 (N.D. Cal. Dec. 11, 2023) (applying California law; "the question of disaffirmation must be decided in arbitration" because the parties agreed to arbitrate "issues of enforceability, which includes [plaintiff's] disaffirmation defense").

Where, as here, a valid agreement to arbitrate delegates issues of enforceability to the arbitrator, there is nothing further for the Court to do. *Henry Schein*, 586 U.S. at 71. The arbitrator must decide if a plaintiff has disaffirmed the contract, as courts across the country have held. *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837–39 (7th Cir. 2022) (delegating minor's disaffirmance

defense to arbitrator); *French*, 2026 WL 2195890, at *6–7 ("To the extent Plaintiff raises arguments regarding disaffirmance or unconscionability, … [Roblox's Terms] expressly delegate those issues to the arbitrator, and the Court lacks the authority to decide them"); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *17–18 (N.D. Ill. Feb. 18, 2025) (compelling infancy and unconscionability arguments to the arbitrator given the "delegation language"); *Antonetti v. Activision Blizzard, Inc.* 764 F. Supp. 3d 1309, 1321–23 (N.D. Ga. 2025) (similar); *S.T.G. by and through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1208 (S.D. Cal. 2024) (holding the question of disaffirmance is for the arbitrator to decide); *Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976, 980 (E.D. Ark. 2024) (delegation provision required arbitration of minor plaintiff's disaffirmance); *A.C. by and through Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *2–3 (W.D. Wash. Apr. 29, 2021) (disaffirmance "does not relate to contract formation" and that "the parties agreed to have an arbitrator" decide such an issue).

*In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873 (6th Cir. 2021), is on point. There, the minor-plaintiffs asserted that the related "infancy doctrine invalidates" the terms to which they agreed, rendering "the entire agreement unenforceable." *Id.* at 882. Citing *Rent-A-Center*, the Sixth Circuit explained that an "infancy argument does not concern the formation or existence of a contract." *Id.* at 883. As such, the "infancy defense is a matter of *enforceability* covered under the delegation provision." *Id.* at 884 (emphasis added). The same is true here.

## IV. THE ACTION SHOULD BE STAYED PENDING ARBITRATION OR, IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED DISCOVERY.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Drus*, 2026 WL 539470, at *7 (same). This

Court should do the same here, as both Audree and her parents consented to the Arbitration Agreement.[19]

If, however, this Court determines that Plaintiff did not agree to arbitrate, has effectively disaffirmed Audree's agreement on her behalf, or otherwise finds a reason not to compel arbitration—which the Court should not—the Court should order limited discovery and an opportunity to renew this motion. "Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question." *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 841 (6th Cir. 2021). As explained earlier, there is substantial evidence that Audree and her parents agreed to the Terms, defeating any claim of disaffirmance. Should the Court find a genuine dispute on this front, the Court should permit Roblox to take limited discovery (in the form of depositions, interrogatories, and document requests) on contract formation, including parental involvement in creating and managing Audree's accounts.

**CONCLUSION**

For these reasons, the Court should stay this action and order Plaintiff to arbitrate her claims. Pursuant to Local Rule 7.1(f), Defendant requests that the Court schedule oral argument on this motion at the Court's convenience.

---

[19] Even if this Court found that only Audree and another Responsible Adult, but not Plaintiff, consented to the Arbitration Agreement, it should still stay this case in its entirety. All of the representative claims (Counts One through Eight) would be bound to arbitration, *see, e.g.*, *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012) ("The Estate would be estopped, of course, if … [the decedent] were estopped"), and the Court should exercise its discretion to stay Plaintiffs' dependent wrongful death claim, *see, e.g.*, *Phelps KY Opco, LLC v. Working*, 2026 WL 63511, at *7 (E.D. Ky. Jan. 8, 2026) (staying case as to non-arbitrable wrongful death claim while survival claims for negligence proceeded in arbitration).

Dated: October 6, 2026

Respectfully submitted,

By: */s/ Tiana Demas*

Tiana Demas (*pro hac vice*)
Thomas P. Peabody (*pro hac vice*)
Jamie D. Robertson (*pro hac vice*)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598
tdemas@cooley.com

Max. A. Bernstein (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415-693-2000
Facsimile: +1 415-693-2222
mbernstein@cooley.com

Bruce Benjamin Paul
Mitchel Terence Denham
MCBRAYER PLLC - LOUISVILLE
500 W. Jefferson Street
Suite 2400
Louisville, KY 40202
502-783-6245
bpaul@mcbrayerfirm.com
mdenham@mcbrayerfirm.com

Attorneys for Defendant
ROBLOX CORPORATION